BERTRAM FIELDS (SBN 024199)
BFields@ggfirm.com
RICARDO P. CESTERO (SBN 203230)
RCestero@GreenbergGlusker.com
JAMES R. MOLEN (SBN 260269)
JMolen@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS
  CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590
Telephone:  310.553.3610
Fax:  310.553.0687

Attorneys for Plaintiffs
Golden Boy Promotions, LLC, Golden Boy
Promotions, Inc. and Bernard Hopkins

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDEN BOY PROMOTIONS, LLC, GOLDEN BOY PROMOTIONS, INC. and BERNARD HOPKINS, <br><br> Plaintiffs, <br><br> v. <br><br> ALAN HAYMON, ALAN HAYMON DEVELOPMENT, INC., HAYMON HOLDINGS, LLC, HAYMON SPORTS, LLC, HAYMON BOXING MANAGEMENT, HAYMON BOXING LLC, and RYAN CALDWELL, <br><br> Defendants. | Case No. 2:15-cv-03378 JFW (MRWx) <br><br> [Assigned to Hon. John F. Walter] <br><br> **FIRST AMENDED COMPLAINT FOR SHERMAN ACT VIOLATIONS, UNFAIR PRACTICES ACT VIOLATIONS AND UNFAIR COMPETITION** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs allege as follows:

## INTRODUCTION

Al Haymon, acting through his wholly owned companies and backed by powerful venture capital firms, seeks to monopolize professional boxing in the United States and to drive out all competition.  To accomplish this, Haymon, a former music industry promoter now called "the Rasputin of boxing," has repeatedly violated the fundamental federal and state laws that regulate boxing and

*(left margin, rotated)* GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP  1900 Avenue of the Stars, 21st Floor  Los Angeles, California 90067-4590

ensure fair competition, including the Muhammad Ali Boxing Reform Act and the Sherman Act. Haymon seeks to create a monopoly by illegal, predatory and anti-competitive conduct. He has blatantly ignored the "firewall" required by federal and state law to separate managers from promoters, by illegally functioning as both a promoter and a manager. While falsely pretending that he is not a promoter, Haymon has forbidden hundreds of boxers he manages to sign with any other promoter; and he has acted to cut off legitimate promoters not only from promoting boxers he manages, but also from essential network television of boxing matches and from the quality arenas necessary for the effective presentation of their bouts. His illegal conduct, designed to eliminate all competition, also constitutes an "unlawful . . . business act or practice" constituting "unfair competition" under California Business and Professions Code Section 17,200 et seq.

Plaintiffs are boxing promoters founded and owned (through intermediate entities) by boxers. Their founder was Oscar De La Hoya, a United States Olympic Gold Medalist and ten-time world champion in six different weight divisions. De La Hoya's co-owner is Bernard Hopkins, another legendary boxer, who has held championship belts in two different weight divisions. Haymon is determined to drive De La Hoya, Hopkins, plaintiffs and every other competitor from the boxing business, so that he and his powerful backers can control it, a result that will irreparably harm the interests of boxers, consumers, arenas, television networks and, of course, other promoters and managers.

## THE PARTIES

1.     Plaintiff Golden Boy Promotions, LLC is a California limited liability company. Plaintiff Golden Boy Promotions, Inc. is a California corporation. Together they are called the "Golden Boy Plaintiffs." Their principal office is in Los Angeles County, California, and they are both licensed boxing promoters in different states. Plaintiff Bernard Hopkins ("Hopkins") is a championship professional boxer. Along with De La Hoya, Hopkins owns an equity interest in an

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

FIRST AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ETC.

1   LLC that has the equity interest in another LLC that, in turn has the equity interest

2   in Golden Boy Promotions, LLC.  Hopkins is also a resident of Los Angeles

3   County, California.

4       2.    Defendant Alan Haymon conducts the activities alleged hereinbelow

5   primarily through his total ownership and control of Alan Haymon Development,

6   Inc., Haymon Sports, LLC (now known as KO Holdings LLC), Haymon Holdings,

7   LLC, Haymon Boxing LLC, Haymon Boxing Management LLC and Haymon

8   Boxing: Media Group Holdings LLC (collectively with Alan Haymon, the

9   "Haymon Defendants").  Plaintiffs are informed and believe and, on that ground,

10  allege that Al Haymon is a resident of California and that Alan Haymon

11  Development, Inc., Haymon Sports, LLC, Haymon Holdings LLC, Haymon

12  Boxing LLC, Haymon Boxing Management LLC and Haymon Boxing: Media

13  Group Holdings LLC are limited liability companies with their principal place of

14  business in either California or Nevada.  The Haymon Defendants function illegally

15  as both boxing promoters and boxing managers in California, Nevada and

16  elsewhere.  They have done substantial business in California and their activities

17  have a significant impact on California, including businesses and activities alleged

18  hereinbelow.

19      Before the acts on which this action is based, Ryan Caldwell ("Caldwell")

20  was a principal executive of a major investment fund and of the subsidiaries and

21  affiliates through which it acted ("Waddell").  At Caldwell's direction, Waddell

22  agreed to provide more than four hundred million dollars to finance certain of the

23  unlawful activities of the Haymon Defendants alleged hereinbelow.  Waddell and

24  Caldwell agreed with the Haymon Defendants to carry out certain such activities

25  and conspired with them to do so.  Thereafter, Caldwell and the Haymon

26  Defendants carried out illegal acts in furtherance of the combination and the

27  conspiracy with Waddell and Caldwell and conspired to carry out further illegal

28  acts.  The Haymon Defendants are still engaging in all of those illegal acts and

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   other illegal acts pursuant to subsequent combinations and conspiracies.  Caldwell

2   has also aided and abetted the commission by the Haymon Defendants of each of

3   their illegal acts alleged hereinbelow.

4          3.     The true names and capacities of defendants named herein as Does 1

5   through 10 are unknown to plaintiffs who therefore sue said defendants by such

6   fictitious names.  Plaintiffs will ask leave of this court to amend this complaint to

7   show their true names and capacities when the same have been ascertained.

8   Plaintiffs are informed and believe, and, on that ground, allege, that Does 1 through

9   10 were responsible, in some manner, for defendants' misconduct for which they

10  are liable to plaintiffs.

## JURISDICTION AND VENUE

12         4.     This Court has original jurisdiction over Plaintiffs' federal antitrust

13  claims, which arise under the Sherman Antitrust Act (15 U.S.C. §§ 1, 2) and the

14  Clayton Act (15 U.S.C. §§ 15, 26).  28 U.S.C. §§ 1331, 1337(a).  This Court has

15  supplemental jurisdiction over the related claims for the violations of California

16  statutory law herein alleged, because those claims are so related to the federal

17  claims that they form part of the same case or controversy under Article III of the

18  United States Constitution.  28 U.S.C. § 1367(a).

19         5.     Venue in this Judicial District is proper under 28 U.S.C. § 1391(b) in

20  that a substantial part of the acts and circumstances giving rise to this action

21  occurred in this District and are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

23         6.     This complaint is based upon the acts of the defendants commencing

24  on January 1, 2015.  The period commencing January 1, 2015 is sometimes referred

25  to hereinafter as the "Covered Period."  Defendants' conduct prior to the Covered

26  Period has been alleged, in some instances, to establish defendants' knowledge,

27  motive and/or intention in carrying out their unlawful activities during the Covered

28  Period.  To the extent that any combination or conspiracy to violate the law was

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

formed by defendants before the Covered Period, that combination or conspiracy was carried out by individual acts during the Covered Period, which acts were and are separate violations of the law.

## The Professional Boxing Industry

7.      Professional boxing is a multibillion dollar industry.  Professional boxers in the United States are not uniform in their skills, experience or earning ability.  At one end of the spectrum are fighters who have just entered the ranks of professional boxers.  They struggle to obtain bouts for small sums while they hone their skills.  At the other end of are champions and top contenders who earn significant sums for matches presented in major arenas and broadcast live on television.  Other boxers fall between these two tiers of the boxing world.

This action deals primarily with "Championship-Caliber Boxers" – that is professional boxers who, during the last three years, have demonstrated through such factors as purse size, television rights, viewership, ticket revenue and other objective factors to be "the cream of the boxing business."  See *International Boxing Club of New York v. United States*, 358 U.S. 242 249, 252 (1959).

Those who deal with professional boxers and their bouts are divided into two disparate professions – boxing managers and boxing promoters.  And they form two different markets:  the market for managers, and the market for promoters.  The need to separate these two professions and markets and keep them separated is required by sound public policy and is specifically mandated by an Act of Congress and by legislation in California, Nevada and elsewhere.

The Muhammad Ali Boxing Reform Act (the "Ali Act"), requires that there be a strict "[f]irewall between promoters and managers."  15 U.S.C. § 6308(b).  The Ali Act expressly prohibits managers from having "a direct or indirect financial interest in the promotion of a boxer," and from being "employed by or receiv[ing] compensation or other benefits from a promoter."  Id. §§ 6308(b)(1)(B)(i)–(ii). California, Nevada and New York, for example, have similar statutes and

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   regulations.  All three states prohibit persons from acting as both manager and

2   promoter.  See Calif. Code Regs. title 4, § 396; Nev. Admin. Code § 467.104;

3   19 N.Y. Code Rules and Regs. § 207.19.  No one is allowed to function in the

4   market for boxing managers and the market for boxing promoters, a "firewall" that

5   benefits both boxers and consumers.

6   ## Managers

7       8.      Under the Ali Act, a "manager" is "a person who receives

8   compensation for service as an agent or representative of a boxer."  *Id.* § 6301(5).

9   A manager is a fiduciary required to be devoted to his or her clients' best interests.

10  Before any boxing match – particularly highly publicized bouts between

11  Championship-Caliber Boxers – a boxer faces a complex series of contracts and

12  transactions, including a key contract with the bout's promoter.  This can be

13  difficult, especially for fighters who are not experienced in the business side of

14  boxing or who lack significant formal education.  A manager's professional role

15  (and ethical responsibility) is to represent the boxer in these various negotiations

16  and the boxer's other boxing related dealings.

17      9.      The manager typically receives a percentage of the boxer's "purse" for

18  each bout.  The "purse" is the amount of money the boxer receives from the

19  promoter of a fight, who guarantees the purse.  Because the manager's

20  compensation is ordinarily tied to the purse, the manager is incentivized to

21  negotiate the best terms possible from the promoter for the benefit of the boxer and

22  himself.

23      10.     Many states require boxing managers to be professionally licensed,

24  and have promulgated regulations governing managers' conduct.  In California, for

25  example, managers must pass a written examination administered by the State

26  Athletic Commission in order to be licensed.  See Calif. Code Regs. title 4,

27  § 218(a).  In Nevada, managers must apply for a license as provided in Nev.

28  Admin. Code § 467.012.

FIRST AMENDED COMPLAINT FOR SHERMAN
                                                                ACT VIOLATIONS, UNFAIR PRACTICES ETC.

11.     The Haymon Defendants hold an overwhelmingly dominant position in the market for professional boxing managers.  They manage numerous Championship-Caliber Boxers, including many current and former world champions and the foremost challengers for their championship belts.  Plaintiffs are informed and believe and, on that ground, allege that every fighter managed by the Haymon Defendants is required to sign an agreement granting those defendants total control over the boxer's career and revenue-generating activities.  No other boxing manager represents more than a handful of Championship-Caliber Boxers and none obtains the extraordinary rights the Haymon Defendants demand from all of their boxers.

The Haymon Defendants' total domination of the market for managing of Championship-Caliber Boxers is why Al Haymon has been called "the most powerful man in boxing"[1] and "the Rasputin of boxing"[2] as well as being called "the Terminator" for his apparent ability and willingness to damage or destroy the careers of any boxer he manages any time he wants.[3]  No other manager in professional boxing represents anywhere near as many boxers, or exercises anywhere near as much raw and potentially destructive power.

## Promoters

12.     Promoters perform a fundamentally different role from managers.  The Ali Act defines "promoter" as "the person primarily responsible for organizing, promoting, and producing a professional boxing match."  15 U.S.C. § 6301(9).  Unlike managers, the function of a boxing promoter is not to represent or advise boxers.  On the contrary, through the boxers' managers, the promoters contract with

---

[1]  Snowden, *Is HBI vs. Al Haymon Boxing's Next Big Fight?*, BLEACHER REPORT, Mar. 12, 2015, http://bleacherreport.com/articles/2393981-is-hbo-vs-al-haymon-boxings-next-big-fight.  Sports Business Journal 4/20/2015 http://www.sportsbusinessdaily.com.

[2]  Goldman, Boxing Insider Mar. 19, 2014; http://www.boxinginsider.com.

[3]  http://12asaltos.com April 22, 2015.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

FIRST AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ETC.

boxers for the boxers to participate in one or more bouts in return for negotiated compensation paid by the promoter.  In negotiating such contracts, promoters occupy a position adverse to both boxers and their managers.  Promoters make money primarily from selling tickets, television rights, and sponsorship rights for a bout, and from other promotional activities.  The promoter assumes the financial risk of a bout.  His profit depends on his ability to generate more money than he spends in promoting each fight.

13.     The Ali Act imposes strict requirements on promoters.  For example, the Act prohibits coercive contracts between promoters and boxers, requires promoters to make extensive financial disclosures to state boxing commissions and to boxers, and imposes an obligation on promoters to notify the relevant state boxing commission before any professional boxing match is held.  *Id.* §§ 6307b, 6307e, 6310.  And of course, a promoter cannot act as a manger of a boxer and cannot even "have a direct or indirect financial interest in the management of a boxer."  *Id.* § 6308(b)(1)(A).

14.     States also regulate promoters.  In California, for example, a promoter must demonstrate, among other things, that he possesses "financial responsibility" and the "necessary knowledge and experience to act as a promoter" in order to obtain a license.  Calif. Code Regs. title 4, § 213.  Additionally, the relationship between a boxer and promoter must be set out in a signed written contract on the form approved and signed by and filed with the State Athletic Commission, containing contract terms limited by the California Code of Regulations and enforced by the Commission.  *Id.* § 222, et seq.

15.     As alleged hereinbelow, the Haymon Defendants, already dominant in the market for managing Championship-Caliber Boxers, are attempting to monopolize the market for promoting the bouts of such boxers.  Before they began that unlawful attempt, the market for promoting the bouts of such boxers was traditionally competitive.  If Haymon is allowed to continue his unlawful and

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

anticompetitive conduct, all legitimate promoters will be driven from the promotion market.

**The Reason for the Mandatory "Firewall" Between Managers and Promoters**

16.     The Ali Act's "firewall" between boxing managers and promoters was intended to remedy severe problems that had long plagued the boxing business.

Because the amount a promoter makes is, in part, a function of how much it pays the boxers – that is, how big of a "purse" the promoter guarantees – promoters and boxers sit on opposite sides of the bargaining table.  The promoter does not owe a fiduciary duty to the boxer.  Rather, it is the manager's job to represent the boxer against the promoter in negotiating promotional contracts or contracts for a specific bout.  In order for a manager to effectively perform his duty as a fiduciary, he should not and cannot simultaneously sit on the other side of the table, acting as (or on behalf of) a promoter or even have any "direct or indirect financial interest" in a promoter.

17.     Before the era of protective legislation, boxing managers often crossed the line between management and promotion, frequently leading to disastrous results for boxers who, all too often, ended up physically damaged and penniless, or, like the great heavyweight champion Joe Louis, who, after making many millions for others, ended his days humiliatingly serving as a "greeter" in the lobby of a Las Vegas hotel.

18.     In enacting the Ali Act, Congress intended to protect boxers, the boxing industry, and the public from abusive, exploitive, and anticompetitive behavior.  According to the Senate Report, establishing a strict "firewall" between managers and promoters was imperative:  "[I]t remains essential that . . . the manager serve and protect the interests of the boxer.  They should not be serving the financial interests of the promoter, while simultaneously taking a 33% earnings cut from the boxer for biased representation as manager.  It is not plausible for a boxer to receive proper representation and counsel from a manager if the manager

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

is also on the payroll of a promoter.  This is an obvious conflict of interest which works to the detriment of the boxer and the advantage of the promoter.  The Committee received testimony about instances wherein boxers had suffered significant career and economic injury due to their manager's clear conflicting interests.  ***A manager must be a determined advocate for the boxer's interests and not be influenced by financial inducements from a promoter***."  S. Rpt. No. 106-83, at 9 (June 21, 1999) (emphasis added).

19.     And, of course, the deleterious effect of a manager functioning as an unlicensed promoter is compounded if the manager denies his boxers the right to contract with the promoter of their choice.  In enacting the Ali Act, Congress also sought to promote fair and open competition in the boxing industry.  The express purpose of the Act was to "reform unfair and anticompetitive practices in the professional boxing industry."  Pub. L. No. 106-210, 114 Stat. 321 (2000).  The Senate Report specifically condemned exclusive long-term contracts that restricted boxers' ability to choose a promoter, stating that "***athletes would be better served, as would open competition in the sport, if boxers were free to contract with those promoters they personally choose***."  S. Rpt. No. 106-83, at 7–8 (June 21, 1999) (emphasis added).  In promoting fair competition, the Ali Act benefits not only professional boxers, but everyone with a stake in the boxing business, as well as the public at large.

## The Defendants' Illegal, Tortious, and Anticompetitive Conduct

20.     While managing numerous Championship-Caliber Boxers, the Haymon Defendants not only have an illegal "direct or indirect financial interest in the promotion of" those boxers, they have actually functioned during the Covered Period, and are currently functioning, as unlicensed promoters for the boxers they manage, using their illegal dual role to exclude legitimate promoters from business opportunities essential to their ability to compete.  For example, Al Haymon was widely recognized as and accurately called the "main promoter" of the immensely

FIRST AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ETC.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

lucrative bout on May 2, 2015 between Floyd Mayweather and Manny Pacquiao,[4] and, during the Covered Period, the Haymon Defendants have promoted numerous bouts in California, and elsewhere.  By such tactics, the Haymon Defendants, already controlling the business of managing boxers, now intend to obtain a monopoly of the business of promoting boxing matches.

21.    Thus, the Haymon Defendants are using their dominance in one business to take over and monopolize another business that federal and state law prohibit them from even entering.  They are, currently and intentionally, leveraging their dominant position as managers of Championship-Caliber Boxers to acquire, maintain, expand their power in and monopolize the business of promoting the bouts of such boxers.  With massive funding from Waddell, arranged by Caldwell, the Haymon Defendants are currently acting to buy up and monopolize the entire vertical channel – from "locking in" all the top boxing talent, to "tying out" legitimate promoters from all the top boxers and boxing matches, excluding legitimate promoters from the best venues and from the exhibition of their bouts on network television.

22.    Before the events on which this action is based, the Haymon Defendants sought to eliminate competition in the business of promoting the fights of Championship-Caliber Boxers by acquiring the Golden Boy Plaintiffs and eliminating De La Hoya as a competitor.  To that end, the Haymon Defendants, acting through a "straw man" arranged by Caldwell, offered to purchase 100% of the equity interest in the ultimate parent of the Golden Boy Plaintiffs, but conditioned their offer on obtaining an onerous and lengthy non-competition agreement from De La Hoya.  The involvement of the Haymon Defendants in this purchase was to be concealed, since their acquisition of the ultimate parent of a major promoter would violate the law and perhaps expose defendants' scheme to

---

[4]  Bill Dwyre, Los Angeles Times April 4, 2015 pp. D1-2.

FIRST AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ETC.

1    monopolize the business of promoting boxing matches.  Defendants' proposed

2    acquisition was not completed, because De La Hoya refused to accept the onerous,

3    anti-competitive restrictions on his boxing related activities ostensibly demanded

4    by the proposed buyers, but actually demanded by the Haymon Defendants.

5         23.    Not having acquired the Golden Boy Plaintiffs, defendants determined

6    to drive them and other promoters from the American boxing business and are now

7    moving ahead with their plan to monopolize the business of boxing promotion.

8    Managing an extraordinary number of Championship-Caliber Boxers has already

9    given the Haymon Defendants a dominant share of the market for managing boxers.

10   Now, the Haymon Defendants are actively seeking to leverage that dominant share

11   into a monopoly of the different market for promoting boxing matches, by means of

12   illegal, predatory and anti-competitive acts during the Covered Period designed to

13   eliminate all competition in the promotional market.  For example, while falsely

14   claiming they are not promoters, the Haymon Defendants have prevented, and are

15   currently preventing, the numerous boxers they manage from signing contracts with

16   any other promoter – even where such contracts are required by law.

17        24.    By leveraging their dominant position as managers to preclude all of

18   their boxers from freely contracting with legitimate promoters of their choice, the

19   Haymon Defendants are currently excluding legitimate, licensed promoters from

20   accessing and promoting most Championship-Caliber Boxers.  This, in turn, allows

21   the Haymon Defendants to act illegally as both the manager and unlicensed

22   promoter of such boxers without facing competition.  Because Al Haymon

23   possesses immense power in the boxing management business, the effect of this

24   "tie out" arrangement on the business of promoting the matches of Championship-

25   Caliber Boxers is substantial, resulting in many millions of dollars of lost revenue

26   to legitimately licensed promoters.

27        25.    In addition to excluding legitimate promoters from the contractual

28   relationship with boxers required by law, the Haymon Defendants are currently

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

FIRST AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ETC.

seeking to exclude legitimate promoters from every facet of the boxing business essential to success in the business of promoting the fights of Championship-Caliber Boxers.  For such boxers at the top of their profession, national television broadcasts of their bouts are a critical and essential component of their careers.  As a part of their widespread and illegal activities as unlicensed promoters of Championship-Caliber Boxers, the Haymon Defendants, advised, aided and abetted by Caldwell and using hundreds of millions of dollars supplied by Waddell, have, during the Covered Period, purchased air time on almost every major television network in the U.S. and are now using that owned and controlled network time for the presentation of nationally televised boxing matches featuring the Championship-Caliber Boxers they manage.  Numerous such televised matches have already been promoted by the Haymon Defendants during the Covered Period, and Defendants intend to make such arrangements with, and promote such bouts on, every major U.S. network.  Reversing the ordinary flow of money from the network to the promoter, the Haymon Defendants are currently paying the networks to broadcast their bouts, rather than having the networks pay them.  The Haymon Defendants are currently paying all costs of the broadcasts and matches, even providing the boxers' purses.  The Haymon Defendants' presentation of numerous such matches on network television, during the Covered Period, on air time purchased and owned by such defendants, is patently an act of promotion by a boxing manager contrary to both federal and state law.  These boxing shows promoted by the Haymon Defendants are, of course, broadcast to and widely viewed in California.

The Haymon Defendants are currently buying up such time on the major networks and illegally promoting such boxing matches on network television as a device to preclude legitimate promoters from doing so and to lure such boxers away from other promoters, so as to drive such competitors from the promotion business and thus to further their attempts at monopolization.  The Haymon Defendants have

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

also violated federal and state laws during the Covered Period by requiring boxers to sign "coercive contracts."  For example, boxers must sign multi-year contracts with the Haymon Defendants in order to participate in the Haymon Defendants' own televised bouts.

The Haymon Defendants have paid out vast sums during the Covered Period, and are continuing to pay out vast sums, to acquire such air time on virtually every American television network.  The Haymon Defendants are incurring temporary losses estimated in the hundreds of millions of dollars, in order to dominate and control the promotion of boxing on American network television and further their ability to effect a monopoly of the promotion business.  Once they have achieved the monopoly position they seek, defendants will exercise their economic power to reverse the financial arrangements, recoup their losses, pay less to boxers and reap massive profits, far in excess of their temporary losses, by charging supracompetitive prices to networks, sponsors and consumers.  As defendants themselves have put it, they are "turning the model completely upside down" and acting as "the irrational player for a while" in order to profit handsomely and monopolistically in the long run.

The Haymon Defendants have also acted during the Covered Period to "lock up" access to the major U.S. television networks for boxing matches by inducing the television networks whose time they have purchased, or are seeking to purchase, for such televised bouts to deal exclusively with the Haymon Defendants and not to deal with other promoters.  The major U.S. networks who are tied up by agreement with the Haymon Defendants, or who are likely to reach such an agreement with the Haymon Defendants, have acquiesced in this and are denying air time for the fights of legitimate promoters.

Even with respect to boxing matches other than those they promote on their own network television shows, the Haymon Defendants have functioned during the Covered Period and are continuing to function, regularly and illegally, as promoters

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

FIRST AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ETC.

of bouts featuring the Championship-Caliber Boxers they manage.  They arrange and contract for the bouts, the arenas, the sponsors, and they arrange and contract for the critical television broadcasts of such bouts.  Such televised matches are currently broadcast to and widely viewed in California.  In all of the foregoing situations, the Haymon Defendants, having, during the Covered Period, functioned illegally, and are currently functioning illegally, as the promoters of the bouts in which the Championship-Caliber Boxers they manage participate.  And, of course, the Haymon Defendants have much more than just a "direct or indirect financial interest in the promotion of" all such bouts, which, in itself, is illegal.

With respect to some of the boxing events they promote, the Haymon Defendants are seeking to create the false impression that they are not really the promoters of such events by employing licensed promoters, controlled or dominated by them, to "front" for them, posing as the nominal promoters of such events for a fixed fee, while, in fact, the true promoters are the Haymon Defendants.  By such use of such "sham" promoters, who, in effect, "rent" the promoters' licenses to Al Haymon, the Haymon Defendants are not only taking a "direct or indirect financial interest in the promotion of a boxer" in violation of federal and state law, they are, in every sense, the true entrepreneurs and promoters of the bouts, taking the profits, making the decisions, compensating the boxers and paying fixed fees to the sham "promoters," with whom they collude to "front" for them and who do not make the key promotional decisions and do not even have promotional contracts with the boxers they purport to promote.

Just as they are acting to "lock up" network air time in order to lock out their competitors, the Haymon Defendants have acted, during the Covered Period and are continuing to act, to "lock up" all desirable dates for bouts in major arenas, doing so, here again, to render the Golden Boy Plaintiffs and other legitimate promoters unable to arrange attractive and profitable bouts for their Championship-Caliber Boxers at such arenas.  During the Covered Period, the Haymon Defendants have

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

used fraudulent representations to "lock up" desirable dates for matches at major venues in order to block bouts promoted by the Golden Boy Plaintiffs at such arenas on those critical dates.  The Haymon Defendants, directly or through their "sham promoters," reserve such arenas for desirable dates, concealing that they have no real intention of staging such bouts at those arenas on those reserved dates.  Once the Golden Boy Plaintiffs, forced by defendants' blocking tactics, schedule their bouts at less desirable arenas on those critical dates, the Haymon Defendants simply cancel their holds on the desirable arenas.  The Haymon Defendants are currently continuing that fraudulent and illegal practice.  And, during the Covered Period, the Haymon Defendants have attempted, by other unlawful means, to prevent legitimate promoters from arranging desirable boxing matches, so that, by such schemes, defendants can induce boxers to sever their relationship with other promoters and such legitimate promoters will be driven from the business.  Plaintiffs are informed and believe and, on that ground, allege that the Haymon Defendants have also illegally enhanced their ability to promote boxing matches by engaging, during the Covered Period, in other conduct unavailable to law abiding promoters, such as conspiring with others to illegally "scalp" tickets to matches featuring Championship-Caliber Boxers, in order to increase defendants' revenue, and by failing to pay the taxes properly due in respect of such sales and other income from such matches.

The Haymon Defendants are currently exploiting another unfair and illegal advantage over legitimate boxing promoters.  As described above, legitimate boxing promoters must comply with extensive regulatory requirements at both the federal and state levels that place rigorous limits and duties on legitimate promoters.  Under the Ali Act, for example, a promoter must not function as a manager or have any financial interest in a manager; and, before receiving any proceeds of a bout, promoters must make detailed financial disclosures to boxers, as well as to state boxing commissions.  In California, promoters must be licensed,

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

FIRST AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ETC.

and all contracts of promoters must be submitted to, and approved by, the State Athletic Commission, must be in writing and on a required form designated by the Commission and must conform to terms and restrictions specified by regulation.

During the Covered Period, the Haymon Defendants have not complied with any of these laws and regulations, and they intend to continue their non-compliance – to their unfair advantage and to the detriment of boxers, legitimate promoters, and ultimately the public.  In addition, the Haymon Defendants also appear to be planning violations of 15 U.S.C. § 6308(c) in that they intend to act illegally as a "sanctioning organization" to proclaim their own in-house "champion," and are even preparing championship belts, while, at the same time, they are receiving economic benefits from boxers and their bouts, through their acting as both a manager and promoter.

### RELEVANT MARKET AND MARKET POWER

26.     The Defendants' conduct described hereinabove significantly impacts two relevant markets – the market for managing "Championship-Caliber Boxers," and the market for promoting the bouts of such boxers.

### The Market for Managing Championship-Caliber Boxers

27.     In the United States boxing industry, there is a distinct and defined market for managing Championship-Caliber Boxers.  The Supreme Court has recognized, for purposes of the Sherman Act, that, within the professional boxing business, there are distinct tiers of boxers, and those separate tiers correlate with separate and distinct markets.  In *International Boxing Club of New York, Inc., v. United States*, for example, the Court affirmed that the relevant market in that case had properly been defined as "the promotion of *championship* boxing contests in contrast to *all* professional boxing events."  358 U.S. 242, 249 (1959) (emphasis in original).  The Court recognized that "the 'cream' of the boxing business . . . is a sufficiently separate part of the trade or commerce to constitute the relevant market for Sherman Act purposes."  *Id*. at 252.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

28.     Thus, management services provided to Championship-Caliber Boxers – "the 'cream' of the boxing business" – are fundamentally different from, and therefore not interchangeable with, management services provided to boxers in the lower tiers of the boxing business.  The business affairs of a Championship-Caliber Boxer are inherently more complex than those of other professional boxers. The manager charged with handling the business affairs of a Championship-Caliber Boxer must be skilled and experienced in many areas of business and even some areas of law.  Managing a Championship-Caliber Boxer who participates in pay-per-view televised and richly sponsored bouts held in venues like the MGM Grand in Las Vegas or Madison Square Garden, where the purse may range in the tens or even hundreds of millions of dollars, does not compare with managing a boxer in untelevised bouts at minor venues, where the purse may only be in the thousands or even hundreds. The necessary business and legal acumen also makes it difficult, if not impossible, for a Championship-Caliber Boxer to serve effectively as his own manager.

29.     Moreover, because of the unique nature of the professional boxing industry, people and firms that represent other types of professional athletes, like baseball players or football players, cannot be – and, as a matter of practice, are not – a substitute for the manager of Championship-Caliber Boxers.  Unlike other professional sports, there are no professional leagues; rather, promoters and "matchmakers" arrange bouts on an individualized basis.  In order for the boxers to get paid, boxing managers have to negotiate with boxing promoters – a role for which there are no clear analogies in other professional sports.  Moreover, boxing is closely regulated by state and federal laws and regulations that reflect and respond to the extraordinary nature of boxing.  Simply put, boxing managers operate in a wholly different market from agents who represent other professional athletes.

30.     There are also barriers to entry in the market for managing for Championship-Caliber Boxers.  As previously noted, boxing managers must be

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  professionally licensed in many states, including California and Nevada.  In

2  California, licensure requires that the applicant take and pass a written exam.  In

3  order to effectively represent Championship-Caliber Boxers, a manager must

4  possess deep knowledge and experience in both the boxing industry and many areas

5  of business and even law.  Moreover, the use of long-term exclusive contracts by

6  established managers of Championship-Caliber Boxers makes it extremely difficult,

7  if not impossible, for new entrants to obtain Championship-Caliber Boxers as

8  clients.

9        31.    The relevant geographic market for managers of Championship-

10  Caliber Boxers is the United States.  Although there are some foreign-based

11  managers, none have gained a significant number of such boxers to serve as a close

12  substitute for the U.S.-based managers.

13        32.    Because of these market characteristics, a small but significant non-

14  transitory increase in a manager's compensation by a hypothetical monopolist

15  would not induce significant substitution by customers (in this case, boxers) to

16  managers from outside the market.

17  **The Market for Promoting the Bouts of Championship-Caliber Boxers**

18        33.    In the United States boxing business, there is also a distinct market for

19  promoting the bouts of Championship-Caliber Boxers.  As indicated above, the

20  Supreme Court has already acknowledged that the promotion of top tier boxers is a

21  separate and distinct market from that of promoting "all boxers."  *International*

22  *Boxing Club of New York, Inc. v. United States*, *supra*, 358 U.S. at 249.

23        34.    Promoting a boxing match involving a Championship-Caliber Boxer,

24  is fundamentally different from promoting matches in the lower strata of boxing.  In

25  order to effectively promote a large-scale, highly visible boxing match involving

26  Championship-Caliber Boxers, a promoter must have sufficient financial resources

27  to shoulder essential expenditures and obligations, including those required to

28  acquire an appropriate venue, attract major sponsors and advertisers, contract with

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    innumerable outside vendors, and guarantee a sizeable "purse" to the boxers and

2    their managers – which may be in the tens of millions of dollars.  Planning and

3    negotiating each of these highly complex arrangements and, perhaps most

4    importantly, the television broadcast of the bouts,  whether "free" or pay-per-view,

5    requires extensive, often arcane knowledge of multiple businesses, not to mention

6    possessing useful connections in each business area.  A promoter who operates in a

7    lower strata of the industry simply cannot accomplish what the promoter of a

8    Championship-Caliber Boxer can.  For this reason, promoters for lower-tier boxers

9    are not interchangeable with promoters of Championship-Caliber Boxers.

10         35.    In the world of professional sports, nothing remotely compares to the

11   unique business of professional boxing promotion.  A professional baseball or

12   tennis player, for example, does not directly contract with a third party to organize,

13   sell tickets for, televise, and otherwise promote his or her games or matches.

14   Rather, these activities are handled by an overarching league or governing

15   organization, such as Major League Baseball or the Association of Tennis

16   Professionals.  Unlike the situation in other sports, there are no close substitutes for

17   licensed promoters of Championship-Caliber Boxers.

18         36.    Due in large part to the factors described above, there are significant

19   barriers to entry in the market for promoting Championship-Caliber Boxers.  While

20   all promoters must be professionally licensed and comply with extensive laws and

21   regulations, only those with significant financial resources, deep industry

22   knowledge, and far-reaching business contacts and acumen can orchestrate a high-

23   profile boxing match for Championship-Caliber Boxers – and shoulder the sizeable

24   financial risk associated with each such promotion.  Moreover, the statutory

25   "firewall" separating managers from promoters prevents many industry insiders – at

26   least the law-abiding ones – from engaging in promotion.  These inherent barriers

27   to entry are exacerbated by the Haymon Defendants' long-term "tie out" contracts,

28   which effectively prevent numerous Championship-Caliber Boxers from

FIRST AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ETC.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   contracting with legitimate promoters of their choice, whether the promoters are

2   new entrants or incumbents.

3       37.     Because of these market characteristics, a small but significant non-

4   transitory increase in price by a hypothetical monopolist would not induce

5   significant substitution by customers to promoters from outside the market.

6       38.     The relevant geographic market for promoters of Championship-

7   Caliber Boxers is the United States.

8       39.     The market for promotion of Championship-Caliber Boxers is distinct

9   from the market for management of Championship-Caliber Boxers.  As alleged

10  hereinabove, applicable state and federal laws, create a "firewall" between these

11  two separate markets, and no single person may lawfully participate in both markets

12  at the same time.  As a practical matter, most market participants do in fact respect

13  the boundary between these markets – with the notable exception of the Haymon

14  Defendants who, as alleged hereinabove, simply ignore that statutory, policy based

15  boundary.

16  **The Defendants' Market Power**

17      40.     The Haymon Defendants already possess monopoly power in the

18  primary relevant market – the market for management of Championship-Caliber

19  Boxers.  They have achieved unprecedented dominance in that market.  Plaintiffs

20  are informed and believe and, on that ground, allege that they currently manage at

21  least 100 Championship-Caliber Boxers.  No other boxing manager represents more

22  than a handful of such boxers or obtains the sweeping rights demanded by the

23  Haymon Defendants.  While Plaintiffs do not have access to precise figures,

24  Plaintiffs are informed and believe and, on that ground, allege that the Haymon

25  Defendants' present share of this relevant market is significantly greater than 50%.

26      41.     By engaging in the illegal, tortious, and anticompetitive conduct

27  alleged herein, the Haymon Defendants are now leveraging their monopoly position

28  in the primary relevant market for management of Championship-Caliber Boxers to

1   undermine and eliminate competition in and monopolize the secondary relevant

2   market for promoting the bouts of such boxers.

3       42.   The ability of the Haymon Defendants to foreclose competition in that

4   secondary relevant market is currently enhanced by a "lock in" effect.  Due to

5   (i) asymmetrical sophistication and bargaining power between the Haymon

6   Defendants and their boxers, (ii) the impracticality (if not impossibility) of

7   assessing the long-term costs and effects of the Haymon Defendants' promoter "tie

8   out" clauses, (iii) the high costs of switching from one manager to another, (iv) the

9   lengthy terms of the Haymon Defendants' management contracts, and (v) the

10  relative lack of adequate substitutes for their management services, boxers,

11  including Championship-Caliber Boxers, are highly susceptible to being "locked

12  in" to the Haymon Defendants' exclusionary contracts.  Once "locked in," the

13  Haymon Defendants' boxers are contractually precluded from entering into

14  agreements with legitimate promoters.  Therefore, the "lock out" effect not only

15  strengthens the Haymon Defendants' dominance in the primary market for

16  management of Championship-Caliber Boxers, it enhances their ability to

17  monopolize the secondary market for promotion of such boxers.

18                **ANTICOMPETITIVE EFFECTS AND DAMAGES**

19      43.   The Haymon Defendants, financed by Waddell and advised, aided and

20  abetted by Caldwell, have, during the Covered Period, engaged in, and are currently

21  engaging in, the business of professional boxing management and the business of

22  professional boxing promotion throughout the United States, including California.

23  In connection with this business, monies, contracts, bills, and other forms of

24  business communication and transactions are transmitted in a continuous and

25  uninterrupted flow across state lines.  Defendants have used and are continuing to

26  use various devices to carry out the illegal acts alleged herein, including the United

27  States mail, interstate travel, and interstate telephone commerce.  Defendants'

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

FIRST AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ETC.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  activities are within the flow of, and have substantially affected, interstate

2  commerce.

3       44.    As a direct and proximate result of the Haymon Defendants' unlawful

4  actions, competition has been, during the Covered Period, and is now, substantially

5  foreclosed in the relevant markets.  The Haymon Defendants' present conduct is

6  harming competition by reducing the ability of existing managers and promoters to

7  compete "on the merits" with the Haymon Defendants.  The Haymon Defendants'

8  conduct is also deterring entry into the relevant markets, and thereby reducing the

9  likelihood that rivals to the Haymon Defendants will emerge in the future.  By

10 undermining competition in these markets, the Haymon Defendants have, during

11 the Covered Period, affected, and are currently affecting, a substantial volume of

12 commerce – and proximately injuring boxers, legitimate promoters, and consumers

13 alike.  If the Haymon Defendants' conduct is not enjoined, and they obtain the

14 monopoly they seek in the market for promoting the bouts of Championship-

15 Caliber Boxers, those injuries will continue and become far more egregious.

16      45.    By ignoring the "firewall" between managers and promoters

17 established by the Ali Act, the Haymon Defendants are essentially sitting on both

18 sides of the bargaining table.  While purporting to act in their boxers' best interests

19 as managers, the Haymon Defendants have, at the same time, functioned during the

20 Covered Period, and are continuing to function, as promoters of their boxers'

21 matches – thereby creating the very conflict of interest the Ali Act sought to

22 remedy.  As a result, the numerous Championship-Caliber Boxers managed by the

23 Haymon Defendants – who comprise a significant part of the Championship-

24 Caliber boxing business – will, in the long run, earn less money and a lower share

25 of the profits from their bouts, with defendants pocketing the difference.

26      46.    The Haymon Defendants are currently exploiting their dominance in

27 the market for managing Championship-Caliber Boxers to exclude all legitimate

28 promoters from the different market for promoting such boxers.  If this conduct

FIRST AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ETC.

continues unabated, and the Haymon Defendants become the de facto sole promoter of Championship-Caliber Boxers, it will become increasingly difficult and even impossible for any such boxers who are not controlled by the Haymon Defendants to obtain the quality opponents, major arenas or network television exposure necessary to their careers.  In order to salvage their careers, Championship-Caliber Boxers will have no choice but to sign with the Haymon Defendants – as both managers and promoters.  As the power and influence of the Haymon Defendants in both relevant markets grow, they will be able to exert ever more control over the entire boxing business, to pay boxers less and retain more.

In addition, during the Covered Period, the Haymon Defendants have entered into "blocking" agreements that even prevent boxers they control from participating as sparring partners for boxers they do not control.

And boxers are hurt in still another way.  Given the Haymon Defendants' dominance as managers of numerous Championship-Caliber Boxers and their growing dominance in promoting the bouts of such boxers, they are able to follow a policy of calculated discrimination among the boxers they manage and promote, deliberately favoring some over the others, making it clear that any boxer who does not strictly and happily conform to the dictates of Al Haymon will receive less favorable terms and assigned bouts by the Haymon Defendants that are less desirable or even damaging to their careers.  This is why Haymon has been called "the Terminator."  If the competition is removed and the Haymon Defendants become essentially the sole promoters of Championship-Caliber Boxers, this discriminatory policy will make the careers and finances of every such boxer wholly dependent on the interests and dictates of Al Haymon, which will cause such boxers severe harm.

47.    The Haymon Defendants' scheme harms consumers as well.  The more power the Haymon Defendants have in the relevant markets, the less variety consumers will enjoy.  Their scheme will ensure that consumers see only Haymon

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

24

FIRST AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ETC.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  fights and Haymon boxers.  Moreover, once the predatory tactics of the Haymon

2  Defendants pay off, consumers will have to pay more to see such bouts.  The

3  Haymon Defendants fully expect not only to recoup their predatory outlays

4  currently being used to finance and monopolize the business of promoting boxing

5  matches, but also to reap a massive profit on their investment.

6       48.     Distributors and exhibitors of boxing content, including arenas and

7  broadcasters, also stand to lose.  As the Haymon Defendants exclude more

8  competitors from the market for promoting Championship-Caliber Boxers, arenas

9  will be forced to deal exclusively with the Haymon Defendants – giving those

10  defendants disproportionate bargaining power.  And once the Haymon Defendants

11  are the only show in town, there is no reason to believe that they will pay

12  broadcasters to air their content.  Not only will broadcasters be forced to pay the

13  Haymon Defendants, rather than vice versa, they will be forced to pay more than

14  they ever would in a competitive promotion market.

15       49.     The Golden Boy Plaintiffs and other promoters are already being

16  severely injured as a direct and proximate result of the Defendants' illegal, tortious,

17  and anticompetitive conduct.  But for the conduct of defendants alleged herein, the

18  Championship-Caliber Boxers managed by the Haymon Defendants would be free

19  to contract with legitimate boxing promoters, including the Golden Boy Plaintiffs;

20  and the legitimate promoters would be able to compete on the merits, to sign

21  Championship-Caliber Boxers, and to obtain network air time for their bouts as

22  well as major arenas on desirable dates.

23       50.     The Defendants' anticompetitive schemes, carried out during the

24  Covered Period, and currently being carried out, have already substantially harmed

25  competition in the primary and secondary relevant markets.  The cumulative

26  anticompetitive effects of this scheme lack any redeeming value and far outweigh

27  any ostensible procompetitive benefits that Defendants may allege.

28

51.     The Haymon Defendants and their co-conspirators have, during the Covered Period, engaged in, and are continuing to engage in, the illegal, tortious, and anticompetitive conduct alleged herein with the specific intent to maintain the Haymon Defendants' monopoly in the primary relevant market for management of Championship-Caliber Boxers in order to use that economic power to obtain a monopoly in the secondary relevant market for promoting the bouts of such boxers. If left unchecked, the Haymon Defendants have a dangerous probability of achieving monopoly power in the latter market.

52.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered significant harm.  The full extent of Plaintiffs' damages cannot yet be fully measured, but on information and belief, Plaintiffs allege that their damages exceed $100 million.  Such damages should be trebled pursuant to 15 U.S.C. § 15.

## CLAIMS FOR RELIEF

### FIRST CLAIM

**(Unlawful "Tie Out" in Violation of 15 U.S.C. § 1 –**

**Against All Defendants)**

53.     Plaintiffs incorporate each preceding and succeeding paragraph as though fully set forth herein.

54.     Defendants have knowingly and intentionally engaged in an unlawful contract, combination, or conspiracy constituting a per se violation of Section 1 of the Sherman Act.  15 U.S.C. § 1.

55.     Aided and abetted by Ryan Caldwell and with the financial backing provided by Waddell, the Haymon Defendants have, during the Covered Period, entered into agreements to restrain trade in a substantial portion of the market for promoting bouts of Championship-Caliber Boxers.  As alleged hereinabove, while the Haymon Defendants falsely insist that they are not promoters, their contracts to manage Championship-Caliber Boxers contain exclusionary provisions that

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

FIRST AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ETC.

condition their professional services on the boxers' agreement not to contract with legitimate boxing promoters.  These agreements constitute unlawful "tying" or "tie out" arrangements (sometimes known as "negative tying"), and as such, constitute *per se* violations of the Sherman Act.

56.     The Haymon Defendants' illegal agreements are creating a "tying" relationship between services sold in separately defined relevant markets:  the market for management of Championship-Caliber Boxers (i.e., the "tying" market), and the market for promoting the bouts of Championship-Caliber Boxers (i.e., the "tied" market).

57.     The Haymon Defendants are exercising monopoly power in the market for management of Championship-Caliber Boxers (i.e., the "tying" market).  Their dominance in the "tying" market is sufficient to substantially affect competition in the market for promotion of the bouts of Championship-Caliber Boxers (i.e., the "tied" market).  The Haymon Defendants' ability to use their power in the "tying" market to foreclose competition in the "tied" market is enhanced by the susceptibility of Championship-Caliber Boxers to become "locked in."

58.     The Haymon Defendants' imposition of unlawful "tying" or "tie out" provisions in their contracts with Championship-Caliber Boxers has in fact had a significant adverse effect on a substantial volume of commerce to the extent of many millions of dollars and is continuing to have that effect.

59.     As a direct and proximate result of Defendants' unlawful and anticompetitive conduct, Plaintiffs have been injured and damaged in its business and property.

## SECOND CLAIM

### (Conspiracy in Restraint of Trade in Violation of 15 U.S.C. § 1 –
### Against All Defendants)

60.     Plaintiffs incorporate each preceding and succeeding paragraph as though fully set forth herein.

61.     Defendants have knowingly and intentionally engaged in unlawful contracts, combinations, or conspiracies that have unreasonably restrained trade in violation of Section 1 of the Sherman Act.  15 U.S.C. § 1.  Their unlawful agreements include, but are not limited to:

A.     agreements between the Haymon Defendants and Waddell;

B.     agreements between the Haymon Defendants and Caldwell, who aided and abetted, participated in, and gained a direct or indirect financial interest in the Haymon Defendants' anticompetitive scheme;

C.     agreements between the Haymon Defendants and Championship-Caliber Boxers;

D.     agreements between the Haymon Defendants and boxing venues;

E.     agreements between the Haymon Defendants and television networks;

F.     agreements between the Haymon Defendants and advertisers;

G.     agreements between the Haymon Defendants and sponsors;

H.     agreements between the Haymon Defendants and "sham" promoters who act as "fronts" for the Haymon Defendants; and

I.     agreements between the Haymon Defendants and key employees "poached" from legitimate promoters.

To the extent that such agreements were entered into prior to the Covered Period, they were performed and carried out by illegal acts of defendants during the Covered Period.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

62.     As alleged hereinabove, Defendants have, during the Covered Period, engaged in, are now engaging in, a multi-faceted and far-reaching scheme to unreasonably restrain trade in the primary and secondary relevant markets.  This scheme includes, but is not limited to, the following unlawful and predatory conduct in which defendants are currently engaging:

A.     violating the prohibition, under state and federal law, against acting as both manager and promoter, so as to gain an unfair advantage over legitimate promoters or even having a direct or indirect financial interest in the promotion of a boxer while acting as a manager;

B.     violating numerous state and federal laws and regulations governing promoters with which legitimate promoters must comply;

C.     entering into unlawful "tie out" agreements to prevent Championship-Caliber Boxers from contracting with legitimate promoters of their choice;

D.     surreptitiously operating the promotion business through "sham" promoters;

E.     locking up boxing talent, venues, and television networks in exclusive dealing arrangements;

F.     fraudulently blocking other promoters from scheduling bouts at desired venues on favorable dates;

G.     paying broadcast companies for exclusive rights to television air time on most U.S. networks, so as to illegally present and promote televised boxing matches and to exclude legitimate promoters from promoting such matches on network television and to enhance the Haymon Defendants' unlawful presence in the promotion business and ability to monopolize that business;

H.     misappropriating trade secrets of legitimate promoters; and

I.     other unlawful, anticompetitive, and tortious conduct.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

FIRST AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ETC.

63.     As a direct and proximate result of this illegal, predatory and anticompetitive conduct, Defendants have, during the Covered Period, undermined and foreclosed, and are currently undermining and foreclosing, competition in a substantial share of the affected commerce.  Specifically, Defendants have maintained and expanded the Haymon Defendants' monopoly in the primary relevant market for management of Championship-Caliber Boxers, and, through their domination of the management market and their illegal and predatory conduct, are causing a significant adverse effect on a substantial volume of commerce in the secondary relevant market for promoting the bouts of such boxers.

64.     The anticompetitive effect of the Defendants' unlawful and anticompetitive conduct outweighs any ostensible procompetitive benefits.

65.     As a direct and proximate result of Defendants' unlawful and anticompetitive conduct, Plaintiffs have been injured and damaged in its business and property.

## THIRD CLAIM

### (Attempted Monopolization in Violation of 15 U.S.C. § 2 –
### Against All Defendants)

66.     Plaintiffs incorporate each preceding and succeeding paragraph as though fully set forth herein.

67.     During the Covered Period, defendants have engaged in, and are continuing to engage in, the predatory and anticompetitive conduct alleged hereinabove to leverage the Haymon Defendants' monopoly power in the market for managing Championship-Caliber Boxers, in an attempt to obtain a monopoly in the market for promoting the bouts of Championship-Caliber Boxers, in violation of Section 2 of the Sherman Act.  15 U.S.C. § 2.  This scheme includes, but is not limited to, the following unlawful and predatory conduct in which defendants are currently engaging:

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

A. violating the prohibition, under state and federal law, against acting as both manager and promoter, so as to gain an unfair advantage over legitimate promoters or even having a direct or indirect financial interest in the promotion of a boxer while acting as a manager;

B. violating numerous federal and state laws and regulations governing promoters with which legitimate promoters must comply;

C. entering into unlawful "tie out" agreements to prevent Championship-Caliber Boxers from contracting with legitimate promoters of their choice;

D. surreptitiously operating in the promotion business through "sham" promoters;

E. locking up boxing talent, venues, and television networks in exclusive dealing arrangements;

F. fraudulently blocking other promoters from scheduling bouts at desired venues on favorable dates;

G. paying broadcast companies for exclusive rights to television air time on most U.S. networks, so as to illegally produce and promote television boxing matches and to exclude legitimate promoters from promoting such matches on network television and to enhance the Haymon Defendants' unlawful presence in the promotion business and ability to monopolize that business;

H. misappropriating trade secrets of legitimate promoters and others; and

I. other unlawful, anticompetitive, and tortious conduct.

68. The Haymon Defendants' dominance in the primary relevant market of managing Championship-Caliber Boxers is sufficient to substantially affect competition in the secondary relevant market of promoting the bouts of such boxers. Their ability to use this power in the primary relevant market to foreclose

31

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

competition in the secondary relevant market is enhanced by the susceptibility of boxers to become "locked in."

69.    Defendants are engaging in predatory and anticompetitive conduct as alleged hereinabove with the specific intent to obtain for the Haymon Defendants a monopoly of the market for promoting the bouts of Championship-Caliber Boxers. If left unchecked, the Haymon Defendants have a dangerous probability of obtaining a monopoly in that market.

70.    As a direct and proximate result of Defendants' unlawful and anticompetitive conduct, Plaintiffs have been and will be injured and damaged in their business and property.

## FOURTH CLAIM

### (Injunctive Relief Under 15 U.S.C. § 26 -- Against All Defendants)

71.    Plaintiffs incorporate each preceding and succeeding paragraph as though fully set forth herein.

72.    As previously alleged, Defendants' illegal, tortious, and anticompetitive scheme violates Sections 1 and 2 of the Sherman Act.

73.    As a direct and proximate result of Defendants' unlawful and anticompetitive conduct, Plaintiffs have been and are being injured and damaged in their business and property.

74.    Unless enjoined, Defendants' unlawful and anticompetitive conduct will continue and cause further injury to competition, and Plaintiffs will continue to suffer irreparable injury for which there is no adequate remedy at law.

75.    Plaintiffs therefore seek equitable and injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, to correct for the anticompetitive effects caused by Defendants' unlawful and anticompetitive conduct, and other relief so as to assure that such conduct does not continue or reoccur in the future.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

FIRST AMENDED COMPLAINT FOR SHERMAN ACT VIOLATIONS, UNFAIR PRACTICES ETC.

# FIFTH CLAIM

## (Violation of the California Unfair Practices Act

## (Cal. Bus. & Prof. Code §§ 17000 *et seq.*) – Against All Defendants)

76.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

77.     All Defendants are persons engaged in business within the State of California.

78.     As previously alleged, during the Covered Period, the Haymon Defendants have purchased, and continue to purchase, hundreds of millions of dollars worth of network airtime from over half a dozen leading broadcasters to televise and promote their own boxing matches featuring the Haymon Defendants' boxers.  Ordinarily, television broadcasters pay for boxing broadcast rights – not the other way around.

79.     As previously alleged, during the Covered Period, Ryan Caldwell colluded with and aided and abetted the Haymon Defendants in purchasing many millions of dollars worth of network airtime, using Waddell's investment of over $400 million; attending meetings with broadcasters; negotiating directly with broadcasters; exercising significant control over the day-to-day business activities of the Haymon Defendants; and/or actively participating in the planning, financing, and execution of broadcast events under Al Haymon's brand.

80.     During the Covered Period, the Haymon Defendants have sold, and continue to sell, a product at less than the cost thereof, and/or have given away a product to the television broadcasters, as those terms are defined under California law.  *See*, *e.g.*, Cal. Bus. & Prof. Code §§ 17024, 17026, 17043.  The Haymon Defendants have taken these actions, and continue to take these actions, for the purpose of injuring competitors and/or destroying competition.

81.     The Haymon Defendants have sold, and continue to sell, a product at less than the cost thereof, and/or have given away a product to the television

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

FIRST AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ETC.

broadcasters, as a "loss leader," as those terms are defined under California law. *See*, *e.g.*, Cal. Bus. & Prof. Code §§ 17030, 17044. The Haymon Defendants have taken, and are currently taking, these actions for the purpose of injuring competitors and/or destroying competition.

82. In fact, the Haymon Defendants are literally paying broadcasters to take their product. This conduct is even more predatory, and even more damaging, than traditional below-cost or "loss leader" selling.

83. As a direct and proximate result of the Defendants' below-cost and "loss leader" selling, the Golden Boy Plaintiffs have suffered, and continue to suffer, an injurious effect in their business and property.

## SIXTH CLAIM

### (Unfair Competition – Against All Defendants)

84. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

85. California Business and Professions Code § 17,200 et seq. defines as "unfair competition" any unlawful or fraudulent business practice. As alleged hereinabove, the business practices of the Haymon Defendants violate numerous regulations and laws, are patently "unlawful" and thus "unfair competition."

### The Laws Violated

86. The laws violated and being violated by the Haymon Defendants include the following:

A. The Muhammad Ali Boxing Reform Act 15 U.S.C. § 1631 et seq. (the "Ali Act") explicitly creates a "Firewall between promoters and managers" and provides, inter alia, that it is unlawful for "a manager" to have "a direct or indirect financial interest in the promotion of a boxer" or "to receive compensation or other benefits from a promoter." 15 U.S.C. § 6308(b)(1)(B). In addition, Sections 6307e(a) and (b) require promoters to make financial disclosures

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1   with respect to each bout to the applicable State Athletic Commissions and to the

2   boxers they promote, and preclude a promoter from receiving the proceeds of a

3   bout without having complied with these requirements.  15 U.S.C. § 6309 makes it

4   a federal crime to violate these requirements.

5        B.   The California Code of Regulations, CCR Title 4 contains

6   similar provisions.  For example, CCR 396 provides it is unlawful for "any

7   member, stockholder, director or officer [of a promoter]" to "act directly or

8   indirectly as manager of a boxer."  The CCRs contain other provisions regulating

9   the conduct of boxing promoters and managers, by requiring promoters to be

10  licensed as such and requiring that their contracts be in writing on prescribed and

11  approved forms and meet specified standards.

12       C.   Nevada law makes it illegal to act as a promoter without a

13  license to so act.  Nevada Revised Statute §§ 467.080, 467.104.  The Nevada

14  Administrative Code also prohibits a promoter from acting directly or indirectly as

15  a manager or holding any financial interest in a boxer's management or earnings

16  from boxing matches.

17       D.   The Sherman Act, 15 U.S.C. §§ 1 and 2 make the conduct of the

18  Haymon Defendants illegal, in the respects alleged hereinabove.

19            **The Defendants' Conduct Violates The Applicable Laws**

20       87.   The conduct of the Haymon Defendants alleged hereinabove,

21  committed during the Covered Period, violates the Ali Act, and particularly

22  15 U.S.C. § 6308(b)(1)(A) and (B) and § 6307(e)(a) and (b), in that the Haymon

23  Defendants are managers and not only have "a direct or indirect financial interest in

24  the promotion of a boxer," but have actually functioned during the Covered Period,

25  and are actually continuing to function, as both managers and unlicensed promoters,

26  have, during the Covered Period, failed to provide, and are currently failing to

27  provide, the boxers they promote or state boxing commissions with the financial

28

disclosures required by the Ali Act and have unlawfully received, and are unlawfully receiving, the proceeds of numerous bouts without such compliance.

88.     The conduct of the Haymon Defendants alleged hereinabove also violates Title 4, Sections 211(3), 213, 220, 221, 222, 230, 243 263 and 396 of the California Code of Regulations, as well as Nevada Revised Statute Sections 467.080 and 467.104 as well as the Nevada Administrative Code, in that the Haymon Defendants regularly and repeatedly function as both managers and promoters, and do so without being licensed as promoters and without the promotional contracts required by law, and in that the Haymon Defendants prevent the boxers they manage from signing contracts with any legitimate promoters, as the law requires.

89.     By reason of the facts alleged hereinabove, the Haymon Defendants have, during the Covered Period, also violated and are continuing to violate Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, including violations during 2015.

90.     Much of the unlawful conduct of the Haymon Defendants alleged hereinabove occurred in California, virtually all of that unlawful conduct  was devised in and is managed in and emanates from California and has a significant impact in and on California and California consumers.

91.     In addition, during the Covered Period, the Haymon Defendants have blocked the Golden Boy Plaintiffs from obtaining desirable venues for their bouts on desirable dates by fraudulently asserting their intention to promote bouts at those venues on those dates, when, in fact, they have no such intention.

92.     The unlawful and fraudulent acts of the Haymon Defendants alleged hereinabove constitute fraudulent and unlawful business practices under federal and state law and are thus unfair competition as defined in California Business and Professions Code Section 17,200 et seq.  If not enjoined, the Haymon Defendants will continue their fraudulent and unlawful acts of unfair competition.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

## The Need For Equitable Relief

93.     As a direct and proximate result of the illegal conduct and unfair competition of the Haymon Defendants, plaintiffs are entitled to restitution from defendants in a substantial sum.  The full amount of that sum is difficult, if not impossible to compute or measure accurately, so that, if the Haymon Defendants are allowed to continue their illegal acts of unfair competition, plaintiffs will suffer severe and irreparable harm for which they have no adequate remedy at law.

WHEREFORE, plaintiffs pray for judgment against defendants jointly and severally as follows:

1.     For an injunction, permanently and pending final judgment in this case, precluding defendants and each of them, and their agents, employees and representatives of each of them, from having any direct or indirect financial interest in the promotion of bouts featuring boxers they manage, from acting as both boxing managers and boxing promoters, from presenting, or participating in the presentation of, boxing matches on television featuring such boxers, or from arranging the arenas, sponsors and/or television broadcasts of boxing matches featuring boxers defendants manage, from directing or otherwise causing or inducing boxers not to sign contracts with the Golden Boy Plaintiffs or other promoters, from attempting, in any way, to prevent plaintiffs from obtaining venues or other essential facilities for the boxing matches plaintiffs promote, from raiding the Golden Boy Plaintiffs' employees, from using the Golden Boy Plaintiffs' trade secrets to lure business from them, and from attempting, in any other way, to monopolize the business of promoting Championship-Caliber Boxers in the United States, and from financing or otherwise aiding or abetting commission of any of the acts so enjoined;

2.     For damages in the sum of $100 million or such other sum as shall be found;

3.     That such damages be trebled pursuant to 15 U.S.C. § 15;

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

4.      For restitution in such amount as shall be found;

5.      For interest at the highest lawful rate; rate on all monetary awards;

6.      For plaintiffs' reasonable attorneys' fees; and

7.      For costs of suit and such other or further relief as the Court shall deem just.


DATED:  August 10,  2015            GREENBERG GLUSKER FIELDS
                                    CLAMAN & MACHTINGER LLP


                                    By: /s/ Bertram Fields
                                    _____
                                        BERTRAM FIELDS (SBN 024199)
                                        Attorneys for Plaintiffs Golden Boy
                                        Promotions, LLC, Golden Boy
                                        Promotions, Inc. and Bernard Hopkins

# **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury on all issues so triable.

DATED:  August 10, 2015                    GREENBERG GLUSKER FIELDS
                                           CLAMAN & MACHTINGER LLP


                                           By: /s/ Bertram Fields
                                               BERTRAM FIELDS (SBN 024199)
                                               Attorneys for Plaintiffs Golden Boy
                                               Promotions, LLC, Golden Boy
                                               Promotions, Inc. and Bernard Hopkins

FIRST AMENDED COMPLAINT FOR SHERMAN
                                                                                ACT VIOLATIONS, UNFAIR PRACTICES ETC.

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Greenberg, Glusker, Fields, Claman & Machtinger LLP, 1900 Avenue of the Stars, 21st Floor, Los Angeles, California 90067.

On August 10, 2015, I served the following document described as **FIRST AMENDED COMPLAINT FOR SHERMAN ACT VIOLATIONS, UNFAIR PRACTICES ACT VIOLATIONS AND UNFAIR COMPETITION; JURY TRIAL DEMANDED** on the interested parties in this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

| | |
|---|---|
| Howard L. Weitzman, Esq. | *Attorneys for Defendants* |
| Jeremiah T. Reynolds, Esq. | *ALAN HAYMON; ALAN HAYMON* |
| Kinsella Weitzman Iser Kump | *DEVELOPMENT, INC.; HAYMON* |
| & Aldisert LLP | *SPORTS, LLC; HAYMON* |
| 808 Wilshire Boulevard | *BOXING MANAGEMENT;* |
| Third Floor | *HAYMON BOXING LLC; and* |
| Santa Monica, CA  90401-1889 | *RYAN CALDWELL* |

XX   **(BY MAIL)**  By placing the document(s) listed above in sealed envelope(s) in a designated "OUT" box in the office of my employer. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid. (CCP Section 1013a, 2015.5, FRCP section 5(B), or FRAP 25(d).

XX   **(BY CM/ECF)** The document listed above was also served on August 10, 2015, by electronic service by electronically filing said document with the U.S. District Court, Central District of California Case Management/Electronic Case Filing (CM/ECF) system. Upon completion of transmission of said document, a Notice of Electronic Filing (NEF) was issued to the filing party acknowledging receipt of said documents by the CM/ECF system and that notice had been electronically mailed to all parties.

XX   **(FEDERAL)**      I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on August 10, 2015, at Los Angeles, California.

Nancy L. Luis                           /s/ Nancy L. Luis
                                              Signature

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590