# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 11-08120 JVS(FMOx)                           Date   November 9, 2012
           **8:10ML02151 JVS(FMOx)**

Title      Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
           **A Member Case on <u>IN RE: TOYOTA MOTOR CORP. UNINTENDED
           ACCELERATION MARKETING, SALES PRACTICES, AND
           PRODUCTS LIABILITY LITIGATION</u>**

---

Present: The       James V. Selna
Honorable

| Karla J. Tunis | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:              Attorneys Present for Defendants:

Not Present                                    Not Present

**Proceedings:**   **(In Chambers)** Order Denying Motion to Strike Plaintiffs' Rebuttal Reports

This Order relates to the Economic Loss Class Action cases and the member case captioned above.[1]

This matter is before the Court on Toyota's Motion to Strike.  (Docket No. 3018.) Timely opposition and reply briefs have been filed.  Toyota moves to exclude a number of Plaintiffs' rebuttal expert reports on two grounds: Timeliness and exceeding the permissible scope of rebuttal reports.  The Court considers each.

As set forth herein, the Court denies the Motion to Strike.

---

[1]  At the hearing on this matter, counsel for Toyota (and more specifically, lead defense counsel for the personal injury/wrong death cases) advised the Court that, in his view, the present Motion did not apply to the <u>Van Alfen</u> matter.  However, the present Motion to Strike was captioned as related to "ALL CASES." (Docket No.  3018 (cover page).)  Counsel for the <u>Van Alfen</u> Plaintiffs clearly interpreted the Motion to Strike as related to the <u>Van Alfen</u> case, filing 25-page substantive Opposition and multiple exhibits.  Nevertheless, with the filing of the Reply, Toyota effectively reiterated that the Motion to Strike "relates to . . . ALL CASES."  (Docket No. 3119 (cover page).)
    Thus, the Court's notation directs the Clerk to file the present Order on both the MDL and the <u>Van Alfen</u> docket.  The Court has not indicated that the present Order is directed toward any other personal injury/wrongful death case because only the <u>Van Alfen</u> case has designated any of the expert reports at issue in the present Motion to Strike.

**EXHIBIT A**

**4**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 11-08120 JVS(FMOx)                                    Date   November 9, 2012
           **8:10ML02151 JVS(FMOx)**

Title     Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
          **A Member Case on IN RE: TOYOTA MOTOR CORP. UNINTENDED
          ACCELERATION MARKETING, SALES PRACTICES, AND
          PRODUCTS LIABILITY LITIGATION**

I.    Timeliness

       Toyota first moves to exclude three rebuttal expert reports as untimely.[2]
Specifically, Toyota moves to exclude the rebuttal reports of Michael Antaran, Erik
Mettala, and Phillip Koopman.  (Motion at 1.)  Under this Court's Order No. 17 (Docket
Nos. 1955 & 2524 (amendment)), the parties were required to disclose their rebuttal
experts no later than August 16, 2012, and the Order expressly provides that the parties
are precluded from relying on experts that are not identified pursuant to the schedule,
unless such disclosure is excused under the terms of the Order.  Plaintiffs admit that these
experts were not identified in the expert designation they served on August 16, 2012;
however, Plaintiffs note that the reports were served in a timely manner on September 17,
2012, and that Toyota was already aware of both the experts and the topics they were
expected to address.  (Econ Loss Pltfs.' Opp'n ("EL Opp'n") at 2 & 4 n.7; see also
Berman Decl. Ex. 1 (Econ Loss Pltfs.' initial expert disclosure (hereafter "EL Initial
Expert Disclosure")).)

       Under Rule 37(c)(1) of the Federal Rules of Civil Procedure, a party is precluded
from using expert reports where they are not disclosed in a timely manner.  See Yeti by
Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).  However,
Rule 37(c)(1) permits use whether the failure was either "substantially justified" or
"harmless."  Fed. R. Civ. P. 37(c)(1).  "Substantial justifi[cation]" implicates the reason
for the delay, while "harmless[ness]" requires inquiry into resulting prejudice.

       Plaintiffs offer substantial justification.  They state that the omission was an
oversight, borne of the massive scope of the present litigation and its resulting "flood of
information."  (Berman Decl. ¶ 2.)  Although the Court notes its agreement with Toyota's
observation that such litigation actually *increases* the need for accuracy and precision, the
Court nevertheless notes that it also increases the opportunity for honest error.

------

   [2]  Toyota moved to exclude the reports of William Berg and Steve Dose as well, but the
Plaintiffs have since indicated they are withdrawing their reports.  (Motion at 3 n.3; EL Opp'n at 1 n.1.)

**EXHIBIT A**

**5**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-08120 JVS(FMOx) | Date | November 9, 2012 |
| | **8:10ML02151 JVS(FMOx)** | | |

| | |
|---|---|
| Title | Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al. |
| | **A Member Case on IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION** |

Plaintiffs also establish that the delay was harmless.  Plaintiffs disclosed the topics of their expert testimony and identified their experts, including the ones at issue here, in their initial disclosures.  Although this falls short of confirming that an expert will offer a rebuttal report, with the extension of time in which to conduct expert discovery granted by the Court, the experts were tendered for deposition shortly after their reports were served.

The Court denies the Motion to Strike on timeliness grounds and turns its attention to the proper scope of rebuttal reports.

II.    Permissible Scope of Rebuttal Reports

Toyota next moves to exclude portions of a number of reports[3] because they exceed the permissible scope of rebuttal expert reports.

Rule 26(a)(2)(D)(ii) of the Federal Rules of Civil Procedure permits the admission of rebuttal expert testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified" by an initial expert witness. Thus, "[t]he function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 749, 759 (8th Cir. 2006) (internal quotation marks and citation omitted).  "Accordingly, a supplemental expert report that states additional opinions or seeks to strengthen or deepen opinions expressed in the original expert report is beyond the scope of proper supplementation and subject to exclusion under Rule 37(c)." Plumley v. Mockett, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010) (internal quotation marks and citation omitted).  Nevertheless, courts will not automatically exclude all materials that an expert could have included in his or her initial

---

[3] Plaintiffs defend the scope of the Koopman rebuttal report.  (See Van Alfen Pltfs.' Opp'n (hereafter "VA Opp'n") at 19-20.)  However, because Toyota moved to strike the Koopman rebuttal report only on timeliness grounds, the Court does not consider whether the Koopman rebuttal report exceeds the scope permissible rebuttal expert opinion.  (See generally Motion to Strike (no argument regarding the scope of the Koopman rebuttal report) & id. at 24 (chart of reports sought to be stricken and the reasons therefor).)

**EXHIBIT A**
**6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    CV 11-08120 JVS(FMOx)               Date    November 9, 2012
            **8:10ML02151 JVS(FMOx)**

Title    Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
         **A Member Case on IN RE: TOYOTA MOTOR CORP. UNINTENDED
         ACCELERATION MARKETING, SALES PRACTICES, AND
         PRODUCTS LIABILITY LITIGATION**

report, and an expert "may need to include significant elaboration in a rebuttal report to challenge the asserts of the opponent's expert reports."  Pakootas v. Teck Cominco Metals, Ltd., CV-04-256-LRS, 2012 WL 1833397, at *1 (E.D. Wash. Apr. 4, 2012) (internal quotation marks and citation omitted).

A.    Ernest Manuel

       Toyota moves to strike the rebuttal report of Ernest Manuel, arguing that he merely expands upon his initial report, presenting a new damages approach by presenting a new media correlation analysis.  (Motion at 14-15.)

       Plaintiffs respond that Manuel's media correlation analysis is offered to rebut the opinion of Edward P. Lazear.  (EL Opp'n at 12-17.)  According to Plaintiffs, the Lazear opinion addressed Plaintiffs' inability to prove causation or damages through a common analytical method of proof because of the demonstrated lack of uniform price decreases across all subject vehicles relative to competitor models.  (EL Opp'n at 12-13 & nn.12-13 (citing Lazear initial report ¶¶ 120-29 & 161).)  In Plaintiff's view, the Manuel rebuttal report answers this criticism by analyzing price decline for those models upon which there was substantially more negative media attention, correlating media coverage with negative price variances.  (EL Opp'n at 13-14.)  In doing so, Manuel additionally analyzed portions of the Toyota initial expert report of Kimberly Neuendorf.  (EL Opp'n at 14.)

       In its Reply, Toyota argues that Manuel could have, should have, and likely did contemplate setting forth in his initial report an analysis such as the one presented in his rebuttal report.  (Reply at 11-12.)

       Assuming Toyota's point is apt, it is still of little consequence.  Strict adherence to a rule that an expert is barred from introducing relevant material in rebuttal if that material is not included in the expert's initial report is inadvisable. Such a rule would undoubtably "lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 11-08120 JVS(FMOx)                          Date   November 9, 2012
           **8:10ML02151 JVS(FMOx)**

Title      Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
           **A Member Case on <u>IN RE: TOYOTA MOTOR CORP. UNINTENDED
           ACCELERATION MARKETING, SALES PRACTICES, AND
           PRODUCTS LIABILITY LITIGATION</u>**

a particular criticism would forever bar the expert from later introducing the relevant
material." <u>Pakootas</u>, 2012 WL 1833397 at *1.  Thus, regardless of whether it could have
been included in the expert's initial report, rebuttal expert opinion is proper where it
"explain[s], repel[s], counteract[s] or disprove[s] evidence of the adverse party."  <u>Marmo</u>,
457 F.3d at 759.

        Here, Toyota's expert undercuts Manuel's theory of common damages among the
class by pointing out that objective measures values for the vehicles identified in the
present MDL reveal no uniform declination in value.  Manuel pointedly responds by
opining that these variations may be explained by the differences in media coverage as to
different Toyota models.  When controls based on the extent of media coverage as to
differing models of Toyota vehicles are introduced into the analysis, in Manuel's view, a
verifiable trend results:  The models that received the most adverse publicity experienced
the greatest declination in value.  This is quintessential rebuttal testimony.

        The Motion to Strike the Manuel rebuttal report is denied.

B.      <u>Carol Scott</u>

        Toyota moves to strike those portions of the Scott rebuttal report that relate to her
"Absent Class Member Survey" ("ACM Survey"), which Toyota contends merely
bolsters her initial report.  (Motion at 18-22.)  As set forth more fully below, the Scott
and Lynch initial reports discussed similar but not identical concepts, and although the
Court finds that the Motion to Strike should be denied, the Court also finds that
additional discovery and/or expert report on the Scott rebuttal report should be permitted.

        By Toyota's account, after Scott admitted at her deposition that she had not
conducted consumer research, as is her usual practice, to test her opinion that certain
undisclosed information was the type that would effect consumers' purchase decision, in
September 2012, she conducted the survey of approximately 448 consumers.  (Motion at
19.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 11-08120 JVS(FMOx)                                     Date   November 9, 2012
           **8:10ML02151 JVS(FMOx)**

Title      Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
           A Member Case on **IN RE: TOYOTA MOTOR CORP. UNINTENDED
           ACCELERATION MARKETING, SALES PRACTICES, AND
           PRODUCTS LIABILITY LITIGATION**

        Plaintiffs respond that Scott's ACM Survey is offered to rebut the opinion of the
Toyota initial expert report of John Lynch, who opined that whether the undisclosed
information would have influenced each class member's purchasing or leasing decision
must be determined on an individual basis.  (EL Opp'n at 18-21 (citing Lynch initial
report at 102).)  The ACM survey was conducted to determine whether statistically
reliable conclusions regarding a uniform impact on the purchasing or leasing decision.
(EL Opp'n at 19.)

        In its Reply, Toyota contends that Scott recognized the weaknesses in her initial
report and decided to shore up her initial report with additional evidence.  Even assuming
that may be part of the motivation, it does not change the conclusion that the additional
data directly rebuts the Lynch report's conclusions regarding whether the probable
influence of the undisclosed information is common to the class members or whether it is
instead an individualized inquiry.

        The present dispute illustrates the potential shortcomings of a schedule that
requires simultaneous production of initial reports.[4]  In Plaintiffs' initial proffer, Scott
defined certain items not revealed by Toyota to its customers as "Undisclosed
Information," and she opined that the effect on purchase decisions of this Undisclosed
Information is subject to common adjudication.  (See Motion at 19 (citing Scott report at
3-4 & 44).)  Specifically, in framing the question which she was called upon to answer,
Scott defined the "Undisclosed Information" in the following manner:

              Finally, I was asked to determine whether or not
        consumers' decisionmaking with respect to Toyota, Lexus, and
        Scion-branded products would have been different had Toyota
        disclosed the following facts alleged by plaintiffs: (1) upon
        implementation of the electronic throttle control system
        ("ETCS"), there was a statistically significant increase in SUA

_____

        [4]  The Court is well aware that it made a firm decision to insist on simultaneous expert
disclosures.

**EXHIBIT A**
**9**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    CV 11-08120 JVS(FMOx)                    Date    November 9, 2012
            **8:10ML02151 JVS(FMOx)**

Title       Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
            A Member Case on **IN RE: TOYOTA MOTOR CORP. UNINTENDED
            ACCELERATION MARKETING, SALES PRACTICES, AND
            PRODUCTS LIABILITY LITIGATION**

> events in Toyota, Lexus, and Scion vehicles; (2) Toyota did not
> adequately investigate the cause of SUA and did not know the
> cause in many cases; (3) Toyota's quality control had
> deteriorated to the point that high product quality was not being
> achieved; (4) Toyota's software was not coded according to
> industry safety standards, had an unacceptably high level of
> bugs in a safety-critical environment, and had defects that could
> allow SUA to occur without triggering a fail-safe mode; and (5)
> Toyota did not have adequate fail-safe mechanisms to prevent
> or counteract SUA in ETCS equipped vehicles. For simplicity,
> throughout this report I will refer to those facts as the
> "Undisclosed Information."

(Scott initial report at 3-4.)

      Having not reviewed Scott's report before preparing his own report, Lynch did not
(and could not) foresee Scott's definition of the Undisclosed Information.  Thus, Lynch
defined his parallel term, "Alleged Omitted Information" differently, and opined that it
was not subject to common adjudication and was instead an individualized inquiry.  (EL
Opp'n at 18 (citing Lynch report at 102).)  Specifically, alluding to deficiencies in
Plaintiffs' discovery responses, Lynch defined his term based on those responses.

> The Alleged Omitted Information is described generally
> in Plaintiffs' discovery responses and other pleadings as the
> "propensity for UA." . . . For purposes of my Initial Report, I
> will use "propensity for UA" as the Alleged Omitted
> Information for illustrative purposes only. To the extent
> Plaintiffs contend that the Alleged Omitted Information is
> something other than the "propensity for UA," claim something
> else should have been disclosed, or specify the content of any
> disclosures or how they should be made, I reserve the right to
> respond in my Rebuttal Report to Plaintiffs' identification of

**EXHIBIT A**
**10**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 11-08120 JVS(FMOx)                        Date   November 9, 2012
           **8:10ML02151 JVS(FMOx)**

Title   Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
        **A Member Case on <u>IN RE: TOYOTA MOTOR CORP. UNINTENDED
        ACCELERATION MARKETING, SALES PRACTICES, AND
        PRODUCTS LIABILITY LITIGATION</u>**

> what any disclosures should have been or otherwise modify or
> amend my opinion contained herein.

(Lynch initial report at 4 n.2.)

Neither expert bears particular blame for the resulting apples-to-oranges
comparison.  On the one hand, Lynch's use of the label of "the propensity for UA,"
merely predictably mirrors the lack of specificity that Plaintiffs' purportedly failed to
provide in their discovery responses.  On the other hand, Scott's definition of
"Undisclosed Information" should not come as a surprise in that it clearly reflects
allegations set forth in the operative Master Consolidated Complaint.  (See Docket No.
2654 at ¶¶ 17, 25, 148, 188-89, 325-337 & 373-376 (referring to all five categories of
"Undisclosed Information")).

But the question before the Court remains whether Scott's Survey is proper
rebuttal.  Certainly, in an apples-to-apples comparison, Scott's Survey would be.  In other
words, if Scott opined these five omissions are subject to common adjudication, and
Lynch opined these five omissions were individualized in nature, then a collection of data
on this focused issue would be proper rebuttal.  However, here, Scott gave a focused
opinion on the specifics, but Lynch provided a contrary opinion on a more generalized
label, and Scott thereafter sought confirmation of the specifics through data collection
and analysis.  In this situation, the answer is far from clear.  Nevertheless, Scott's
categories (1), (2) (4), and (5) fall squarely into a generalized category regarding "the
propensity for UA," and her category (3) is an inference that may fairly be drawn if her
other categories are accurate.  Moreover, Lynch had the opportunity to respond to Scott's
conclusion regarding the five categories (but not the data in Scott's rebuttal report), and
he did so by opining that "[n]othing in the report[] of deposition[] of . . . Dr. Scott
changes the opinions [he] reached in [his] Initial Report.  (Lynch rebuttal report at 2; <u>see
id.</u> at 4 (expressly acknowledging the definition of the term "Undisclosed Information"
and its five categories).)

Thus, although it is a close call, the Court finds that the Scott ACM Survey falls

**EXHIBIT A**
**11**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.     CV 11-08120 JVS(FMOx)                    Date   November 9, 2012
             **8:10ML02151 JVS(FMOx)**

Title        Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
             A Member Case on **IN RE: TOYOTA MOTOR CORP. UNINTENDED
             ACCELERATION MARKETING, SALES PRACTICES, AND
             PRODUCTS LIABILITY LITIGATION**

within the acceptable range of rebuttal testimony.  However, the Court also finds that the
ambiguities created by the simultaneous production of the Lynch and Scott initial reports
requires the opportunity for additional discovery and/or expert report, and makes a
provision therefor as set forth *infra*.

        Toyota's arguments do not compel a contrary result.  Toyota argues that rebuttal
evidence is proper only where its need could not be foreseen in the initial proffer.  In
support of its argument, Toyota cites a district court's ruling, affirmed (without published
opinion) by the Ninth Circuit, that holds that "[r]ebuttal evidence is admissible only
where the need for it could not have been foreseen at the time the plaintiff presented its
case-in-chief."  Daly v. Far E. Shipping Co. PLC., 238 F. Supp. 2d 1231, 1238 (W.D.
Wash. 2003), aff'd sub nom. Daly v. Fesco Agencies NA Inc., 108 F. App'x 476 (9th Cir.
2004).  In Daly, the trial court excluded as improper rebuttal the testimony of a witness
proffered by the plaintiff after the close of his case-in-chief.  Id.  Although the Court
discerns some general parallels between the proper scope of rebuttal evidence admitted
through percipient witness testimony at trial, at issue in the Daly case, and the proper
scope of rebuttal expert testimony, at issue here, the two are not indistinguishable.[5]  Trial
is the final step in establishing the evidence upon which a claim is adjudicated, and is
subject to precise rules and ordering of proof.[6]

        As discussed previously, the danger of a rule limiting a rebuttal expert's report to
matters that could not have been presented in the expert's initial report is the inclusion in
expert reports of superfluous and extraneous matters to insure against all possible "just in

---

        [5]  As pointed out by counsel for Toyota at oral argument, the trial court also properly excluded
an expert report.  Id. at 1240.  However, the excluded report did not address any issue presented in an
initial expert report, and was instead acknowledged by the proffering party to be mere "quantitative
results obtained in laser experiments begun prior to the submission of, and referenced in, the original
report."  Id.

        [6]  The Court also rejects the suggestion, raised at oral argument, that a rebuttal expert report is
not properly used by a litigant in his or her case-in-chief.  Toyota cited no authority for this proposition
and the Court, in its experience, is unaware of any such limitation.

**EXHIBIT A**
**12**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 11-08120 JVS(FMOx)                              Date   November 9, 2012
        **8:10ML02151 JVS(FMOx)**

Title   Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
      **A Member Case on IN RE: TOYOTA MOTOR CORP. UNINTENDED
ACCELERATION MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION**

case" scenarios.  Such a rule would be unworkable.

      Other courts have permitted the use of additional data in rebuttal expert reports.
See e.g., Deseret Mgmt. Corp. v. United States, 09-273T, 2011 WL 1350407 (Fed. Cl.
Apr. 11, 2011) ("Rebuttal reports can use . . . additional data not found in the expert
report, so long as it relates to the same subject matter."); Kirola v. City & County of S.F.,
2010 WL 373817, at *2 (N.D.Cal. Jan. 29, 2010).  Given how pointedly the additional
data presented in the Scott rebuttal report addresses the conclusions reached in the initial
Lynch report, the Court concludes that the Scott rebuttal report (and the ACM Survey)
are within the permissible bounds of rebuttal expert testimony.

      Nevertheless, given the disconnect between the Lynch and Scott initial reports
through their definitions of the "Alleged Omitted Information" and the "Undisclosed
Information," the Court determines that admission of the ACM Survey and any opinions
offered on the matter are proper subjects for additional discovery and/or expert report.
Therefore, the parties are directed to meet and confer within seven days of the entry of
this Order to determine if they can agree on the terms of such discovery and/or expert
report.  Absent a stipulation submitted to the Court within fourteen days of the entry of
this Order, the parties shall file a joint report setting forth their respective positions,
together with any proposed order(s) for the Court's consideration.

      The Motion to Strike the Scott rebuttal report is denied.

C.    Michael Antaran and Michael Barr

      Toyota moves to strike the entire rebuttal report of Michael Antaran because it fails
to rebut any matter addressed by Toyota's initial experts and because it raises for the first
time a new defect theory, that Toyota's vehicles are defective for failure to comply with
European E-GAS standards.  (Motion at 10-11.)  Plaintiffs' initial disclosures disclosed
Antaran's anticipated opinions regarding "standards such as E-GAS."  (EL Initial Expert
Disclosure at 1.)   Toyota also moves to strike those portions of the Barr rebuttal report
that mention E-GAS standards.  (Motion at 14.)

**EXHIBIT A**

**13**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 11-08120 JVS(FMOx)                         Date   November 9, 2012
        **8:10ML02151 JVS(FMOx)**

Title   Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
      **A Member Case on IN RE: TOYOTA MOTOR CORP. UNINTENDED**
      **ACCELERATION MARKETING, SALES PRACTICES, AND**
      **PRODUCTS LIABILITY LITIGATION**

      Plaintiffs respond that these E-GAS references respond to a number of Toyota experts who have claimed that "Toyota's electronic system design practices 'are consistent with state of the art methods used across the automotive industry.'" (Van Alfen Pltfs.' Opp'n (hereafter "VA Opp'n") at 10-11 & 15 (quoting Livernois initial report at 38). Antaran offers the opinion that E-GAS is a "state-of-the-art"[7] system with specific monitoring processes, and that Toyota was aware of but did not adopt.  (VA Opp'n at 11 (citing Antaran rebuttal report ¶ 71).)  Antaran also offers the opinion that, notwithstanding Arora's opinion that Toyota software has fail-safes designed to detect component and system level failures, Toyota's software lacks identified E-GAS specified checks (airflow and CPU operation verification).  (VA Opp'n at 11-12 (citing Antaran rebuttal report at 13-14, 17-18 & 38).)  Antaran's testing also indicated a lack of E-GAS Torque monitoring disagnotics in Toyota's software.  (VA Opp'n at 12 (citing Antaran rebuttal report at 57-59).)  Barr's opinion points out that Toyota failed to use "'alternative reasonable fail safe architecture' such as the E-GAS automotive safety standard.'" (VA Opp'n at 15 (citing Barr rebuttal report at 24).)

      In the Reply, Toyota points out that Plaintiffs initially disclosed Antaran as an expert who would opine regarding "standards such as E-GAS," but his initial report contained no such opinions.  (Reply at 16.)  Toyota surmises that "Plaintiffs' decision to hold Antaran back from providing these identified opinions in an initial report was a tactical decision," and complains of the resulting purposeful "sandbag[ging]."  (Id.) Toyota argues that the Antaran report merely relates to the same general subject matter of Toyota's initial reports, and that it doesn't constitute a proper rebuttal opinion.

      Regardless of whether the decision not to present E-GAS opinions in the Antaran's initial report was a tactical one, what matters is whether his rebuttal opinion responds to Toyota's initial expert reports by "explain[ing], repel[ling], counteract[ing] or

---

      [7] Without resolving the pending issue of whether Utah or California law applies to the Van Alfen case, the Court takes note of Plaintiffs' identification of a Utah model jury instruction that confers a particular significance to a jury's finding that a product conforms to the state of the art in the industry at the time of sale.  (VA Opp'n at 13 n.1.)

**EXHIBIT A**

**14**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 11-08120 JVS(FMOx)                                    Date   November 9, 2012
           **8:10ML02151 JVS(FMOx)**

Title      Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
           **A Member Case on IN RE: TOYOTA MOTOR CORP. UNINTENDED**
           **ACCELERATION MARKETING, SALES PRACTICES, AND**
           **PRODUCTS LIABILITY LITIGATION**

disprov[ing]" them.  Marmo, 457 F.3d at 759.  Simply put, by proffering initial expert
opinions that claim that its vehicles and their inner workings are "state of the art" in the
industry,[8] Toyota opened the door wide to the potential for pointed criticisms in rebuttal
expert reports that its products, components, and/or systems are in fact less than "state of
the art" in the industry.  Certainly, this doorway is broad enough to tolerate rebuttal
expert opinions — in this case, both Antaran and Barr — that reference an identifiable set
of industry standards and Toyota's failure to comply with those particular industry
standards.

        Toyota also argues that the reference to E-GAS in Barr's rebuttal report does not
rebut Livernois because Livernois did not expressly disavow "that there were no other
safety standards in the industry that Toyota could have followed."  (Reply at 19.)
Implicit in this argument is that a rebuttal expert must confine his or her opinion to
whether the initial expert report drew wrong conclusions based on that expert's
methodology.  However, nothing constrains an expert preparing a rebuttal report from
taking a different approach than the initial expert, from employing a different
methodology, or from reframing an issue addressed in the initial report before analyzing
it.  See, e.g., In re Genetically Modified Rice Litig., 4:06MD1811 CDP, 2010 WL
4483993, at *3 (E.D. Mo. Nov. 1, 2010) ("An expert may introduce new methods of
analysis in a rebuttal report if they are offered to contradict or rebut another party's
expert."); Deseret Mgmt. Corp., 97 Fed. Cl. at 274 (finding it improper to limit a rebuttal
expert's methodology to that advanced by the first expert); TC Sys. Inc. v. Town of
Colonie, New York, 213 F. Supp. 2d 171, 180 (N.D.N.Y. 2002) (same).  Expert reports
are as wide-ranging as the topics they cover, the methodologies they employ, the data
they analyze, and the experts who author them.  Rebuttal expert reports must answer to
initial expert reports, but the methods of analyses employed in rebuttal are not as limited
as Toyota suggests.

        The Motion to Strike the Antaran and Barr rebuttal reports is denied.

---

        [8] In light of the apparent importance of a claim that a product is "state of the art" under Utah
law, this observation is all the more compelling as to the Van Alfen case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    CV 11-08120 JVS(FMOx)                         Date    November 9, 2012
            **8:10ML02151 JVS(FMOx)**

Title    Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
         **A Member Case on IN RE: TOYOTA MOTOR CORP. UNINTENDED
         ACCELERATION MARKETING, SALES PRACTICES, AND
         PRODUCTS LIABILITY LITIGATION**

D.    Steve Loudon

        Toyota moves to strike section 4.4 of Loudon's report because it contends that
Loudon merely supplements or bolsters the methodology underlying the conclusions set
forth in his initial report by explaining that his "binary code software fault injection
testing was performed in accordance with standard practice and methodology followed in
the auto industry." (Motion at 12.)  Toyota contends that this is impermissible bolstering
and beyond the scope of proper rebuttal because no Toyota expert report faulted his
methodology.  (Id.)

        Plaintiffs respond that in section 4.4, Loudon does not merely defend his
methodology; rather, he responds to Livernois' "conclusion that 'Toyota's electrical and
electronic system design, validation, and manufacturing practices are consistent with state
of the art methods used across the automotive industry.'" (VA Opp'n at 14 (quoting
Livernois initial report at 38).)  Loudon's rebuttal report responds to this assertion by
pointing out Toyota's noncompliance with ISO Standard 26262, "which recommends
fault injection testing [at] several . . . validation stages of development, includ[ing]
vehicle integration."  (VA Motion at 14 (citing Loudon rebuttal report at 54-56).)

        In Reply, Toyota points to Loudon deposition testimony that suggests that he was
generally unaware of the need to rebut any initial expert reports with his discussion of
fault injection testing.  (Reply at 18.)  The deposition testimony quoted is equivocal.
Reasonable interpretations include that he did not understand the purpose of a rebuttal
report, he had no subjective intent to rebut any initial expert report, or he did not read or
he did not recall certain specifics of certain initial expert opinions he was questioned
regarding.  (See Loudon Depo. at 233 & 236.)

        Toyota also points to language in the rebuttal report that suggests Loudon is merely
elaborating upon his July 18, 2002 report (Reply at 18), but Toyota fails to point out that
he also notes that he "understand[s] that Toyota's counsel has taken the position that
Plaintiffs did not properly conduct the binary testing discussed in [his initial] report," and
that he "understand[s] that Toyota's counsel told the Court that Plaintiffs' testing

**EXHIBIT A**
**16**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 11-08120 JVS(FMOx)                    Date    November 9, 2012
           **8:10ML02151 JVS(FMOx)**

Title      Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
           A Member Case on **IN RE: TOYOTA MOTOR CORP. UNINTENDED
           ACCELERATION MARKETING, SALES PRACTICES, AND
           PRODUCTS LIABILITY LITIGATION**

involved added code . . . in a way that artificially altered the results." (Loudon rebuttal
report at 54.)

Assuming that counsel has so represented,[9] and with appropriate deference to the
impressive technical knowledge of Toyota's counsel, the Court is unable to ascertain how
any principled doubt as to whether the methodology of Loudon's testing artificially
altered the results of the testing is the product of anything other than expert analysis.  If it
is offered as an expert report, Loudon is entitled tor rebut it.  If it is not offered as an
expert report, the Court is uncertain of the basis for counsel's representation.  Absent a
basis in the opinion of an expert, the Court questions the reliability of the representation,
and thus questions whether any legal argument could be based upon it.  Relatedly, absent
counsel's legal argument, the Court questions the relevance of this portion of Loudon's
report.

It appears to the Court that this particular controversy is not amenable to resolution
at the present time, and therefore denies this portion of the Motion to Strike without
prejudice.

Toyota also moves to strike section 4.2.2 of Loudon's rebuttal report because it
introduces new investigative and testing reports, including eight National Highway
Traffic Safety Administration ("NHTSA") reports that he could have included in his
opening report.  (Motion at 13.)

Plaintiffs respond that Loudon's discussion of the NHTSA reports respond directly
to Carr's initial report on braking, which states "the Van Alfen 2008 Toyota Camry is a
well-designed system that will assure that the driver can safely slow and stop the vehicle .
. . " and that the brakes "will safely stop the vehicle when commanded by the driver
under both expected and extreme conditions."  (VA Opp'n at 14-15 (quoting Carr initial
report at 3).)  The NHTSA reports upon which Loudon relied present "evidence that a

---

[9]  Although unable to locate such a representation in the record, the Court recalls this
representation, or a similar one, has been made by Toyota counsel.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    CV 11-08120 JVS(FMOx)                    Date    November 9, 2012
            **8:10ML02151 JVS(FMOx)**

Title       Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
            **A Member Case on IN RE: TOYOTA MOTOR CORP. UNINTENDED
            ACCELERATION MARKETING, SALES PRACTICES, AND
            PRODUCTS LIABILITY LITIGATION**

loss of vacuum [brake assist] will increase stopping distances while braking," and that
"pumping of the brakes with wide open throttle can lead to a stopping distance of up to
1,000 feet."  (VA Opp'n at 15 (citing Loudon rebuttal report at 19 (showing excerpt of
NASA report noting an increase in stopping distances from less than 200 feet to more
than 1,000 feet).)  In any event, Plaintiffs represent that "most" of these new reports were
unavailable to them prior to the initial expert report deadline, as they were used as
exhibits in deposition of Toyota's Rule 30(b)(6) witness (Yukihiro Shiomi) on brake-
related categories. (VA Opp'n at 15.)

        In the Reply, Toyota does not dispute the timing of the receipt of these reports, but
nevertheless contends (without explanation) that this "discussion should and could have
been raised in an initial report."  (Reply at 18.)  In voicing this view, Toyota also unfairly
characterizes Loudon's deposition testimony as abandoning his opinion regarding the
Camry braking system.  Specifically, Toyota maintains that "Loudon no longer has the
opinion that in the event of an ETCS failure, the brakes of the Toyota Camry will not stop
the vehicle" because he "now admits that for *every* test he ran involving a failure of the
ETCS system, the brakes stopped the Camry."  (Reply at 18-19.)  This is an unfair
characterization of Loudon's deposition testimony.  In extrapolating from Loudon's
purported failure to duplicate SUA, Toyota attributes an opinion to Loudon that he has
not expressed and that does not necessarily and logically follow.  (See id.)

        The bases Toyota advances for striking this portion of the Loudon rebuttal report
do not justify its exclusion.

        Finally, Toyota moves to strike section 4.3 for the same reason it moves to strike
the Antaran rebuttal report and portions of the Barr rebuttal report.  (Motion at 12.)  The
discussion set forth by the Court in the previous section applies with equal force to this
portion of the Loudon report.

        The Motion to Strike the Loudon rebuttal report is denied.

**EXHIBIT A**

**18**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.   CV 11-08120 JVS(FMOx)                    Date   November 9, 2012
           **8:10ML02151 JVS(FMOx)**

Title      Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
           **A Member Case on IN RE: TOYOTA MOTOR CORP. UNINTENDED
           ACCELERATION MARKETING, SALES PRACTICES, AND
           PRODUCTS LIABILITY LITIGATION**

E.    <u>Marthinus Van Schoor</u>

       Toyota moves to strike four sections of the Van Schoor rebuttal report, arguing
generally that his purported rebuttal report merely supplements his initial report.  (Motion
at 16-17.)

       First, Toyota contends that portions of the Van Schoor rebuttal report relating to
alternative approaches that would eliminate the alleged loss of vacuum assist in the
braking system does not rebut any Toyota expert report.  (Motion at 16 (citing Van
Schoor rebuttal report at 10-14).)

       Plaintiffs respond that, like Loudon's report, this portion of the Van Schoor
rebuttal report rebuts Carr's conclusions regarding the ability of the 2008 Toyota Camry
braking system to safely slow and stop the vehicle at the driver's command.  (VA Opp'n
at 16.)

       In Reply, Toyota criticizes Van Schoor's failure to expressly state that his opinion
is meant to rebut Carr's opinion that the braking system in the 2008 Camry is well
designed, doesn't present any unreasonable risks, and is not unreasonably dangerous.
(Reply at 20.)

       Criticizing Plaintiffs' (uncited and unspecified) "assertions to the contrary,"
Toyota also contends that "Van Schoor admittedly was not able to link his new theories
with any claim of unintended acceleration by any vehicle in the proposed economic loss
class."  (Reply at 20 (citing Van Schoor Depo. at 222-25).)  However, the deposition
testimony to which Toyota cites does not support this contention.  Instead, this deposition
testimony first establishes Van Schoor's opinion regarding vacuum brake assist depletion
when the brakes are pumped while the throttle is fully open.  (Van Schoor Depo. at 222.)
Next, it establishes Van Schoor's apparent concession that there is no evidence that
pumping of brakes or vacuum brake assist depletion in any of 25,000 alleged UA events.
(<u>Id.</u>)  Next, in what appears to be a refreshment of Van Schoor's memory by counsel for
Toyota of the contents of his report, Van Schoor thereafter describes his conclusion (and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.  CV 11-08120 JVS(FMOx)                    Date   November 9, 2012
          **8:10ML02151 JVS(FMOx)**

Title     Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
          A Member Case on **IN RE: TOYOTA MOTOR CORP. UNINTENDED
          ACCELERATION MARKETING, SALES PRACTICES, AND
          PRODUCTS LIABILITY LITIGATION**

the methodology by which he arrived at that conclusion), that the depletion of vacuum assist was implicated in at least one report of a so-called "other similar incident" or OSI. (Id. at 223-25.)

Toyota's expert opined regarding the safety of the 2008 Camry braking system, and Van Schoor responded with an opinion to the contrary.  Toyota's arguments to strike this portion of the Van Schoor report are unavailing.

Second, Toyota moves to strike portions of the Van Schoor rebuttal report that it contends merely supplements his initial report on the issue of specific Motor Industry Software Reliability Association ("MISRA") Code rules.  (Motion at 17 (citing Van Schoor rebuttal report at 24, table 1.)

Plaintiffs respond that this rebuts Arora's conclusions that "'[n]o software mechanisms/faults were identified" in Toyota software that can cause UA."  (VA Opp'n at 16 (quoting Arora initial report at 4).)

In Reply, Toyota contends the MISRA code violations do not rebut Arora's report, that the MISRA code rules and violations could have been included in Van Schoor's initial report, and that he "has admitted that he cannot link any of the issues or theoretical defects, . . . including MISRA Code violations, with claims of unintended acceleration by the named plaintiffs in the economic class action."  (Reply at 20-21 (citing Van Schoor Depo. at 218).)[10]

The Court rejects these arguments.  The Court has already rejected the argument that reports are not beyond the proper scope of rebuttal merely because they could have been presented in the initial report.  As to the proper scope of his rebuttal opinion, Van

---

[10]  Page 218 of the Van Schoor deposition was not included with Toyota's Reply brief.  (See Dawson Decl. Ex. 4 (attaching only the cover and (unsigned) signature pages, and pages 222-25 & 259).)  The Court therefore does not comment on Toyota's characterization of Van Schoor's testimony found on this missing page.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-08120 JVS(FMOx) | Date | November 9, 2012 |
|---|---|---|---|
| | **8:10ML02151 JVS(FMOx)** | | |

Title    Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
**A Member Case on** <u>IN RE: TOYOTA MOTOR CORP. UNINTENDED</u>
<u>ACCELERATION MARKETING, SALES PRACTICES, AND</u>
<u>PRODUCTS LIABILITY LITIGATION</u>

Schoor is entitled to attack the quality of Toyota's software.  Arora offered a detailed and positive opinion regarding the operation of Toyota's software.  Plaintiffs' experts are entitled to offer contrary opinions to rebut that opinion.  Simply put, rebuttal experts are entitled to nitpick the initial expert reports of the adverse party.

Third, Toyota moves to strike portions of the Van Schoor rebuttal report that it contends merely expand on brake pedal material presented in his initial report.  (Motion at 17 (citing Van Schoor rebuttal report at 34-43).

Plaintiffs respond that this portion of the Van Schoor rebuttal report responds to the Perl initial report, in which Perl opined that alterations to "the driver's floor board, brake pedal, brake pedal arm, [etc.]" occurred as a result of the rescue operations immediately following the Van Alfen collision.  (VA Opp'n at 17.)  In doing so, Van Schoor analyzes the alignment of the brake pedal arm and a groove in the carpet of the floor board and photos of the vehicle before use of the "Jaws of Life" rescue tools.  (Motion at 17 (citing Van Schoor and rebuttal report at 36-43.)

In the Reply, Toyota contends that "Van Schoor conducted an inspection of the brake pedal material in July," prior to submitting his initial report.  (Reply at 21.)  The Court rejects this argument.  As stated previously, that the opinion could have been offered in an initial report does not automatically render it beyond the permissible scope of rebuttal.

Finally, Toyota moves to strike portions of the Van Schoor rebuttal report regarding the similar incident and field technical reports diagrams.  (Motion at 17 (citing Van Schoor rebuttal report at 46-48 & figures 30-33).)

Plaintiffs respond that Van Schoor's similar incident opinions rebut the opinions of Toyota experts who opine that there are no common UA defects among all Toyota vehicles and that "there is no common 'propensity for UA' across Toyota vehicles."  (VA Opp'n at 17 (quoting Padaman EL initial report at 19 and citing Souri initial report at 8,

**EXHIBIT A**
**21**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     CV 11-08120 JVS(FMOx)                        Date     November 9, 2012
             **8:10ML02151 JVS(FMOx)**

Title        Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
             A Member Case on **IN RE: TOYOTA MOTOR CORP. UNINTENDED
             ACCELERATION MARKETING, SALES PRACTICES, AND
             PRODUCTS LIABILITY LITIGATION**

43 & Ex. 10).)[11]

In the Reply brief, Toyota argues that this portion of the Van Schoor report do not rebut the opinions Souri or Padmanaban.  (Reply at 21.)  Instead, Toyota contends that the diagrams were included in the rebuttal report because Van Schoor "ran out of time" to prepare them for inclusion in his initial report.  (Reply at 21 (citing Van Schoor Depo. at 259).)

Van Schoor indeed testified that was the reason they were omitted.  (Id.) Nevertheless, that fact is one step removed from a determination of whether the opinion is proper rebuttal opinion.  An examination of the challenged graphs and text reveals that they analyze evidence regarding OSIs and Field Technical Reports ("FTRs") that tend to suggest commonality across models and model years.  As such, it is within the scope of proper rebuttal.

F.      Erik Mettala

Toyota moves to strike the portions of the Mettala rebuttal report that include new criticisms of the NHTSA Toyota Unintended Acceleration Investigation that it contends could have and should have been presented in his initial expert report and that do not rebut any Toyota expert report.  (Motion at 17-18 (citing Mettala rebuttal report at 11-27).)

Plaintiffs respond that the Mettala rebuts certain conclusions by Toyota experts that were drawn from the NHTSA Toyota Unintended Acceleration Investigation ("NASA Report") by referencing other portions of the NASA Report.  (VA Opp'n at 17-

---

[11]  The Souri initial report clearly opines there is no common defect as to all the vehicles.  (See Souri initial report at 42 ("Two significant examples within the Bellwether cases that support the conclusion that there is no common defect across all of the vehicles in the proposed class are a 2004 Corolla and a 2005 Prius."); cf. id. at 41 (tab. 8) (colored graph depicting differences in Engine Control Modules among the various makes and models at issue).)

**EXHIBIT A**
**22**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 11-08120 JVS(FMOx)                    Date   November 9, 2012
           **8:10ML02151 JVS(FMOx)**

Title   Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
        A Member Case on **IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION**

18.)  In their first example, Plaintiffs point out that Livernois relied on the NASA Report to conclude both that "the only reasonable explanation for alleged UA events other than driver error" are isolated incidents involving floor mats and sticking accelerator pedals and that the Van Alfen crash was not caused by ETCS-related failure in either hardware or software.  (Id. at 17 (quoting Livernois initial report at 27).)  Thus, in Plaintiff's view, Mettala rebuts this observation by pointing out the NASA Report's findings to find over 198,000 violations of MISRA rules which leads to a predicted 6,600 minor bugs and 2,200 major bugs.  (VA Opp'n at 17 (citing Mettala rebuttal report at 15); see also Mettala rebuttal report at 12 (explaining his use of "the 'Understand' static analysis tool to confirm NASA's deviations of MISRA coding rules").)

Plaintiffs give other examples of how the Mettala rebuttal report relies on the NASA Report to rebut other conclusions drawn by Toyota's experts in reliance on that same Report.  (VA Opp'n at 18.)  For example, Plaintiffs point out that the Mettala rebuttal report discusses the weaknesses of Toyota fail safes and references the NASA report as he does so.  (Id.; Mettala rebuttal report at 24-25.)  Mettala expressly states that this discussion is addressed to a cited portion of the Arora initial report on the same subject,[12] and Arora cites to the NASA report in reliance of his classification of "[f]ail-safe modes in the 2088 L4 Camry."  (Arora initial report at 15.)  It also rebuts Souri's initial report, in which Souri relied on the NASA report in his discussion related to "fail-safe designs at the component and system level [that are] incorporated in the hardware and the software" of "Toyota ETCS-i."  (Souri initial report at 42 & n.57.)

Finally, Plaintiffs contend that Mettala's report rebuts Arora's claim that no identified software faults that could lead to UA under real world conditions.  (VA Opp'n at 18; Arora MDL initial report at 117 ("no software mechanisms/faults were identified during the analysis that could lead to SUA in Toyota under real world conditions.").)  The rebuttal report does this by pointing out documents that evidence Toyota's concern that "[w]hile the cruise control is active, when high-rotation, high-load conditions

---

[12]  Indeed, lest there be any question, Mettala inserted a text box of this portion of the Arora initial report in his rebuttal report.  (Mettala Rebuttal Report at 24.)

**EXHIBIT A**

**23**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  CV 11-08120 JVS(FMOx)                                    Date   November 9, 2012
          **8:10ML02151 JVS(FMOx)**

Title   Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al.
        **A Member Case on IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION**

overlap, a defect in the control software causes hunting in the electronic throttle angle, resulting in an overcurrent condition." (Mettala rebuttal report at 25 (quoting an internal Toyota document).)  Mettala flags this document expressly in response to the statement in the Arora initial report quoted above. (Id.)  He does so as a criticism of both Arora's conclusion and the NASA Report.[13]  (Id.)

        On this record, the Court rejects Toyota's arguments that "Mettala fails to refer to [the NASA Report] to rebut a specific point" in Toyota's initial expert reports. (Reply at 22.)  To the contrary, Mettala's references to the NASA Report are part of his considered and deliberate rebuttal of several of Toyota's experts, and most of the references are meant to address data, opinions, or conclusions which themselves are drawn from or rely upon the same Report.  Far from being beyond the scope of proper rebuttal, Mettala's references to the NASA report fall squarely within the permissible parameters of that terrain and do not come close to breaching its outer boundaries.  Where an initial expert relies on a particular source document for data or analyses, it would be fundamentally unfair to preclude a rebuttal expert from relying on that same source document in formulating his or her rebuttal.

        The Motion to Strike the Mettala rebuttal report is denied.

---

        [13]  The portion of the NASA Report to which Mettala refers to a NASA finding that "functional failures of the cruise control can result in a[n] acceleration and may not generate a [Diagnostic Trouble Code] . . . ." (Mettala rebuttal report at 25 (quoting the NASA Report's F-7 finding).)  However, Mettala does not criticize this finding, which seems (at least on its face) to be inconsistent with Arora's conclusion; rather, Mettala criticizes the statement in the NASA Report that follows the above-quoted clause, which appears to mitigate the severity of the observed "functional failures of the cruise control."  Immediately following the above-quoted clause in the NASA Report is the reassurance that "however, there are multiple method[s] of canceling or turning off cruise control." (Id.)  Mettala's interpretation of the concern expressed in the Toyota documents which he quotes regarding "a defect in the control software [that] causes hunting" links this observed cruise control defect to the possibility of a surge in vehicle speed. (Id. at 24-25.)

**EXHIBIT A**
**24**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 11-08120 JVS(FMOx) | Date | November 9, 2012 |
| | **8:10ML02151 JVS(FMOx)** | | |

| | |
|---|---|
| Title | Shirlene Van Alfen et al.  v. Toyota Motor Sales, U.S.A., Inc., et al. |
| | **A Member Case on IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION** |

## III.    Conclusion

As set forth herein, the Court denies Toyota's Motion to Strike.  (Docket No. 3018.)  No later than fourteen days from the entry of this Order, the parties shall file either a stipulation a joint report regarding the how they wish to proceed regarding the Scott rebuttal report.

**IT IS SO ORDERED.**

| | | |
|---|---|---|
| | 0 | : | 00 |
| Initials of Preparer | kjt | |