# EXHIBIT 2

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

```
 1            UNITED STATES DISTRICT COURT
 2            CENTRAL DISTRICT OF CALIFORNIA
 3
 4
 5   GOLDEN BOY PROMOTIONS, LLC, )
     GOLDEN BOY PROMOTIONS, INC. )
 6   AND BERNARD HOPKINS,         )
                                  )
 7              PLAINTIFFS,       )
                                  )    CASE NO.
 8     VS.                        )    2:15-CV-03378
                                  )    JFW (MRWX)
 9   ALAN HAYMON, ALAN HAYMON     )
     DEVELOPMENT, INC., HAYMON    )
10   HOLDINGS, LLC, HAYMON        )
     SPORTS, LLC, HAYMON BOXING   )
11   MANAGEMENT, HAYMON BOXING    )
     LLC, AND RYAN CALDWELL,      )
12                                )
                DEFENDANTS.       )
13   _____)
14
15            C O N F I D E N T I A L
16      (PURSUANT TO STIPULATION, THE FOLLOWING
        TRANSCRIPT HAS BEEN DESIGNATED CONFIDENTIAL)
17
18
19        DEPOSITION OF ERIC GOMEZ, TAKEN ON
20        BEHALF OF THE DEFENDANTS, AT 865
21        SOUTH FIGUEROA STREET, TENTH FLOOR,
22        LOS ANGELES, CALIFORNIA, COMMENCING
23        AT 9:12 A.M., THURSDAY, SEPTEMBER 22,
24        2016, BEFORE MICHELLE DICHIRICO, CSR
25        NUMBER 13779.
```

2

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ



| | |
|---|---|
| 10:23:45 | 1 |
| 10:23:49 | 2 |
| 10:23:54 | 3 |
| 10:23:58 | 4 |
| 10:24:01 | 5 |
| 10:24:04 | 6 |
| 10:24:05 | 7 |
| 10:24:06 | 8 |
| 10:24:06 | 9 |
| 10:24:07 | 10 |
| 10:24:07 | 11 |
| 10:24:10 | 12 |
| 10:24:12 | 13 |
| 10:24:13 | 14 |
| 10:24:18 | 15 |
| 10:24:22 | 16 |
| 10:24:24 | 17 |
| 10:24:25 | 18 |
| | 19 |
| | 20 |
| | 21 |
| | 22 |
| | 23 |
| 10:24:33 | 24 |
| 10:24:35 | 25 |

64

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

## CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | | |
|---|---|---|
| 10:24:36 | 1 | THE DEPONENT:  YEAH, THERE'S A FEW |
| 10:24:38 | 2 | FIGHTERS REPRESENTED BY AL HAYMON THAT REACHED OUT |
| 10:24:42 | 3 | TO US. |
| 10:24:46 | 4 | BY MR. WILLIAMS: |
| 10:24:46 | 5 | Q.    AND WHO -- |
| 10:24:47 | 6 | A.    THEY WANTED TO TALK TO US AND -- |
| 10:24:48 | 7 | AND WE REACHED OUT TO THEM AS WELL. |
| 10:24:50 | 8 | Q.    WERE YOU PERSONALLY INVOLVED IN ANY |
| 10:24:53 | 9 | OF THOSE DISCUSSIONS? |
| 10:24:54 | 10 | A.    IN SOME OF THEM. |
| 10:24:55 | 11 | Q.    WHO WERE THE FIGHTERS REPRESENTED |
| 10:24:58 | 12 | BY AL HAYMON THAT YOU'RE AWARE OF OR THAT YOU |
| 10:25:03 | 13 | MENTIONED HAD REACHED OUT TO GOLDEN BOY? |
| 10:25:06 | 14 | A.    SHAWN PORTER, JULIAN WILLIAMS, |
| 10:25:12 | 15 | DANIEL JACOBS, CARLOS MOLINA, WALE OMOTOSO, LEO |
| 10:25:34 | 16 | SANTA CRUZ. |
| 10:25:34 | 17 | LEO DIDN'T DIRECTLY, BUT HIS FATHER |
| 10:25:39 | 18 | DID. |
| 10:25:44 | 19 | Q.    ANY OTHERS YOU CAN THINK OF? |
| 10:25:46 | 20 | A.    AMIR KHAN. |
| 10:25:52 | 21 | Q.    ANY OTHERS? |
| 10:25:54 | 22 | A.    THAT'S -- YEAH.  THAT'S ALL I CAN |
| 10:25:54 | 23 | THINK OF RIGHT NOW OFF THE TOP OF MY HEAD.  THERE |
| 10:25:58 | 24 | MIGHT BE A COUPLE MORE, BUT I JUST -- YOU KNOW, |
| 10:26:00 | 25 | THAT'S ALL I CAN THINK OF RIGHT NOW. |

65

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court  Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

## CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | | |
|---|---|---|
| 10:26:57 | 1 | IS -- WAS THAT SORT OF WHAT YOU WERE TRYING TO GET |
| 10:26:59 | 2 | AT? |
| | 3 | MR. WILLIAMS:  I'LL GET -- LET'S |
| | 4 | JUST GET THE LIST NOW. |
| | 5 | MR. CESTERO:  PERFECT, YEAH. |
| | 6 | MR. WILLIAMS:  AND I'LL COME BACK |
| | 7 | TO THAT. |
| 10:27:00 | 8 | MR. CESTERO:  GOOD. |
| 10:27:00 | 9 | BY MR. WILLIAMS: |
| 10:27:00 | 10 | |
| 10:27:02 | 11 | |
| 10:27:05 | 12 | |
| 10:27:11 | 13 | |
| 10:27:13 | 14 | |
| 10:27:18 | 15 | |
| 10:27:27 | 16 | |
| 10:27:30 | 17 | |
| 10:27:30 | 18 | |
| 10:27:30 | 19 | |
| 10:27:34 | 20 | |
| 10:27:37 | 21 | |
| 10:27:41 | 22 | |
| 10:27:44 | 23 | |
| 10:27:45 | 24 | |
| 10:27:46 | 25 | |

67

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

|  |  |
|---|---|
| 10:27:48 | 1 |
| 10:27:49 | 2 |
| 10:27:52 | 3 |
| 10:27:54 | 4 |
| 10:27:56 | 5 |

10:28:00  6        Q.   NOW --

10:28:01  7        A.   IT'S ALSO IMPORTANT TO -- TO SAY

10:28:03  8   THAT A LOT OF THEM COME TO OUR FIGHTS, AND THEY'RE

10:28:08  9   ALWAYS REACHING OUT TO US.

10:28:09 10              AND WE HAD A RELATIONSHIP WITH MOST

10:28:11 11   OF THESE FIGHTERS.  THEY WERE -- AT ONE POINT OR

10:28:15 12   ANOTHER, THEY WERE WITH US SOLELY.  SO THERE'S

10:28:19 13   A -- THERE'S A RELATIONSHIP.  THERE'S A RAPPORT

10:28:21 14   WITH THEM.

10:28:23 15
10:28:26 16
10:28:29 17
10:28:31 18
10:28:34 19
10:28:37 20
10:28:37 21
10:28:39 22
10:28:44 23
10:28:46 24
10:28:48 25

68

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

```
10:46:09   1              Q.   HAVE THERE BEEN ANY -- SINCE THE
10:46:11   2    KOVALEV FIGHT, HAVE THERE BEEN ANY SERIOUS EFFORTS
10:46:18   3    FOR MR. HOPKINS TO -- OR GOLDEN BOY, ON HIS
10:46:21   4    BEHALF, TO LINE UP AN OPPONENT?
10:46:24   5              MR. CESTERO:   OBJECTION.  IT'S
10:46:25   6    VAGUE AND AMBIGUOUS.
10:46:25   7              THE DEPONENT:  YES.
10:46:25   8    BY MR. WILLIAMS:
10:46:26   9              Q.   AND WHEN WERE THOSE?
10:46:27  10              A.   SOMETIME AFTER HIS FIGHT, YOU KNOW,
10:46:30  11    MAYBE THREE MONTHS LATER.
10:46:31  12              Q.   HAVE THERE BEEN ANY SERIOUS EFFORTS
10:46:35  13    WITHIN THE LAST YEAR?
10:46:37  14              MR. CESTERO:   WITHIN 2016?
10:46:39  15              MR. WILLIAMS:   RIGHT.
10:46:39  16              THE DEPONENT:   YES.
10:46:39  17    BY MR. WILLIAMS:
10:46:40  18              Q.   AND WHEN WAS THAT?
10:46:41  19              A.   IN JANUARY, WE STARTED TRYING TO
10:46:43  20    PUT SOMETHING TO GO FOR HIM.
10:46:45  21              Q.   AND HAVE YOU IDENTIFIED ANY
10:46:48  22    POTENTIAL OPPONENTS?
10:46:48  23              A.   NO.
10:46:51  24              Q.   DOES BERNARD HOPKINS HAVE A
10:46:54  25    MANAGER?
```

85

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | | |
|---|---|---|
| 11:02:49 | 1 | DON'T WE JUST SWITCH THAT OUT? |
| 11:02:51 | 2 | THE VIDEOGRAPHER: OKAY. THEN |
| 11:02:52 | 3 | WE'LL GO OFF VIDEOTAPE RECORD AT 11:02 A.M. |
| 11:02:52 | 4 | THAT'S GOING TO CONCLUDE DISK NUMBER ONE OF VOLUME |
| 11:03:07 | 5 | NUMBER I. |
| 11:03:07 | 6 | (WHEREUPON, A RECESS WAS HELD |
| 11:03:07 | 7 | FROM 11:02 A.M. TO 11:12 A.M.) |
| 11:03:07 | 8 | (WHEREUPON, MR. JONES RE-ENTERED THE |
| 11:05:02 | 9 | DEPOSITION PROCEEDINGS.) |
| 11:12:17 | 10 | THE VIDEOGRAPHER: AND WE'RE BACK |
| 11:12:18 | 11 | ON THE VIDEOTAPE RECORD, BEGINNING DISK NUMBER TWO |
| 11:12:23 | 12 | OF VOLUME NUMBER I AT 11:12 A.M. |
| 11:12:30 | 13 | BY MR. WILLIAMS: |
| 11:12:30 | 14 | Q.  MR. GOMEZ, JUST TO FOLLOW UP BEFORE |
| 11:12:30 | 15 | THE BREAK, DID YOU OR ANYONE AT GOLDEN BOY EVER |
| 11:12:33 | 16 | PROVIDE ANY TERMS OF ANY POTENTIAL DEAL TO ADONIS |
| 11:12:44 | 17 | STEVENSON THROUGH EITHER -- |
| 11:12:49 | 18 | MR. CESTERO: HANG ON. HANG ON |
| | 19 | AGAIN. |
| | 20 | MR. WILLIAMS: OH, SORRY. FAIR |
| | 21 | ENOUGH. |
| | 22 | (WHEREUPON, MR. JONES EXITED THE |
| | 23 | DEPOSITION PROCEEDINGS.) |
| | 24 | BY MR. WILLIAMS: |
| 11:12:55 | 25 | ██████████████████████████████ |

100



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ



11:12:56   1
11:13:05   2
11:13:09   3
11:13:15   4
11:13:15   5
11:13:15   6
11:13:15   7
11:13:18   8
11:13:19   9
11:13:19   10
11:13:20   11
11:13:22   12
11:13:26   13
11:13:27   14
11:13:31   15
11:13:35   16
11:13:36   17
11:13:49   18
11:13:50   19
11:13:54   20
11:13:56   21
11:13:58   22
11:14:03   23
11:14:06   24
11:14:07   25

101

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | | |
|---|---|---|
| 11:52:46 | 1 | "IF DURING THE TERMS OF THIS |
| 11:52:46 | 2 | AGREEMENT" -- |
| 11:52:47 | 3 | MR. CESTERO:  WAIT.  FIRST FULL |
| 11:52:49 | 4 | SENTENCE WHERE? |
| 11:52:49 | 5 | MR. WILLIAMS:  OH, I'M SORRY. |
| 11:52:50 | 6 | SO -- |
| 11:52:50 | 7 | THE DEPONENT:  SECOND LINE. |
| 11:52:51 | 8 | MR. WILLIAMS:  SECOND LINE ON |
| 11:53:03 | 9 | PAGE -- |
| | 10 | MR. CESTERO:  OH, ON THIS -- ON |
| | 11 | PAGE 4. |
| | 12 | MR. WILLIAMS:  RIGHT. |
| | 13 | MR. CESTERO:  GOT IT. |
| | 14 | MR. WILLIAMS:  3279. |
| 11:53:06 | 15 | MR. CESTERO:  YEAH. |
| 11:53:06 | 16 | BY MR. WILLIAMS: |
| 11:53:06 | 17 | Q.   I'M SORRY.  IF YOU ACTUALLY LOOK |
| 11:53:06 | 18 | DOWN PROBABLY -- THERE'S A SENTENCE KIND OF A |
| 11:53:07 | 19 | THIRD OF THE WAY DOWN THAT SAYS "IN THE EVENT THAT |
| 11:53:08 | 20 | BOXER IS NOT DECLARED THE WINNER." |
| 11:53:11 | 21 | DO YOU SEE THAT? |
| 11:53:12 | 22 | A.   YES. |
| 11:53:12 | 23 | Q.   IT SAYS: |
| 11:53:14 | 24 | "IN THE EVENT THAT BOXER IS |
| 11:53:15 | 25 | NOT DECLARED THE WINNER OF ANY |

139

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

11:53:17 1   PROFESSIONAL BOXING MATCH DURING
11:53:17 2   THE TERM, THEN:  (A) PROMOTER
11:53:21 3   SHALL HAVE NO FURTHER OBLIGATION
11:53:23 4   TO PAY THE AMOUNTS DESCRIBED IN
11:53:26 5   PARAGRAPH 4 ABOVE; AND (B)
11:53:28 6   PROMOTER SHALL HAVE THE RIGHT TO
11:53:28 7   RENEGOTIATE THE GUARANTEED
11:53:28 8   MINIMUM PURSES HEREUNDER."
11:53:30 9       DO YOU SEE THAT?
11:53:31 10  A.   YES.
11:53:31 11  Q.   IS THAT A FAIRLY STANDARD TERM IN
11:53:35 12  GOLDEN BOY'S CONTRACTS?
11:53:35 13       MR. CESTERO:  OBJECTION.  THAT'S
11:53:37 14  VAGUE AND AMBIGUOUS.
11:53:37 15       THE DEPONENT:  IT DEPENDS WHATEVER
11:53:39 16  IS NEGOTIATED.  THAT'S IN SOME OF OUR AGREEMENTS.
11:53:42 17  OTHER AGREEMENTS DON'T HAVE THAT.
11:53:42 18  BY MR. WILLIAMS:
11:53:45 19
11:53:48 20
11:53:51 21
11:53:51 22
11:53:57 23  Q.   ANYONE ELSE?
11:53:58 24  A.   THERE'S A FEW OTHER ONES.  I CAN'T
11:54:04 25  THINK OF THE NAMES RIGHT NOW.

140

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

## CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | | |
|---|---|---|
| 11:57:07 | 1 | AGREEMENT? |
| 11:57:08 | 2 | MR. CESTERO: OBJECTION. THE |
| 11:57:09 | 3 | DOCUMENTS SPEAKS FOR ITSELF. IT CALLS FOR A LEGAL |
| 11:57:13 | 4 | CONCLUSION, AND IT LACKS FOUNDATION. |
| 11:57:13 | 5 | BY MR. WILLIAMS: |
| 11:57:13 | 6 | Q. IS THAT CORRECT? |
| 11:57:14 | 7 | A. IT SAYS THAT, YES. |
| 11:57:16 | 8 | Q. AND IT ALSO SAYS THAT -- |
| 11:57:19 | 9 | SUBPARAGRAPH (C) OF THAT PARAGRAPH IF -- GOLDEN |
| 11:57:21 | 10 | BOY HAS THE RIGHT TO TERMINATE THE AGREEMENT: |
| 11:57:25 | 11 | "IF BOXER IS IN BREACH OF |
| 11:57:27 | 12 | ANY OF HIS OBLIGATIONS TO |
| 11:57:34 | 13 | PROMOTER. FOR EXAMPLE, BOXER |
| 11:57:34 | 14 | VIOLATES PROMOTER'S EXCLUSIVE |
| 11:57:34 | 15 | PROMOTIONAL RIGHTS BY NEGOTIATING |
| 11:57:34 | 16 | WITH OR ENTERING INTO AN |
| 11:57:37 | 17 | AGREEMENT WITH ANOTHER PROMOTER." |
| 11:57:38 | 18 | DO YOU SEE THAT? |
| 11:57:39 | 19 | A. YES. |
| 11:57:39 | 20 | Q. SO IF THE BOXER NEGOTIATES WITH |
| 11:57:45 | 21 | ANOTHER PROMOTER, GOLDEN BOY WOULD HAVE THE RIGHT |
| 11:57:48 | 22 | TO TERMINATE THE CONTRACT? |
| 11:57:51 | 23 | A. YEAH. |
| 11:57:51 | 24 | MR. CESTERO: OBJECTION; CALLS FOR |
| 11:57:53 | 25 | A LEGAL CONCLUSION. |

144

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | | |
|---|---|---|
| 11:57:53 | 1 | THE DEPONENT: SORRY. |
| 11:57:57 | 2 | MR. CESTERO: IT'S OKAY. |
| 11:57:57 | 3 | BY MR. WILLIAMS: |
| 11:57:57 | 4 | Q. AND THEN SUBPARAGRAPH (D) SAYS |
| 11:58:00 | 5 | GOLDEN BOY HAS THE RIGHT TO TERMINATE THE |
| 11:58:03 | 6 | AGREEMENT IF, IN GOLDEN BOY'S SOLE DISCRETION, IT |
| 11:58:07 | 7 | DETERMINES IT IS NO LONGER IN GOLDEN BOY'S: |
| 11:58:12 | 8 | "COMMERCIAL BEST INTEREST TO |
| 11:58:14 | 9 | CONTINUE TO PROMOTE BOXER." |
| 11:58:17 | 10 | DO YOU SEE THAT? |
| 11:58:17 | 11 | A. YES. |
| 11:58:18 | 12 | Q. SO IF GOLDEN BOY DECIDES THAT A |
| 11:58:18 | 13 | PARTICULAR BOXER IS NOT MAKING ENOUGH MONEY FOR |
| 11:58:18 | 14 | IT, GOLDEN BOY CAN TERMINATE THE CONTRACT? |
| 11:58:24 | 15 | A. NO. |
| 11:58:24 | 16 | MR. CESTERO: OBJECTION; CALLS FOR |
| 11:58:24 | 17 | A LEGAL CONCLUSION, LACKS FOUNDATION. |
| 11:58:24 | 18 | BUT YOU CAN ANSWER. |
| 11:58:25 | 19 | THE DEPONENT: NOT NECESSARILY. |
| 11:58:26 | 20 | BY MR. WILLIAMS: |
| 11:58:27 | 21 | Q. WELL, WHAT DO YOU UNDERSTAND IT TO |
| 11:58:29 | 22 | MEAN AS -- "IN PROMOTER'S COMMERCIAL BEST |
| 11:58:32 | 23 | INTEREST"? |
| 11:58:33 | 24 | MR. CESTERO: OBJECTION; CALLS FOR |
| 11:58:34 | 25 | A LEGAL CONCLUSION. |

145



Kelli Norden and Associates
Court Reporters
310.820.7733 phone 310.820.7933 fax
11835 W. Olympic Boulevard Suite 680E
Los Angeles, California 90064
kna@kellinorden.com www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

```
12:00:15   1    FOR ITSELF, AND IT CALLS FOR LEGAL CONCLUSION.
12:00:21   2              THE DEPONENT:  YES.
12:00:21   3    BY MR. WILLIAMS:
12:00:21   4         Q.   WOULD IT -- AND I'LL AGREE WITH
12:00:22   5    MR. CESTERO THAT THE DOCUMENT DOES SPEAK FOR
12:00:22   6    ITSELF.
12:00:22   7              BUT WOULD IT SURPRISE YOU THAT
12:00:24   8    THERE'S NO PROVISION IN HERE THAT SPECIFIES WHEN
12:00:27   9    THE BOXER CAN TERMINATE THE AGREEMENT?
12:00:29  10              MR. CESTERO:  OBJECTION.  THE
12:00:31  11    DOCUMENT SPEAKS FOR ITSELF.  IT LACKS FOUNDATION,
12:00:31  12    CALLS FOR A LEGAL CONCLUSION, ASSUMES FACTS.
12:00:36  13              THE DEPONENT:  YEAH.  A FIGHTER CAN
12:00:41  14    GET OUT OF IT IF WE DON'T PROVIDE THE NUMBER OF
12:00:44  15    BOUTS, IF WE DON'T PAY HIM HIS MINIMUMS, IF WE'RE
12:00:44  16    NOT DOING OUR JOB THAT IS REQUIRED.
12:00:48  17              I MEAN, IT'S A BREACH OF CONTRACT.
12:00:51  18    SO IF WE'RE NOT DOING WHAT THE DOCUMENT SAYS, THEN
12:00:55  19    HE'S GOT A RIGHT TO BREAK IT.
12:00:58  20    BY MR. WILLIAMS:
12:00:59  21         Q.   BUT ASSUMING YOU'RE PROVIDING THE
12:01:01  22    MINIMUM PURSE AND THE NUMBER OF BOUTS, ARE YOU
12:01:06  23    AWARE OF ANY PROVISION THAT WOULD ALLOW THE BOXER
12:01:10  24    TO JUST DECIDE THAT THEY NO LONGER WANTED TO BE IN
12:01:14  25    CONTRACT WITH GOLDEN BOY AND TERMINATE THE
```

148

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

```
12:01:16   1   AGREEMENT?
12:01:17   2            MR. CESTERO:  OBJECTION.  THE
12:01:18   3   DOCUMENT SPEAKS FOR ITSELF, AND IT CALLS FOR A
12:01:22   4   LEGAL CONCLUSION.
12:01:22   5            THE DEPONENT:  THE DOCUMENT SPEAKS
12:01:23   6   FOR ITSELF.
12:01:24   7   BY MR. WILLIAMS:
12:01:25   8       Q.   OKAY.  LET'S LOOK AT PARAGRAPH 9,
12:01:27   9   WHERE IT SAYS "FIRST NEGOTIATION AND LAST
12:01:30  10   REFUSAL."
12:01:31  11       A.   YES.
12:01:31  12       Q.   AND IT SAYS:
12:01:33  13            "UPON EXPIRATION OR
12:01:33  14       TERMINATION OF THE TERM, THE
12:01:34  15       PARTIES WILL NEGOTIATE
12:01:37  16       EXCLUSIVELY IN GOOD FAITH FOR A
12:01:40  17       PERIOD OF AT LEAST 30 DAYS
12:01:40  18       REGARDING A NEW PROMOTIONAL
12:01:43  19       AGREEMENT BETWEEN BOXER AND
12:01:45  20       PROMOTER.
12:01:46  21            "IN THE EVENT PROMOTER AND
12:01:47  22       BOXER FAIL TO REACH AGREEMENT
12:01:54  23       WITHIN SUCH 20-DAY PERIOD,
12:01:58  24       PROMOTER SHALL BE ENTITLED TO A
12:01:58  25       RIGHT OF LAST REFUSAL REGARDING
```

149

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

12:01:58    1        ANY OFFER RECEIVED BY BOXER
12:01:58    2        WITHIN ONE YEAR AFTER THE
12:02:00    3        EXPIRATION OF THE TERM."
12:02:02    4            DO YOU SEE THAT?
12:02:03    5        A.   YES.
12:02:03    6        Q.   DO YOU HAVE AN UNDERSTANDING OF
12:02:05    7    WHAT THAT MEANS?
12:02:06    8        A.   YES.
12:02:06    9        Q.   AND WHAT IS THAT?
12:02:07   10            MR. CESTERO:   OBJECTION; CALLS FOR
12:02:10   11    A LEGAL CONCLUSION.
12:02:11   12            THE DEPONENT:   WE NEGOTIATE IN GOOD
12:02:14   13    FAITH FOR 20 DAYS.   WE CAN MAKE HIM AN OFFER TO
12:02:17   14    RE-SIGN WITH US.   HE CAN ACCEPT IT OR DECLINE IT.
12:02:22   15            AND THEN HE CAN GO AND SHOP AROUND
12:02:25   16    WITH ANY OTHER PROMOTER, AND THEN IT'S -- IT'S HIS
12:02:29   17    DUTY TO BRING IT BACK TO US.   AND WE COULD EITHER
12:02:37   18    MATCH IT OR RELEASE HIM.
12:02:37   19    BY MR. WILLIAMS:
12:02:37   20        Q.   BUT GOLDEN BOY HAS THE ABILITY TO
12:02:37   21    MATCH ANY OFFER THAT THE BOXER GETS FROM ANOTHER
12:02:38   22    PROMOTER?
12:02:38   23            MR. CESTERO:   OBJECTION.   THE
12:02:38   24    DOCUMENT SPEAKS FOR ITSELF, AND IT CALLS FOR A
12:02:38   25    LEGAL CONCLUSION.

150

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | | |
|---|---|---|
| 12:02:38 | 1 | **THE DEPONENT:  THAT'S WHAT MY** |
| 12:02:40 | 2 | **UNDERSTANDING IS.** |
| 12:02:41 | 3 | BY MR. WILLIAMS: |
| 12:02:41 | 4 | Q.   AND THEN IF YOU GET PASSED THE |
| 12:02:48 | 5 | PARENTHESES THERE, IT GOES ON TO SAY: |
| 12:02:52 | 6 | "PROVIDED THAT PROMOTER |
| 12:02:56 | 7 | SHALL NOT BE REQUIRED TO MATCH |
| 12:02:56 | 8 | ANY TERMS WHICH CANNOT BE MET AS |
| 12:02:59 | 9 | EASILY BY ONE PARTY AS BY |
| 12:03:02 | 10 | ANOTHER, SUCH AS THE ENGAGEMENT |
| 12:03:04 | 11 | OF A PARTICULAR PERSON OR A BOUT |
| 12:03:04 | 12 | AGAINST A PARTICULAR OPPONENT OR |
| 12:03:04 | 13 | FOR A PARTICULAR TITLE OR TILES." |
| 12:03:06 | 14 | DO YOU SEE THAT? |
| 12:03:07 | 15 | A.   YES. |
| 12:03:07 | 16 | Q.   AND DO YOU HAVE AN UNDERSTANDING OF |
| 12:03:10 | 17 | WHAT THAT MEANS? |
| 12:03:12 | 18 | MR. CESTERO:  OBJECTION; CALLS FOR |
| 12:03:13 | 19 | A LEGAL CONCLUSION. |
| 12:03:14 | 20 | THE DEPONENT:  NO.  I WOULD HAVE TO |
| 12:03:15 | 21 | GET LEGAL ADVICE. |
| 12:03:17 | 22 | BY MR. WILLIAMS: |
| 12:03:18 | 23 | Q.   BUT IT IS YOUR UNDERSTANDING THAT |
| 12:03:19 | 24 | IF THE -- ONCE THE AGREEMENT EXPIRES, IF THE BOXER |
| 12:03:23 | 25 | WANTS TO MOVE -- PART WAYS WITH GOLDEN BOY AND |

151



Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

## CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

```
12:12:25   1              MR. CESTERO:  OBJECTION; CALLS FOR
12:12:27   2   A LEGAL CONCLUSION, LACKS FOUNDATION.
12:12:30   3              THE DEPONENT:  NO.
12:12:36   4              MR. WILLIAMS:  I WAS GOING TO GET
12:12:37   5   TO ANOTHER DOCUMENT, BUT I DON'T KNOW IF WE WANT
12:12:40   6   TO --
12:12:41   7              MR. CESTERO:  YOU TELL ME.
12:12:42   8              MR. WILLIAMS:  OFF THE RECORD REAL
12:12:44   9   QUICK.
12:12:44  10              THE VIDEOGRAPHER:  ALL RIGHT.  THEN
12:12:45  11   WE'LL GO OFF VIDEOTAPE RECORD AT 12:12 P.M.
12:12:53  12          (WHEREUPON, A RECESS WAS HELD
12:14:20  13           FROM 12:12 P.M. TO 12:14 P.M.)
12:14:20  14              THE VIDEOGRAPHER:  AND WE'RE BACK
12:14:22  15   ON THE VIDEOTAPE RECORD AT 12:14 P.M.
12:14:25  16   BY MR. WILLIAMS:
12:14:36  17       Q.  MR. GOMEZ, I'M GOING TO SHOW YOU A
12:14:39  18   DOCUMENT, WHICH WE'LL MARK AS EXHIBIT 24, AND IT'S
          19   AN AGREEMENT PRODUCED BY GOLDEN BOY, BATES-STAMPED
          20   G.B.P. 007761 THROUGH 7774.
          21          (WHEREUPON, DEFENDANTS' EXHIBIT NUMBER
          22           24 WAS MARKED FOR IDENTIFICATION BY
          23           THE DEPOSITION OFFICER AND IS ATTACHED
          24           HERETO.)
12:14:58  25   / / /
```

                                                                    162

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

```
12:14:58   1    BY MR. WILLIAMS:
12:14:59   2          Q.    AND IT'S AN AGREEMENT BETWEEN
12:15:01   3    GOLDEN BOY PROMOTIONS AND ████████████
12:15:06   4          DO YOU RECOGNIZE THIS DOCUMENT?
12:15:07   5          A.    YES.
12:15:07   6          Q.    AND IS THAT YOUR SIGNATURE ON THE
12:15:09   7    LAST PAGE?
12:15:09   8          A.    YES.
12:15:16   9          Q.    AND THIS ONE ALSO IS AN EXCLUSIVE
12:15:24   10   AGREEMENT BETWEEN -- WELL, WHERE ████████  GRANTS
12:15:31   11   EXCLUSIVE RIGHTS TO GOLDEN BOY; CORRECT?
12:15:34   12         A.    YES.
12:15:34   13         Q.    NOW, IF YOU LOOK UNDER PARAGRAPH 2
12:15:37   14   "RIGHTS," AT THE BOTTOM -- TOWARDS THE BOTTOM OF
12:15:42   15   THAT PARAGRAPH, THERE'S A SENTENCE STARTING WITH
12:15:45   16   "FURTHER"?
12:15:45   17         A.    YEAH.
12:15:46   18         Q.    (READING):
12:15:47   19                "FURTHER, BOXER UNDERSTANDS
12:15:48   20         AND AGREES HE WILL NOT RETAIN,
12:15:52   21         HIRE, CONSULT WITH, INCLUDE, OR
12:15:54   22         INVOLVE ANY PERSON OR ENTITY AS A
12:15:56   23         MANAGER, ADVISOR, CONSULTANT OR
12:15:59   24         ANY TYPE OF REPRESENTATIVE
12:16:01   25         PERFORMING SERVICES RELATED TO
```

163

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | | |
|---|---|---|
| 12:16:04 | 1 | BOXER'S PROFESSIONAL BOXING |
| 12:16:09 | 2 | MATCHES" -- |
| 12:16:10 | 3 | AND IT LOOKS LIKE THAT SENTENCE IS |
| 12:16:12 | 4 | REPEATED. |
| 12:16:14 | 5 | -- "NOT PREVIOUSLY DISCLOSED |
| 12:16:17 | 6 | TO PROMOTER AS OF THE DATE OF THE |
| 12:16:19 | 7 | SIGNING THE PROMOTIONAL AGREEMENT |
| 12:16:21 | 8 | WITHOUT FIRST OBTAINING THE |
| 12:16:23 | 9 | EXPRESS WRITTEN CONSENT AND |
| 12:16:25 | 10 | APPROVAL OF THE PROMOTER OF SUCH |
| 12:16:28 | 11 | PERSON OR ENTITY." |
| 12:16:29 | 12 | DO YOU SEE THAT? |
| 12:16:29 | 13 | A.   YES. |
| 12:16:29 | 14 | Q.   WHEN WAS THAT PROVISION -- WHEN DID |
| 12:16:33 | 15 | THAT PROVISION START TO BE INCLUDED IN GOLDEN |
| 12:16:36 | 16 | BOY'S CONTRACTS? |
| 12:16:37 | 17 | A.   WHEN OUR COUNSEL ADVISED US. |
| 12:16:41 | 18 | MR. CESTERO:  THAT'S IT.  JUST STOP |
| 12:16:43 | 19 | THERE. |
| 12:16:43 | 20 | BY MR. WILLIAMS: |
| 12:16:44 | 21 | Q.   DO YOU RECALL WHEN THAT WAS? |
| 12:16:46 | 22 | MR. CESTERO:  DATE? |
| 12:16:47 | 23 | THE DEPONENT:  NO. |
| 12:16:47 | 24 | BY MR. WILLIAMS: |
| 12:16:51 | 25 | Q.   AND BY YOUR "COUNSEL," WHO ARE YOU |

164

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | | |
|---|---|---|
| 12:29:02 | 1 | A.    YES. |
| 12:29:03 | 2 | MR. CESTERO:  WHERE IS THAT? |
| 12:29:04 | 3 | MR. WILLIAMS:  IT'S A COUPLE LINES |
| 12:29:06 | 4 | DOWN, UNDER THE -- |
| 12:29:07 | 5 | MR. CESTERO:  I SEE IT. |
| 12:29:07 | 6 | MR. WILLIAMS:  TWO LINES UNDER THE |
| 12:29:09 | 7 | "50,000." |
| 12:29:09 | 8 | BY MR. WILLIAMS: |
| 12:29:26 | 9 | Q.    AND THIS ALSO HAS THE SAME LANGUAGE |
| 12:29:28 | 10 | OR SIMILAR LANGUAGE ON THAT "FIRST |
| 12:29:32 | 11 | NEGOTIATION/LAST REFUSAL" THAT WE TALKED ABOUT; |
| 12:29:34 | 12 | CORRECT?  PARAGRAPH 8 OF THE CONTRACT? |
| 12:29:37 | 13 | A.    I'M ASSUMING IT'S THE SAME. |
| 12:29:38 | 14 | Q.    THE SAME CONCEPT, AT LEAST, IN |
| 12:29:41 | 15 | TERMS OF -- |
| 12:29:41 | 16 | A.    YES, SAME CONCEPT. |
| 12:29:43 | 17 | Q.    WHERE IF THE AGREEMENT EXPIRES, |
| 12:29:46 | 18 | THE -- THERE'S A NEGOTIATION PERIOD.  AND IF YOU |
| 12:29:53 | 19 | CAN'T REACH A NEW AGREEMENT, GOLDEN BOY HAS A |
| 12:29:56 | 20 | RIGHT TO MATCH ANY OFFER THAT A FIGHTER GETS FROM |
| 12:30:01 | 21 | ANOTHER PROMOTER? |
| 12:30:06 | 22 | A.    YES. |
| 12:30:06 | 23 | Q.    AND THERE ARE PROVISIONS THAT ALLOW |
| 12:30:09 | 24 | THE CONTRACT TO BE AUTOMATICALLY EXTENDED FOR |
| 12:30:12 | 25 | TWO-YEAR PERIODS; CORRECT? |

176

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | | |
|---|---|---|
| 12:30:13 | 1 | MR. CESTERO:  OBJECTION.  THE |
| 12:30:14 | 2 | DOCUMENTS SPEAKS FOR ITSELF. |
| 12:30:14 | 3 | THE DEPONENT:  THE -- YEAH.  I |
| 12:30:14 | 4 | MEAN -- YEAH.  WHAT -- |
| 12:30:14 | 5 | BY MR. WILLIAMS: |
| 12:30:14 | 6 | Q.  SO -- |
| 12:30:16 | 7 | A.  I'M ASSUMING, YES. |
| 12:30:19 | 8 | Q.  I MEAN, THAT'S NOT A NEW CONCEPT TO |
| 12:30:24 | 9 | YOU; CORRECT? |
| 12:30:24 | 10 | A.  NO.  IT'S SOMETHING THAT WE -- WE |
| 12:30:26 | 11 | NORMALLY HAVE IN OUR AGREEMENTS. |
| 12:30:28 | 12 | Q.  AND, IN FACT, GOING BACK TO |
| 12:30:32 | 13 | PARAGRAPH 7 ON PAGE 7, IT SAYS: |
| 12:30:35 | 14 | "IN THE EVENT THAT DURING |
| 12:30:36 | 15 | THE TERM BOXER BECOMES A PARTY TO |
| 12:30:41 | 16 | ANY AGREEMENT WITH A MEDIA |
| 12:30:42 | 17 | NETWORK OR OUTLET." |
| 12:30:42 | 18 | DO YOU SEE THAT? |
| 12:30:42 | 19 | A.  YES. |
| 12:30:42 | 20 | Q.  (READING): |
| 12:30:43 | 21 | "THEN THE TERM OF THIS |
| 12:30:46 | 22 | AGREEMENT SHALL BE EXTENDED." |
| 12:31:04 | 23 | NOW, IF YOU LOOK AT PARAGRAPH 11 OF |
| 12:31:09 | 24 | THE CONTRACT, IT SAYS "GOVERNING LAW"? |
| 12:31:14 | 25 | A.  UH-HUH. |

177

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11835 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

```
 1                  LOS ANGELES, CALIFORNIA, THURSDAY
 2                     SEPTEMBER 22, 2016
 3                        1:30 P.M.
 4
 5            (WHEREUPON, MR. JONES RE-ENTERED THE
 6            DEPOSITION PROCEEDINGS.)
13:30:27  7              THE VIDEOGRAPHER:  AND GOOD
13:30:28  8   AFTERNOON.  WE'RE BACK ON THE VIDEOTAPE RECORD
13:30:30  9   BEGINNING DISK NUMBER THREE OF VOLUME NUMBER I AT
13:30:37 10   1:30 P.M.
         11            (WHEREUPON, DEFENDANTS' EXHIBIT NUMBER
         12            25 WAS MARKED FOR IDENTIFICATION BY
         13            THE DEPOSITION OFFICER AND IS BOUND
         14            UNDER SEPARATE COVER.)
         15
13:30:38 16                 EXAMINATION (RESUMED)
13:30:38 17   BY MR. WILLIAMS:
13:30:41 18        Q.   GOOD AFTERNOON, MR. GOMEZ.  ARE YOU
13:30:45 19   GENERALLY FAMILIAR WITH THE REQUIREMENTS TO BECOME
13:30:48 20   A BOXING MANAGER?
13:30:52 21        A.   YES.
13:30:52 22        Q.   AND WHAT ARE THEY, GENERALLY
13:30:58 23   SPEAKING?
13:30:59 24        A.   YOU FILL OUT AN APPLICATION AND PAY
13:31:03 25   100 DOLLARS.  SOMETHING LIKE THAT.
```

180

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

13:31:05  1        Q.    ANYTHING BEYOND THAT, TO YOUR
13:31:09  2    KNOWLEDGE?
13:31:09  3        A.    SOME STATES MIGHT DO A BACKGROUND
13:31:13  4    CHECK OR SOMETHING, YOU KNOW, LIKE THAT.
13:31:15  5        Q.    OTHER THAN FILLING OUT AN
13:31:19  6    APPLICATION AND PAYING A 100-DOLLAR-OR-SO FEE AND
13:31:23  7    A POSSIBLE BACKGROUND CHECK, CAN YOU THINK OF ANY
13:31:26  8    REQUIREMENTS FOR SOMEONE TO BECOME A LICENSED
13:31:29  9    BOXING MANAGER?
13:31:30  10        MR. CESTERO:  OBJECTION.  IT'S
13:31:31  11    VAGUE AND AMBIGUOUS.
13:31:31  12        THE DEPONENT:  NO.
13:31:32  13    BY MR. WILLIAMS:
13:31:33  14        Q.    TO YOUR KNOWLEDGE, IS THERE ANY
13:31:36  15    SPECIFIC BACKGROUND IN TERMS OF EXPERIENCE OR
13:31:42  16    EDUCATION THAT'S NEEDED FOR SOMEONE TO BECOME A
13:31:48  17    BOXING MANAGER?
13:31:48  18        MR. CESTERO:  OBJECTION.  IT'S
13:31:50  19    VAGUE AND AMBIGUOUS.
13:31:50  20        THE DEPONENT:  YOU HAVE TO KNOW --
13:31:52  21    YOU HAVE NO KNOW THE RIGHT PEOPLE.  YOU HAVE TO
13:31:57  22    KNOW TRAINERS OR FIGHTERS OR SOMEONE INVOLVED WITH
13:32:01  23    THE FIGHTER THEY'RE TRYING TO BE A MANAGER FOR.
13:32:09  24    BY MR. WILLIAMS:
13:32:10  25        Q.    IN YOUR EXPERIENCE, DO YOU -- DO

181

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2


Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | | |
|---|---|---|
| 13:43:33 | 1 | CANADA? |
| 13:43:33 | 2 | A.   I BELIEVE HE DOES.  I BELIEVE HE |
| 13:43:36 | 3 | HAS A MANAGEMENT LICENSE IN CANADA. |
| 13:43:38 | 4 | Q.   DOES AKIHIKO HONDA HAVE A MANAGER'S |
| 13:43:42 | 5 | LICENSE IN THE U.S., TO YOUR KNOWLEDGE? |
| 13:43:44 | 6 | A.   NOT TO MY KNOWLEDGE. |
| 13:43:47 | 7 | Q.   AND MARIO ARANO, IS HE A MANAGER |
| 13:43:54 | 8 | THAT YOU'RE FAMILIAR WITH? |
| 13:43:56 | 9 | A.   YES. |
| 13:43:57 | 10 | Q.   AND IS HE ALSO A PROMOTER? |
| 13:44:02 | 11 | A.   YES. |
| 13:44:02 | 12 | Q.   IS HE FROM ARGENTINA? |
| 13:44:06 | 13 | A.   YES. |
| 13:44:06 | 14 | Q.   AND HE MANAGES A NUMBER OF GOLDEN |
| 13:44:11 | 15 | BOY FIGHTERS; CORRECT?  MORE THAN ONE? |
| 13:44:13 | 16 | A.   ABOUT TWO OF THEM. |
| 13:44:15 | 17 | Q.   AND THAT WOULD BE MARCELINO LOPEZ |
| 13:44:18 | 18 | AND LUCAS MATTHYSSE? |
| 13:44:18 | 19 | A.   YES. |
| 13:44:19 | 20 | Q.   DO YOU KNOW IF MARIO ARANO HAS A |
| 13:44:25 | 21 | MANAGER'S LICENSE IN THE U.S.? |
| 13:44:27 | 22 | A.   NOT THAT I'M AWARE OF. |
| 13:44:28 | 23 | Q.   AND FRANK ESPINOZA MANAGES -- |
| 13:44:35 | 24 | YOU'RE FAMILIAR WITH HIM AS A MANAGER? |
| 13:44:37 | 25 | A.   YES. |

195

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | | |
|---|---|---|
| 13:58:49 | 1 | NETWORK IS BUILT IN, YOU KNOW, TICKETS OR |
| 13:58:49 | 2 | WHATEVER. |
| 13:58:55 | 3 | I DON'T KNOW HOW THEY DO TICKETS, |
| 13:58:57 | 4 | BUT WHAT I'M TOLD IS THEY HAVE NO CONTROL OVER THE |
| 13:59:00 | 5 | TICKETS. |
| 13:59:00 | 6 | Q.   WHAT DOES THAT MEAN? |
| 13:59:01 | 7 | A.   IT MEANS THAT P.B.C., THEY PRETTY |
| 13:59:05 | 8 | MUCH CONTROL ALL TICKET SALES AND WHAT THEY DO |
| 13:59:10 | 9 | WITH THE TICKETS, WHEREAS A PROMOTER, A PROMOTER |
| 13:59:14 | 10 | CONTROLS THE TICKETS AND TICKET SALES. |
| 13:59:18 | 11 | Q.   AND WHAT IS IT THAT YOU MENTIONED, |
| 13:59:23 | 12 | THE TRADITIONAL ROLE OF A PROMOTER?  WHAT IS YOUR |
| 13:59:23 | 13 | UNDERSTANDING OF THE TRADITIONAL ROLE OF A |
| 13:59:26 | 14 | PROMOTER? |
| 13:59:26 | 15 | A.   A PROMOTER GOES AND NEGOTIATES THE |
| 13:59:27 | 16 | T.V. CONTRACT.  THEY GO AND THEY NEGOTIATE WITH |
| 13:59:31 | 17 | THE SPONSORS.  THEY NEGOTIATE WITH THE FIGHTERS. |
| 13:59:34 | 18 | THEY NEGOTIATE WITH THE VENUE.  THEY PREPARE |
| 13:59:35 | 19 | EVERYTHING. |
| 13:59:36 | 20 | Q.   WHEN DID ROC NATION GET INTO BOXING |
| 13:59:45 | 21 | PROMOTION, TO YOUR KNOWLEDGE? |
| 13:59:46 | 22 | A.   VERY RECENT.  MAYBE TWO YEARS AGO. |
| 13:59:51 | 23 | Q.   AND THAT'S JAY Z'S COMPANY? |
| 13:59:54 | 24 | A.   YES. |
| 13:59:54 | 25 | Q.   AND DO YOU KNOW WHAT EXPERIENCE |

211

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

## CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | | |
|---|---|---|
| 13:59:54 | 1 | JAY Z HAD IN BOXING OTHER THAN PERHAPS BEING A FAN |
| 13:59:56 | 2 | OF IT? |
| 13:59:56 | 3 | A.   NO IDEA. |
| 13:59:58 | 4 | Q.   DO YOU CONSIDER ROC NATION TO BE A |
| 14:00:01 | 5 | SHAM PROMOTER? |
| 14:00:02 | 6 | A.   NO. |
| 14:00:02 | 7 | Q.   AND CURTIS JACKSON HAS A -- OR HAD |
| 14:00:06 | 8 | A PROMOTION COMPANY? |
| 14:00:07 | 9 | A.   YES. |
| 14:00:07 | 10 | Q.   THAT WAS S.M.S. PRODUCTIONS -- |
| 14:00:12 | 11 | PROMOTIONS?  SORRY. |
| 14:00:12 | 12 | A.   YES. |
| 14:00:12 | 13 | Q.   AND DO YOU KNOW IF HE HAD ANY |
| 14:00:14 | 14 | BACKGROUND IN THE BOXING INDUSTRY PRIOR TO FORMING |
| 14:00:18 | 15 | A PROMOTION COMPANY? |
| 14:00:19 | 16 | A.   NO IDEA. |
| 14:00:20 | 17 | Q.   HAVE YOU WORKED WITH S.M.S. |
| 14:00:24 | 18 | PROMOTIONS? |
| 14:00:25 | 19 | A.   YES. |
| 14:00:25 | 20 | Q.   DO YOU CONSIDER THAT TO BE A SHAM |
| 14:00:29 | 21 | PROMOTER? |
| 14:00:29 | 22 | A.   THEY'RE NONEXISTENT NOW.  BUT AT |
| 14:00:34 | 23 | ONE POINT OR ANOTHER, THEY DID A COUPLE OF SHOWS |
| 14:00:39 | 24 | THAT I'M AWARE OF.  SO, YOU KNOW, I DON'T KNOW |
| 14:00:41 | 25 | WHAT THEIR POSITION IS NOW.  THEY'RE PRETTY MUCH |

212

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

```
16:06:42   1   AND THEN YOU HAVE THE NUMBER ONE CONTENDER, NUMBER
16:06:45   2   TWO, NUMBER THREE, ALL THE WAY TO TEN.
16:06:47   3          AND THEN THERE'S ANOTHER SECTION,
16:06:50   4   WHICH IS 11 TO 15.  BUT NORMALLY, THEY DON'T
16:06:54   5   COMPETE FOR THE WORLD TITLE UNLESS IT'S A SPECIAL
16:06:58   6   CIRCUMSTANCE.
16:06:59   7          Q.   OKAY.  THEY POTENTIALLY COULD
16:07:01   8   COMPETE FOR THE WORLD TITLE, BUT THERE WOULD HAVE
16:07:06   9   TO BE SOME EXCEPTIONAL CIRCUMSTANCE?
16:07:09  10          A.   YES.
16:07:10  11          Q.   BEFORE THIS LAWSUIT WAS FILED, HAVE
16:07:15  12   YOU EVER HEARD THE TERM "CHAMPIONSHIP-CALIBER
16:07:20  13   BOXER" USED IN THE INDUSTRY?
16:07:22  14          A.   YES.
16:07:22  15          Q.   WHEN?
16:07:22  16          A.   MANY TIMES BEFORE.  SINCE I
16:07:23  17   STARTED.  SINCE GOLDEN BOY STARTED.
16:07:25  18          Q.   AND WHAT IS -- WHAT DOES THAT MEAN
16:07:27  19   TO YOU?
16:07:27  20          A.   WHAT IT MEANS TO ME IS EITHER --
16:07:30  21   EITHER A CHAMPION OR SOMEONE THAT'S HIGHLY RANKED
16:07:34  22   IN THE TOP THREE OR TOP FIVE.
16:07:36  23          THOSE ARE THE GUYS AT CHAMPION
16:07:38  24   CALIBER BECAUSE AT ANY ONE POINT, THEY CAN -- THEY
16:07:42  25   CAN FIGHT EACH OTHER.
```

320

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | | |
|---|---|---|
| 16:07:43 | 1 | Q.   SO YOU THINK -- IS THERE -- IS THAT |
| 16:07:44 | 2 | TERM DEFINED ANYWHERE, TO YOUR KNOWLEDGE, IN THE |
| 16:07:50 | 3 | BOXING INDUSTRY? |
| 16:07:52 | 4 | A.   THE ORGANIZATIONS USE IT.  THE |
| 16:07:52 | 5 | ORGANIZATIONS USE IT, AND THEY CONSIDER CHAMPION |
| 16:07:57 | 6 | CALIBER AS THE TOP-RANKED GUYS. |
| 16:08:00 | 7 | Q.   WHEN YOU SAY "THE ORGANIZATIONS USE |
| 16:08:02 | 8 | IT," CAN YOU REFER ME TO ANY WRITTEN SOURCE |
| 16:08:05 | 9 | THAT -- WHERE ONE OF THE SANCTIONING BODIES REFERS |
| 16:08:11 | 10 | TO CHAMPIONSHIP-CALIBER BOXERS AS A CERTAIN NUMBER |
| 16:08:15 | 11 | OF TOP FIGHTERS? |
| 16:08:17 | 12 | A.   I'VE SEEN IT IN PRESS RELEASES. |
| 16:08:22 | 13 | I'VE SEEN IT IN SOME OF THEIR HANDBOOKS, IN SOME |
| 16:08:27 | 14 | OF THE -- THE PROGRAMS THEY USE, LIKE, FOR THE |
| 16:08:29 | 15 | BOXING CONVENTIONS. |
| 16:08:30 | 16 | THEY ALL -- EACH HAVE A CONVENTION |
| 16:08:36 | 17 | ONCE A YEAR.  I'VE SEEN IT AND HEARD IT MANY, MANY |
| 16:08:37 | 18 | TIMES BEFORE. |
| 16:08:37 | 19 | Q.   SO YOUR UNDERSTANDING OF THE TERM, |
| 16:08:40 | 20 | IT WOULD BE A CHAMPION OR SOMEONE RANKED IN THE |
| 16:08:45 | 21 | TOP HOW MANY? |
| 16:08:45 | 22 | A.   FIVE. |
| 16:08:45 | 23 | Q.   TOP FIVE? |
| 16:08:45 | 24 | A.   YEAH. |
| 16:08:46 | 25 | Q.   AND SO -- AND IT'S YOUR |

321

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

## CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | | |
|---|---|---|
| 16:08:48 | 1 | UNDERSTANDING THAT'S HOW THE INDUSTRY USES THE |
| 16:08:52 | 2 | TERM "CHAMPIONSHIP-CALIBER BOXER"? |
| 16:08:55 | 3 | A.   YES. |
| 16:08:56 | 4 | Q.   SO IF -- AND IT WOULD BE THE TOP |
| 16:08:58 | 5 | FIVE OF THE FOUR MAJOR SANCTIONING BODY RANKINGS? |
| 16:09:04 | 6 | A.   HERE IN THE U.S., YES. |
| 16:09:07 | 7 | Q.   WELL, IS IT DIFFERENT OUTSIDE THE |
| 16:09:11 | 8 | U.S.? |
| 16:09:11 | 9 | A.   YEAH.  OUTSIDE THE U.S. THERE'S |
| 16:09:11 | 10 | OTHER ORGANIZATIONS, THE E.B.U., I.B.O., WHICH ARE |
| 16:09:13 | 11 | NOT REALLY RECOGNIZED HER IN THE U.S. |
| 16:09:13 | 12 | SO HERE IN THE UNITED STATES, IT'S |
| 16:09:15 | 13 | THE FOUR MAJOR ORGANIZATIONS THAT ARE RECOGNIZED. |
| 16:09:19 | 14 | Q.   AND GOING BACK TO WHERE YOU BELIEVE |
| 16:09:21 | 15 | THIS TERM IS DEFINED IN THE BOXING INDUSTRY, DO |
| 16:09:28 | 16 | ANY OF THE REGULATIONS FROM SANCTIONING BODIES, TO |
| 16:09:40 | 17 | YOUR KNOWLEDGE, DEFINE "CHAMPIONSHIP-CALIBER |
| 16:09:40 | 18 | BOXERS" AS THE TOP FIVE RANKED CONTENDERS AND THE |
| 16:09:41 | 19 | CHAMPION AS YOU'VE DESCRIBED. |
| 16:09:41 | 20 | A.   I WOULD HAVE TO DO THE RESEARCH. |
| 16:09:54 | 21 | Q.   ARE YOU AWARE OF -- WELL, THE |
| 16:09:58 | 22 | RANKINGS ARE NOT -- LET ME STEP BACK. |
| 16:10:01 | 23 | ARE YOU AWARE OF HOW THE RANKINGS |
| 16:10:03 | 24 | ARE TABULATED FOR ANY OF THE SANCTIONING BODIES? |
| 16:10:08 | 25 | A.   THEY HAVE DIFFERENT SYSTEMS.  THEY |

322

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

16:10:11  1  HAVE -- FOR INSTANCE, ONE OF THE ORGANIZATIONS HAS

16:10:14  2  A -- HAS A BOARD OF DIRECTORS, AND THEY -- THEY --

16:10:17  3  YOU KNOW, THEY RANK THE FIGHTERS.

16:10:21  4          MOST OF THEM ARE LIKE THAT.  THEY

16:10:24  5  HAVE A CHAMPIONSHIP COMMITTEE, AND THEY RANK THE

16:10:28  6  FIGHTERS.  THEY HAVE A RATINGS COMMITTEE.  SO THEY

16:10:33  7  RANK THEM, AND THEY -- YOU KNOW, BASED ON THEIR

16:10:34  8  RECORD AND WHO THEY'RE FIGHTING.

16:10:35  9          BUT NORMALLY, THE TOP TEN GUYS ARE

16:10:37  10  GUYS THAT HAVE FOUGHT OTHER GUYS IN THE TOP TEN,

16:10:42  11  AND THAT'S HOW THEY'VE QUALIFIED TO BE THERE.  SO,

16:10:42  12  YOU KNOW, THAT'S KIND OF LIKE THE WAY THE SYSTEM

16:10:45  13  WORKS.

16:10:45  14          Q.    BUT -- JUST SO -- FROM YOUR

16:10:46  15  UNDERSTANDING, IF YOU'RE NUMBER SIX ON THE

16:10:53  16  RANKING, IN YOUR VIEW, THAT PERSON WOULD NOT BE A

16:10:58  17  CHAMPIONSHIP-CALIBER BOXER?

16:11:00  18          A.    IN MY OPINION, NO.  THAT WOULD

16:11:03  19  BE -- THEY WOULD BE A CONTENDER.  THEY WOULD BE

16:11:04  20  CONSIDERED A CONTENDER.

16:11:06  21          BUT THAT CHAMPION LEVEL IS UP

16:11:08  22  THERE.  IT'S -- YOU KNOW, IT'S THE CHAMPION, THE

16:11:11  23  FIRST FIVE OR SO GUYS.  BUT THEY'RE -- THE FIRST

16:11:15  24  TEN ARE -- THE FIRST TEN CAN QUALIFY FOR A TITLE.

16:11:17  25  THEY COULD FIGHT FOR THE TITLE, YOU KNOW, AT ANY

323

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2

 **kna**

Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

16:11:21  1    GIVEN POINT.
16:11:22  2         Q.   SO THEY WOULD ALL BE CONTENDERS --
16:11:25  3         A.   THEY'RE CONTENDERS, BUT THE
16:11:27  4    CHAMPIONSHIP LEVEL ARE THE TOP GUYS.  YOU CAN'T
16:11:27  5    JUST CONSIDER THE CHAMPIONS AT CHAMPIONSHIP
16:11:33  6    CALIBER.  IT'S THE TOP GUYS THAT CAN CHALLENGE FOR
16:11:37  7    THE TITLE AS WELL.
16:11:38  8         Q.   CURRENTLY, IN YOUR VIEW, HOW MANY
16:11:43  9    CHAMPIONSHIP-CALIBER BOXERS DOES GOLDEN BOY
16:11:49  10   PROMOTE?
16:11:50  11        A.   YOU GOT ME THERE.  I WOULD HAVE TO
16:11:50  12   RESEARCH IT.  I WOULD HAVE TO LOOK AT OUR -- OUR
16:11:51  13   GUYS AND RESEARCH IT.
16:11:51  14        Q.   AND BY RESEARCHING IT, YOU WOULD
16:11:51  15   JUST LOOK AT THE RANKINGS OF THE MAJOR SANCTIONING
16:11:55  16   BODIES?
16:11:55  17        A.   I WOULD LOOK AT THE RANKINGS OF THE
16:12:00  18   MAJOR SANCTIONING BODIES AND COUNT THEM.
16:12:00  19        Q.   OKAY.
16:12:05  20        A.   I CAN PRETTY MUCH -- I KNOW WHO'S
16:12:06  21   WHO.
16:12:07  22        Q.   SURE.
16:12:07  23        A.   I KNOW WHO'S UNDER CONTRACT.
16:12:07  24        Q.   AND WE COULD LOOK AT THE LIST OF
16:12:10  25   GOLDEN BOY-REPRESENTED PROMOTED FIGHTERS AND LOOK

                                                        324

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2


Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

16:13:10  1          Q.    AND BASED ON THE DEFINITION YOU
16:13:20  2  GAVE FOR CHAMPIONSHIP-CALIBER FIGHTERS, THE
16:13:25  3  IDENTITY OF A CHAMPIONSHIP-CALIBER FIGHTER MAY
16:13:30  4  CHANGE EVERY MONTH; CORRECT?
16:13:33  5          A.    AS THEY FIGHT.    AND SOME GUYS LOSE
16:13:37  6  AND THEY GO DOWN THE RATINGS.    SOME GUYS WIN, AND
16:13:41  7  THEY MOVE UP THE RATINGS.    SO YES, YOU KNOW, AS
16:13:43  8  THEY FIGHT.
16:13:44  9          Q.    OKAY.    AND HOW OFTEN ARE THE
16:13:49  10  RATINGS PUBLISHED BY THE MAJOR SANCTIONING BODIES?
16:13:54  11         A.    I THINK IT'S ONCE A MONTH OR
16:13:58  12  SOMETHING LIKE THAT.
16:14:01  13         Q.    AND THE SANCTIONING BODIES WILL
16:14:03  14  TAKE INTO -- WELL, DO YOU KNOW -- WITH RESPECT TO
16:14:16  15  THE RANKINGS BY THE SANCTIONING BODY, THE FOUR
16:14:26  16  MAJOR SANCTIONING BODIES --
16:14:26  17         A.    YES.
16:14:28  18         Q.    -- DO YOU KNOW WHETHER ANY OF THEM
16:14:30  19  TAKE INTO ACCOUNT THE NATIONALITY OF THE MANAGER
16:14:30  20  OF THE BOXER WHEN DETERMINING HOW HIGH TO RANK A
16:14:36  21  PARTICULAR BOXER?
16:14:36  22         A.    THE MANAGER?
16:14:38  23         Q.    YES.
16:14:39  24         A.    IT HAS NOTHING TO DO WITH IT.
16:14:43  25         Q.    DO YOU KNOW IF ANY OF THEM TAKE

326

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | | |
|---|---|---|
| 16:14:46 | 1 | INTO ACCOUNT THE NATIONALITY OF THE PROMOTER WHEN |
| 16:14:49 | 2 | DETERMINING HOW HIGH TO RANK A PARTICULAR BOXER? |
| 16:14:49 | 3 | A.   NO, NOT THAT I'M AWARE OF. |
| 16:14:53 | 4 | Q.   YOU COULD HAVE CHAMPIONSHIP-CALIBER |
| 16:14:53 | 5 | BOXERS THAT ARE MANAGED BY MANAGERS THAT LIVE IN |
| 16:14:56 | 6 | MEXICO; CORRECT? |
| 16:14:56 | 7 | A.   YES. |
| 16:14:56 | 8 | Q.   AND YOU CAN HAVE |
| 16:14:58 | 9 | CHAMPIONSHIP-CALIBER BOXERS THAT ARE PROMOTED BY |
| 16:15:01 | 10 | PROMOTERS IN CANADA? |
| 16:15:13 | 11 | A.   YES. |
| 16:15:13 | 12 | Q.   SO THE -- THE LOCATION OR |
| 16:15:14 | 13 | NATIONALITY OF THE MANAGER OR PROMOTER, IN YOUR |
| 16:15:18 | 14 | VIEW, WOULD BE IRRELEVANT TO WHETHER SOMEONE IS OR |
| 16:15:20 | 15 | IS NOT A CHAMPIONSHIP-CALIBER BOXER? |
| 16:15:20 | 16 | A.   IT HAS NOTHING TO DO WITH IT.  IT'S |
| 16:15:24 | 17 | BASED ON THE FIGHTER. |
| 16:15:26 | 18 | Q.   NOW, DO YOU KNOW WHO GENNADY |
| 16:15:37 | 19 | GOLOVKIN'S MANAGER IS? |
| 16:15:37 | 20 | A.   NO. |
| 16:15:38 | 21 | Q.   ARE YOU FAMILIAR WITH OLEG HERMANN? |
| 16:15:43 | 22 | A.   I'VE HEARD HIS NAME, BUT I DON'T |
| 16:15:45 | 23 | KNOW HIM. |
| 16:15:45 | 24 | Q.   DO YOU KNOW IF HE'S THE MANAGER FOR |
| 16:15:46 | 25 | HIM? |

327



Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

## CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

16:21:38  1  AN EXISTING DEAL WITH AL AND THAT IT WAS

16:21:44  2  IMPOSSIBLE FOR THE TIME BEING.

16:21:46  3        Q.  HE TOLD YOU IT WAS IMPOSSIBLE?

16:21:51  4        A.  NO, NO.  HE JUST GAVE ME -- HE KIND

16:21:52  5  OF TOLD ME IN A WAY THAT, "LOOK, WE'RE WITH AL

16:21:56  6  RIGHT NOW, SO THERE'S NO WAY WE CAN MAKE -- WE

16:21:56  7  CAN'T WORK RIGHT NOW.  WE'RE WITH AL."

16:21:58  8        Q.  DID --

16:21:58  9        A.  HE GAVE ME THAT IMPRESSION.

16:21:58  10        Q.  BUT WHAT I'M TRYING TO UNDERSTAND

16:22:03  11  IS WHAT -- WHAT WORDS DID HE SAY, TO THE BEST OF

16:22:07  12  YOUR RECOLLECTION, THAT GAVE YOU THAT IMPRESSION?

16:22:09  13        A.  HE SAID SOMETHING LIKE, "YOU KNOW,

16:22:12  14  WE'RE WITH AL.  YOU KNOW AL'S DEALS.  SO WE'RE

16:22:16  15  WORKING WITH HIM."

16:22:17  16        Q.  AND DID YOU EVER -- WHAT DID YOU

16:22:20  17  UNDERSTAND HE MEANT BY "YOU KNOW AL'S DEALS"?

16:22:24  18        A.  WELL, IN AL'S MANAGER AND ADVISOR

16:22:26  19  DEALS, HE HAS TO APPROVE THE PROMOTERS THAT THEIR

16:22:31  20  FIGHTERS WORK WITH.

16:22:31  21        Q.  AND --

16:22:32  22        A.  I KNOW THAT FROM EXPERIENCE.

16:22:34  23

16:22:37  24

16:22:47  25

334

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

16:22:52  1
16:22:53  2
16:22:56  3
16:22:56  4
16:22:56  5
16:23:01  6
16:23:08  7
16:23:08  8
16:23:09  9
16:23:11  10
16:23:14  11
16:23:14  12
16:23:16  13
16:23:28  14
16:23:32  15
16:23:32  16
16:23:32  17
16:23:32  18
16:23:33  19
16:23:34  20
16:23:36  21
16:23:53  22
          23
          24
          25



335

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

```
 1              MR. WILLIAMS:  YES.
 2              THE DEPONENT:  MYSELF, LIKE IN MY
 3    HEAD?
 4    BY MR. WILLIAMS:
 5         Q.   SURE.
 6         A.   OR THINGS THAT I WAS THINKING
 7    ABOUT?
 8              Q.   DID YOU MENTION THAT TO THE
 9    TRAINER?
10         A.   NO, NO, NO, NO, NO.
11         Q.   DID YOU TELL THE TRAINER THAT YOU
12    WERE WILLING TO OFFER ANYTHING OTHER THAN THE
13    STANDARD TEMPLATE TERM AGREEMENT BY GOLDEN BOY?
14         A.   I JUST TOLD HIM, "I WOULD LOVE TO
15    WORK WITH HIM AGAIN.  AT SOME POINT, WE WOULD WANT
16    TO WORK TOGETHER."
17              AND HE GAVE ME THE IMPRESSION THAT
18    IT WAS IMPOSSIBLE.  IT WAS A LITTLE BIT
19    UNCOMFORTABLE.  I LEFT IT ALONE.
20         Q.   AND BY GIVING YOU THE IMPRESSION,
21    WE TALKED ABOUT WHAT --
22         A.   YES, WE TALKED ABOUT THAT.
23
24
25
```

336

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | |
|---|---|
| 16:24:40 | 1 |
| 16:24:41 | 2 |
| 16:24:43 | 3 |
| 16:24:47 | 4 |
| 16:24:47 | 5 |
| 16:24:53 | 6 |
| 16:24:55 | 7 |
| 16:24:58 | 8 |
| 16:25:01 | 9 |
| 16:25:03 | 10 |
| 16:25:08 | 11 |
| 16:25:11 | 12 |
| 16:25:13 | 13 |
| 16:25:13 | 14 |
| 16:25:16 | 15 |
| 16:25:17 | 16 |
| 16:25:17 | 17 |
| 16:25:19 | 18 |
| 16:25:27 | 19 |
| 16:25:27 | 20 |
| 16:25:28 | 21 |
| 16:25:34 | 22 |
| 16:25:39 | 23 |
| 16:25:40 | 24 |
| 16:25:44 | 25 |



337

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | |
|---|---|
| 16:25:49 | 1 |
| 16:25:50 | 2 |
| 16:25:52 | 3 |
| 16:25:57 | 4 |
| 16:26:01 | 5 |
| 16:26:07 | 6 |
| 16:26:11 | 7 |
| 16:26:16 | 8 |
| 16:26:23 | 9 |
| 16:26:23 | 10 |
| 16:26:25 | 11 |
| 16:26:27 | 12 |
| 16:26:28 | 13 |
| 16:26:28 | 14 |
| 16:26:31 | 15 |
| 16:26:34 | 16 |
| 16:26:37 | 17 |
| 16:26:39 | 18 |
| 16:26:41 | 19 |
| 16:26:43 | 20 |
| 16:26:45 | 21 |
| 16:26:51 | 22 |
| 16:26:51 | 23 |
| 16:26:51 | 24 |
| 16:26:53 | 25 |



338

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | |
|---|---|
| 16:28:46 | 1 |
| 16:28:50 | 2 |
| 16:28:52 | 3 |
| 16:28:55 | 4 |
| 16:28:58 | 5 |
| 16:29:02 | 6 |
| 16:29:05 | 7 |
| 16:29:08 | 8 |
| 16:29:12 | 9 |
| 16:29:15 | 10 |
| 16:29:19 | 11 |
| 16:29:20 | 12 |
| 16:29:22 | 13 |
| 16:29:25 | 14 |
| 16:29:25 | 15 |
| 16:29:30 | 16 |
| 16:29:35 | 17 |
| 16:29:39 | 18 |
| 16:29:39 | 19 |
| 16:29:39 | 20 |
| 16:29:41 | 21 |
| 16:29:43 | 22 |
| 16:29:48 | 23 |
| 16:29:51 | 24 |
| 16:29:54 | 25 |



341

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11835 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

16:29:56  1
16:29:56  2
16:30:05  3
16:30:10  4
16:30:15  5
16:30:15  6
16:30:15  7
16:30:15  8
16:30:15  9
16:30:15  10
16:30:24  11
16:30:24  12
16:30:27  13
16:30:31  14
16:30:34  15
16:30:35  16
16:30:36  17
16:30:36  18
16:30:40  19
16:30:41  20
16:30:41  21
16:30:44  22
16:30:47  23
16:30:50  24
16:30:53  25



342

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | |
|---|---|
| 16:30:57 | 1 |
| 16:31:00 | 2 |
| 16:31:03 | 3 |
| 16:31:07 | 4 |
| 16:31:11 | 5 |
| 16:31:11 | 6 |
| 16:31:12 | 7 |
| 16:31:14 | 8 |
| 16:31:14 | 9 |
| 16:31:18 | 10 |
| 16:31:18 | 11 |
| 16:31:18 | 12 |
| 16:31:21 | 13 |
| 16:31:24 | 14 |
| 16:31:25 | 15 |
| 16:31:26 | 16 |
| 16:31:31 | 17 |
| 16:31:36 | 18 |
| 16:31:39 | 19 |
| 16:31:43 | 20 |
| 16:31:44 | 21 |
| 16:31:56 | 22 |
| 16:31:58 | 23 |
| 16:31:59 | 24 |
| 16:32:03 | 25 |



343

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ



| 16:36:56 | 1 | Q. DO YOU REMEMBER WHICH ONE? |
| 16:36:57 | 2 | A. NO. |
| 16:36:58 | 3 | |
| 16:37:03 | 4 | |
| 16:37:05 | 5 | |
| 16:37:06 | 6 | |
| 16:37:09 | 7 | |
| 16:37:14 | 8 | |
| 16:37:15 | 9 | |
| 16:37:20 | 10 | |
| 16:37:22 | 11 | |
| 16:37:26 | 12 | |
| 16:37:31 | 13 | |
| 16:37:31 | 14 | |
| 16:37:33 | 15 | |
| 16:37:35 | 16 | |
| 16:37:38 | 17 | |
| 16:37:43 | 18 | |
| 16:37:45 | 19 | |
| 16:37:51 | 20 | |
| 16:37:52 | 21 | |
| 16:37:53 | 22 | |
| 16:37:55 | 23 | |
| 16:37:56 | 24 | |
| 16:38:05 | 25 | |

349

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ



16:38:06   1
16:38:09   2
16:38:14   3
16:38:18   4
16:38:21   5
16:38:27   6
16:38:27   7
16:38:28   8
16:38:28   9
16:38:33   10
16:38:35   11
16:38:36   12
16:38:39   13
16:38:41   14
16:38:44   15
16:38:45   16
16:38:49   17
16:38:51   18
16:38:53   19
16:38:54   20
16:38:57   21
16:38:58   22
16:39:02   23
16:39:06   24
16:39:10   25

350

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

**CONFIDENTIAL DEPOSITION OF ERIC GOMEZ**



16:39:16  1
16:39:19  2
16:39:23  3
16:39:25  4
16:39:28  5
16:39:30  6
16:39:34  7
16:39:38  8
16:39:41  9
16:39:45  10
16:39:45  11
16:39:45  12
16:39:50  13
16:39:50  14
16:39:50  15
16:39:51  16
16:39:55  17
16:39:58  18
16:39:58  19
16:40:02  20
16:40:03  21
16:40:03  22
16:40:06  23
16:40:06  24
16:40:06  25

351

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | |
|---|---|
| 16:40:09 | 1 |
| 16:40:17 | 2 |
| 16:40:19 | 3 |
| 16:40:24 | 4 |
| 16:40:28 | 5 |
| 16:40:29 | 6 |
| 16:40:31 | 7 |
| 16:40:32 | 8 |
| 16:40:34 | 9 |
| 16:40:35 | 10 |
| 16:40:45 | 11 |
| 16:40:51 | 12 |
| 16:40:52 | 13 |
| 16:40:52 | 14 |
| 16:40:57 | 15 |
| 16:40:57 | 16 |
| 16:41:02 | 17 |
| 16:41:03 | 18 |
| 16:41:03 | 19 |
| 16:41:22 | 20 |
| 16:41:25 | 21 |
| 16:41:28 | 22 |
| 16:41:30 | 23 |
| 16:41:33 | 24 |
| 16:41:38 | 25 |



352

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2

 Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11355 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

16:41:38  1
16:41:42  2
16:41:49  3
16:41:51  4
16:41:54  5
16:41:59  6
16:42:06  7
16:42:06  8
16:42:10  9
16:42:10  10
16:42:13  11
16:42:14  12

16:42:16  13        Q.    AND WHY -- HOW MANY DIFFERENT
16:42:17  14   FIGHTERS ARE YOU AWARE OF THAT GOLDEN BOY HAS
16:42:24  15   THESE MULTI-FIGHT BOUT AGREEMENTS WITH AS OPPOSED
16:42:34  16   TO A TERM PROMOTIONAL AGREEMENT?
16:42:34  17        A.    I WOULD HAVE TO LOOK IT UP.  BUT
16:42:35  18   THERE'S A FEW FIGHTERS.  I WOULD HAVE TO LOOK IT
16:42:38  19   UP.
16:42:38  20        Q.    MORE THAN FIVE?
16:42:42  21        A.    NOT TOO MANY, BUT FIVE SOUNDS ABOUT
16:42:46  22   RIGHT.  SOMETHING LIKE THAT.
16:42:47  23        Q.    AND DO YOU KNOW WHAT SHAWN
16:42:51  24   PORTER'S -- I'M SORRY.  YOU SAID THAT THIS WAS IN
16:42:53  25   FEBRUARY OF 2016, OF THIS YEAR?

353

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | | |
|---|---|---|
| 16:42:55 | 1 | A.   YES, OF THIS YEAR. |
| 16:42:57 | 2 | Q.   AND WHEN DID THEY ANNOUNCE THE |
| 16:43:01 | 3 | PORTER-THURMAN FIGHT? |
| 16:43:03 | 4 | A.   I DON'T KNOW.  IT WAS SOMETIME |
| 16:43:04 | 5 | AFTER.  SOMETIME AFTER.  LIKE, HE GAVE HIM A WEEK. |
| 16:43:06 | 6 | HE SAID, "YOU KNOW WHAT?  I'M GOING |
| 16:43:08 | 7 | TO GIVE HIM A WEEK TO GIVE US A CONTRACT FOR THE |
| 16:43:10 | 8 | THURMAN FIGHT.  YOU KNOW, IT'S ALL TALK RIGHT NOW, |
| 16:43:11 | 9 | BUT YOU KNOW WHAT?  WE'RE TIRED OF IT.  THEY'VE |
| 16:43:11 | 10 | BEEN -- WE'VE BEEN WAITING A WHILE FOR THE |
| 16:43:16 | 11 | CONTRACT," THIS AND THAT. |
| 16:43:16 | 12 | Q.   AND DID THAT FIGHT ALREADY TAKE |
| 16:43:19 | 13 | PLACE? |
| 16:43:20 | 14 | A.   YES, IT DID. |
| 16:43:21 | 15 | Q.   AND WHAT WAS SHAWN PORTER'S PURSE, |
| 16:43:26 | 16 | IF YOU KNOW? |
| 16:43:26 | 17 | A.   NO IDEA. |
| 16:43:27 | 18 | Q.   THAT WOULD BE A MATTER OF PUBLIC |
| 16:43:32 | 19 | RECORD, THOUGH; RIGHT? |
| 16:43:33 | 20 | A.   YEAH.  I WOULD HAVE TO LOOK IT UP. |
| 16:43:35 | 21 | |
| 16:43:39 | 22 | |
| 16:43:43 | 23 | |
| 16:43:46 | 24 | |
| 16:43:50 | 25 | |

354

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

16:43:56  1
16:43:59  2
16:44:03  3
16:44:03  4
16:44:04  5
16:44:07  6
16:44:10  7
16:44:12  8
16:44:15  9
16:44:15  10
16:44:17  11
16:44:21  12
16:44:24  13
16:44:25  14
16:44:29  15
16:44:29  16
16:44:32  17
16:44:39  18
16:44:42  19
16:44:45  20
16:44:47  21
16:44:48  22
16:44:52  23
16:44:55  24
16:44:56  25



355

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

16:52:02   1
16:52:07   2
16:52:08   3
16:52:08   4
16:52:11   5
16:52:12   6
16:52:15   7
16:52:15   8
16:52:16   9
16:52:16   10
16:52:19   11
16:52:22   12
16:52:30   13
16:52:32   14
16:52:34   15
16:52:39   16
16:52:39   17
16:52:39   18
16:52:41   19
16:52:41   20
16:52:42   21
16:52:45   22
16:52:49   23
16:52:52   24
16:52:53   25



363

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ



| | |
|---|---|
| 16:52:56 | 1 |
| 16:52:56 | 2 |
| 16:52:58 | 3 |
| 16:53:04 | 4 |
| 16:53:07 | 5 |
| 16:53:10 | 6 |
| 16:53:13 | 7 |
| 16:53:16 | 8 |
| 16:53:22 | 9 |
| 16:53:25 | 10 |
| 16:53:30 | 11 |
| 16:53:37 | 12 |
| 16:53:38 | 13 |
| 16:53:40 | 14 |
| 16:53:41 | 15 |
| 16:53:41 | 16 |
| 16:53:41 | 17 |
| 16:53:41 | 18 |
| 16:53:47 | 19 |
| 16:53:47 | 20 |
| 16:53:55 | 21 |
| 16:53:59 | 22 |
| 16:54:02 | 23 |
| 16:54:05 | 24 |
| 16:54:08 | 25 |

364

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | |
|---|---|
| 17:10:46 | 1 |
| 17:10:50 | 2 |
| 17:10:53 | 3 |
| 17:10:57 | 4 |
| 17:10:58 | 5 |
| 17:11:01 | 6 |
| 17:11:04 | 7 |
| 17:11:08 | 8 |
| 17:11:15 | 9 |
| 17:11:15 | 10 |
| 17:11:15 | 11 |
| 17:11:15 | 12 |
| 17:11:15 | 13 |
| 17:11:16 | 14 |
| 17:11:17 | 15 |
| 17:11:22 | 16 |
| 17:11:24 | 17 |
| 17:11:30 | 18 |
| 17:11:36 | 19 |
| 17:11:37 | 20 |
| 17:11:37 | 21 |
| 17:11:41 | 22 |
| 17:11:45 | 23 |
| 17:11:45 | 24 |
| 17:11:48 | 25 |



376

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

17:11:48  1          Q.   SIMILAR TO THE ONES WE LOOKED AT
17:11:52  2     TODAY?
17:11:52  3          A.   UH-HUH.
17:11:53  4          Q.   SORRY.  YES?
17:11:54  5          A.   YES.
17:11:55  6          Q.   AND WAS -- ANYTHING ELSE THAT YOU
17:11:57  7     RECALL ABOUT THAT CONVERSATION?
17:11:58  8          A.   THAT WAS IT.  HE MADE IT VERY CLEAR
17:12:00  9     THAT, YOU KNOW, HE WAS AFRAID OF AL.
17:12:03  10         Q.   WELL, WHEN YOU SAY "HE WAS AFRAID
17:12:05  11    OF AL," WHAT DID HE SAY THAT MADE YOU THINK THAT
17:12:08  12    HE WAS AFRAID OF AL?
17:12:10  13         A.   HE JUST -- HE DIDN'T WANT TO MAKE A
17:12:12  14    MOVE.  IT WAS TEMPTING, BUT HE JUST -- YOU KNOW,
17:12:21  15    HE CAN'T MAKE A MOVE WITHOUT AL.
17:12:25  16
17:12:26  17
17:12:30  18
17:12:36  19
17:12:36  20
17:12:36  21         Q.   NOW, OF THE FIGHTERS WE'VE TALKED
17:12:36  22    ABOUT -- LET'S JUST GO THROUGH THE LIST.
17:12:37  23              WOULD -- IN YOUR VIEW, WOULD DANIEL
17:12:39  24    JACOBS BE CONSIDERED A CHAMPIONSHIP-CALIBER BOXER?
17:12:44  25         A.   YES.

377



Kelli Norden and Associates
Court Reporters
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

```
18:10:35   1   THIS IS CITED, TOO.
18:10:37   2   BY MR. WILLIAMS:
18:10:38   3        Q.   DID YOU PROVIDE DR. KANIPER WITH
18:10:45   4   YOUR -- THE DEFINITION THAT YOU GAVE HERE EARLIER
18:10:49   5   TODAY OF "CHAMPIONSHIP-CALIBER BOXERS"?
18:10:59   6        A.   WE DISCUSSED THAT.
18:11:00   7        Q.   AND WHEN YOU SAY "WE DISCUSSED IT,"
18:11:03   8   DID YOU EXPLAIN TO HIM THE SAME DEFINITION THAT
18:11:03   9   YOU GAVE HERE IN YOUR TESTIMONY UNDER OATH?
18:11:08  10        MR. CESTERO:  I'LL OBJECT.  IT
18:11:08  11   MISSTATES HIS TESTIMONY AND YOUR QUESTIONS.
18:11:09  12        BUT IF THE QUESTION IS:  DID YOU
18:11:10  13   GENERALLY DESCRIBE THE SAME THINGS YOU DESCRIBED
18:11:13  14   HERE IN THIS DEPOSITION?
18:11:14  15        THE DEPONENT:  I DESCRIBED THE SAME
18:11:16  16   THINGS I DID TO YOU.
18:11:16  17   BY MR. WILLIAMS:
18:11:17  18        Q.   OKAY.  SO IN TERMS -- OF YOU
18:11:19  19   DESCRIBED THAT YOU CONSIDER CHAMPIONSHIP CALIBER
18:11:23  20   TO BE BOTH CHAMPIONS AND THE TOP THREE-TO-FIVE
18:11:27  21   RANKED PEOPLE IN EACH WEIGHT CLASS?
18:11:30  22        A.   YES.
18:11:30  23        Q.   OKAY.  AND DID MR. DIAZ EXPRESS ANY
18:11:37  24   DIFFERENT OPINION ON THAT SUBJECT DURING THAT
18:11:40  25   CALL?
```

428



Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

CONFIDENTIAL DEPOSITION OF ERIC GOMEZ

| | | |
|---|---|---|
| 18:11:40 | 1 | A.   NOT THAT I REMEMBER.   I THINK HE |
| 18:11:42 | 2 | WAS PRETTY MUCH ON BOARD WITH IT.   I THINK.   I |
| 18:11:47 | 3 | DON'T THINK HE HAD ANY OBJECTIONS. |
| 18:11:48 | 4 | Q.   DO YOU REMEMBER IF MR. RAMIREZ |
| 18:11:53 | 5 | EXPRESSED ANY OBJECTIONS TO THAT DEFINITION? |
| 18:11:56 | 6 | A.   NO. |
| 18:11:56 | 7 | Q.   THE PERSON AT STUBHUB THAT MONICA |
| 18:12:00 | 8 | SEARS IS FRIENDLY WITH, DO YOU KNOW IF THAT'S |
| 18:12:04 | 9 | KATIE PANDOLFO? |
| 18:12:12 | 10 | A.   YEAH, THAT'S ONE OF THE PEOPLE. |
| 18:12:14 | 11 | SHE'S FRIENDLY WITH A FEW OF THEM. |
| 18:12:16 | 12 | Q.   DO YOU KNOW IF THAT'S THE PERSON |
| 18:12:18 | 13 | WHO TOLD HER ABOUT THE HOLDS ON -- |
| 18:12:18 | 14 | A.   NO, I DON'T KNOW FOR SURE. |
| 18:12:20 | 15 | Q.   OTHER THAN THE SITUATION YOU |
| 18:12:20 | 16 | DESCRIBED AT STUBHUB WITH THE PROVODNIKOV FIGHT -- |
| 18:12:20 | 17 | A.   PROVODNIKOV (PRONUNCIATION). |
| 18:12:20 | 18 | Q.   PROVODNIKOV. |
| 18:12:26 | 19 | -- WERE THERE ANY OTHER INSTANCES |
| 18:12:32 | 20 | THAT YOU CAN THINK OF WHERE YOU BELIEVE SOMEONE |
| 18:12:34 | 21 | AFFILIATED WITH HAYMON SPORTS PUT HOLDS ON VENUES |
| 18:12:38 | 22 | IN ORDER TO PREVENT GOLDEN BOY FROM PROMOTING -- |
| 18:12:43 | 23 | FROM PROMOTING A FIGHT THERE? |
| 18:12:45 | 24 | A.   IT HAPPENED A COUPLE OF TIMES. |
| 18:12:47 | 25 | MAYBE THREE TIMES THAT I CAN REMEMBER. |

429

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



Kelli Norden and Associates
C o u r t   R e p o r t e r s
310.820.7733 phone  310.820.7933 fax
11855 W. Olympic Boulevard  Suite 680E
Los Angeles, California 90064
kna@kellinorden.com  www.kellinorden.com

EXHIBIT 23
WITNESS: GOMEZ
DATE: 09/22/16
PAGE: 1 of 9
M. DICHIRICO, CSR 13779

## TERM SHEET

The following sets forth the material terms of the agreement ("Agreement"), dated as of September 23, 2010, between Golden Boy Promotions, Inc. ("Promoter") and ████████████ regarding the grant of Boxer's exclusive promotional rights to Promoter.

1. <u>Term / Bouts</u>:    Commencing upon the date hereof and continuing until the date which is five years after Boxer's first bout hereunder, subject to extension or termination as set forth herein (the "Term").

2. <u>Rights</u>:    Boxer hereby grants to Promoter the sole and exclusive right to promote all professional boxing matches in which Boxer participates during the Term (the "Bouts" and each, a "Bout"). Boxer agrees that during the Term: (a) Boxer shall not engage in any boxing match other than Bouts promoted by Promoter under this Agreement; and (b) neither Boxer nor anyone acting on Boxer's behalf shall negotiate for nor contract for Boxer to engage in any boxing match other than Bouts promoted by Promoter under this Agreement.

3. <u>Bonus</u>:    Subject to Boxer's signature of this Agreement in accordance with all Commission requirements and Promoter's approval of Boxer's medical evaluation, and provided Boxer is not in breach or default hereunder, Promoter shall pay Boxer ████████████ ████████████

4. <u>Bouts / Minimum Purses</u>:    (a) Promoter shall use commercially reasonable best efforts to arrange Bouts for Boxer as determined in Promoter's good faith discretion, in accordance with the terms set forth herein. Subject to any default, illness, injury or other unavailability of Boxer, Promoter shall offer Boxer the right to participate in the applicable minimum number of Bouts per year set forth below. Boxer's purse for each Bout will be negotiated reasonably and in good faith in accordance with boxing industry custom and practice for boxers of Boxer's stature, taking into account then-current market conditions, the opponent, the event budget and other similar factors, provided that no delay or failure to agree on purses shall affect the validity, enforceability or effectiveness of this Agreement, and further provided that in no event shall Boxer's purse for any Bout be less than the applicable minimum (if any) set forth below.



As used herein, a "year" is defined as each successive consecutive twelve-month period commencing upon the date of Boxer's first bout hereunder hereof. Notwithstanding the foregoing, if Boxer wins an IBF, WBA, WBC or WBO world title (including an interim title, except as expressly set forth herein) (a "Major World Title") during the Term, then the annual minimum number of bouts shall be reduced to two.

(b) With respect to the each particular type of bout described below, Boxer shall be entitled to the corresponding minimum purse, in lieu of the minimums described in Paragraph 4(a) above.

6126.3.2
September 22, 2010

ALAN HAYMON'S SUMMARY



SBE/SBE
667108.3

HIGHLY CONFIDENTIAL

GBP003276



(c) For purposes of clarity, in the event that more than one minimum purse described above applies to a particular bout, the higher minimum purse shall control.

(d) For Bouts other than those listed above, Boxer's purse for each such Bout will be negotiated reasonably and in good faith in accordance with boxing industry custom and practice for boxers of Boxer's stature, taking into account then-current market conditions, the opponent, the event budget and other similar factors, provided that no delay or failure to agree on purses shall affect the validity, enforceability or effectiveness of this Agreement.

5.  Bout Arrangements:   (a) Boxer's opponent for each Bout will be selected by Promoter, subject to Boxer's approval (which approval shall not be unreasonably withheld). For each Bout promoted by Promoter hereunder, Promoter shall provide Boxer with the following (for use by Boxer and Boxer's personnel): (i) four (4) round-trip coach domestic airfares (on an if available, if used basis) from a major airport nearest Boxer's training camp within the United States to the major airport nearest to the city of the Bout; and (ii) four (4) standard hotel rooms, and per diems or meal coupons for four (4) persons, for such period of time prior to the Bout as determined by Promoters in good faith. Promoter shall provide Boxer with six (6) complimentary tickets of admission to each Bout promoted by Promoter hereunder.

(b) For each Bout, Boxer shall execute and comply with the terms of Promoter's customary Bout Agreement and/or the bout contract required by the applicable athletic or boxing commission ("Commission") and shall cooperate as required by Promoter to comply with any applicable law or regulation. Boxer agrees to comply with all rules and regulations of the applicable sanctioning body or bodies and all applicable governmental, legal or regulatory authorities. Boxer agrees to perform such additional acts, make such appearances (before the Commission or otherwise), and to execute and deliver any additional documents as Promoter may deem necessary to effectuate this Agreement.

(c) Notwithstanding anything to the contrary contained herein, if any Bout hereunder is subject to a purse bid ("Purse Bid Bout"), Promoter may submit a bid for such bout. If Promoter wins the applicable purse bid, then: (i) the terms applicable to the Purse Bid Bout shall be as determined by the purse bid, in lieu of the terms set forth in this Agreement; (ii) Boxer agrees that Boxer's purse for such Purse Bid Bout shall be ▇▇▇▇▇▇▇▇▇▇▇▇▇ amount which he would otherwise be entitled to receive pursuant to the rules and regulations of the applicable sanctioning organization (and Boxer acknowledges that he has granted Promoter ▇▇▇▇▇▇▇▇▇▇ of the purse which he would otherwise be entitled to receive because Boxer understands and agrees that it is in his interest for Promoter to win the rights to all Purse Bid Bouts); and (iii) the Term shall be extended for the amount of time Boxer is unavailable as a result of Boxer's participation in the Purse Bid Bout. If Promoter submits a bid but does not win, then: (i) Promoter's rights hereunder shall continue in full force and shall not be affected in any way; (ii) Promoter shall be entitled to receive, and Boxer shall direct the

September 22, 2010

2

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2

HIGHLY CONFIDENTIAL

GBP003277

applicable promoter of the Purse Bid Bout to pay directly to Promoter, ███████ ████████ for such purse bid bout, which payment shall be delivered to Promoter within three business days after the applicable bout; and (iii) Boxer's obligations hereunder shall continue immediately following the Purse Bid Bout, provided that the Term shall be extended for the amount of time Boxer is unavailable as a result of Boxer's participation in the Purse Bid Bout.

(d) Promoter shall be the exclusive owner of all rights in and to the Bouts, in all media throughout the world in perpetuity, and Boxer's grant of rights hereunder includes, without limitation, all rights required to arrange, stage and sell tickets of admission to the Bouts; all exclusive worldwide rights to broadcast, telecast, record, film and transmit electronically such Bouts for exhibition in all media; all merchandising and other ancillary and subsidiary rights therein; the unrestricted worldwide right to use, reproduce and display Boxer's name, voice, likeness and/or biography in connection with the advertising, promotion and exploitation of all such Bouts and any related activities (and all rights therein and/or footage thereof) and Boxer's career and Promoter's business and activities and as otherwise determined by Promoter in Promoter's sole discretion.

6.  Publicity/Sponsorship: Boxer agrees to cooperate and assist in publicizing, advertising and promoting each Bout hereunder and to appear at and participate in a reasonable number of press conferences, interviews and other publicity appearances and activities at times and places designated by Promoter. Except for the names of athletic equipment manufacturers appearing on Boxer's equipment in a reasonable size, location and placement, Boxer agrees that no advertising or promotional material shall appear on Boxer's body or on any item of clothing worn by Boxer, his trainers, seconds or assistants during and/or at any Bout or any related event without the prior written approval of Promoter (which approval shall not be unreasonably withheld). In any event, no advertising or promotional material appearing on Boxer's body or on any item of clothing worn by Boxer, his trainers, seconds or assistants during and/or at any Bout or any related event shall conflict with any sponsor of the Event or the site; shall display the name, logo or identification of any hotel, casino or gaming, wagering, betting or line service, or any other entity involved with gaming, wagering or betting lines; display the name, logo or identification of any soft drink or other beverage manufacturer or distributor; be in the form of a body or other temporary tattoo or artwork; or be lewd, obscene or otherwise inappropriate (as determined by Promoter and/or the applicable television network in its absolute discretion) for display to the intended live and/or television audience(s).

7.  Cancellation / Postponement: In the event that: (a) Boxer fails or is unable to perform any obligation hereunder due to any illness, injury or disability or due to an order of the Commission or other legal or regulatory entity or as a result of Boxer's breach or non-performance hereunder or failure to approve opponents or agree on applicable purses; or (b) any Bout scheduled under this Agreement is postponed, or Promoter's performance hereunder is prevented or material impeded, as a result of any reason provided in the immediately preceding clause (a) or in the applicable Bout Agreement, or due to an event of force majeure, disaster, labor action, power outage or other reason beyond Promoter's reasonable control, then the Term shall be automatically extended for the period of the applicable event causing the postponement or other delay.

8.  Extension / Termination: Boxer agrees to promptly submit to such reasonable medical examinations and provide such information (including full disclosure of all past or present injuries, medical conditions or surgical procedures) as Promoter may request in order to establish Boxer's physical ability to participate in Bouts hereunder. All of Promoter's obligations hereunder are conditioned

September 22, 2010

3

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2

upon Promoter's review and approval, in its sole discretion, of the results of Boxer's medical exams and disclosures. If during the Term of this Agreement Boxer wins a Major World Title, then the Term shall be extended by a period of two years beyond the date the Term (as it may be extended pursuant to any other provision hereunder) would otherwise expire or until Boxer has participated in four bouts promoted by Promoter after the date the Term (as it may be extended pursuant to any other provision hereunder) would otherwise expire. If during the Term: (a) Boxer becomes a party to any agreement with a media network or outlet; or (b) any such agreement with a media network or outlet to which Boxer is a party is extended, then the Term of this Agreement shall be extended so that it is coterminous with the complete period of the term of any such agreement. Notwithstanding anything to the contrary contained herein, in no event shall the term of this Agreement extend beyond five years or the otherwise maximum term permitted by any applicable law or regulation, if longer. In the event that Boxer is not declared the winner of any professional boxing match during the Term, then: (a) Promoter shall have no further obligation to pay the amounts described in Paragraph 4 above; and (b) Promoter shall have the right to renegotiate the guaranteed minimum purses hereunder, which purses shall be mutually agreed pursuant to reasonable, good faith negotiations in accordance with boxing industry custom and practice for boxers of Boxer's stature, taking into account the event budget, the opponent and other similar factors, provided that no delay or failure to agree on purses shall affect the validity, enforceability or effectiveness of this Agreement. In addition, in the event that Boxer is not declared the winner of any professional boxing match during the Term, then Promoter shall have the right to terminate this Agreement. Promoter shall have the right to terminate this Agreement if: (a) Boxer fails to engage in any Bout hereunder; (b) Boxer engages in any activity or conduct which is illegal, which violates any applicable law or governmental, regulatory or sanctioning body rule or regulation, or which subjects Boxer or Promoter to public ridicule, scorn, contempt or embarrassment; (c) Boxer is in breach of any of his obligations to Promoter (e.g., Boxer violates Promoter's exclusive promotional rights by negotiating with or entering into an agreement with another promoter, by refusing to participate in a bout after signing a bout contract (other than due to injury or other valid reason), etc.); (d) Promoter, in its sole discretion, determines that it is no longer in Promoter's commercial best interest to continue to promote Boxer, or (e) any prior promotional agreement between Boxer and any third party is determined to be binding upon Boxer or any claim or proceeding alleging same is filed or commenced. In the event of that this Agreement is terminated pursuant to clauses (b), (c) or (e) in the immediately preceding sentence, then Boxer shall, upon Promoter's request, refund any advance or signing bonus paid prior to termination (if any).

9. First Negotiation
and Last Refusal:       Upon expiration or termination of the Term, the parties will negotiate exclusively in good faith for a period of at least thirty days regarding a new promotional agreement between Boxer and Promoter. In the event Promoter and Boxer fail to reach agreement within such twenty-day period, Promoter shall be entitled to a right of last refusal regarding any offer received by Boxer within one year after the expiration of the Term (i.e., Boxer shall not be entitled to enter into a new bout and/or promotional agreement with any third party without first giving Promoter a five-business day right to enter into an agreement with Boxer upon the same material terms as contained in the third party offer (a written copy of which shall be provided to Promoter by Boxer), provided that Promoter shall not be required to match any terms which cannot be met as easily by one party as by another, such as the engagement of a particular person or a bout against a particular opponent or for a particular title or titles). Boxer agrees that any bout and/or promotional agreement which Boxer purports to enter into without fully complying with this terms of this paragraph shall be automatically null and void, and in such event, Boxer agrees that without prejudice to any of Promoter's other legal rights and remedies against Boxer, Promoter shall be entitled to injunctive or other equitable relief to prevent or remedy Boxer's breach or non-compliance hereunder.

4

**ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2**

HIGHLY CONFIDENTIAL                                                                  GBP003279

10. Taxes:

Boxer shall be solely responsible for payment of all taxes relating to amounts payable to Boxer hereunder. Promoter shall deduct from any payment made to Boxer hereunder all amounts required by federal, state and/or local taxing authorities to be withheld by Promoter. In the event that any tax or other payment is imposed upon or charged to Promoter in connection with the amounts payable to Boxer hereunder, then Promoter shall be entitled to deduct such amount from the purse or any other monies payable to Boxer, or at Promoter's election and upon Promoter's request, Boxer shall immediately reimburse Promoter for any such tax or payment.

11. Representations:

Boxer represents and warrants that Boxer is not subject to any agreements, obligations, options or other commitments which would conflict or interfere with Promoter's rights hereunder; and that there are no claims, disputes or litigation pending or threatened with respect to Boxer's promotional rights. Boxer represents and warrants that he has obtained, or will prior to engaging in the first bout hereunder, at his sole cost and expense, obtain the visa(s) and/or permit(s) necessary for him to fight in the United States. Boxer shall indemnify and hold harmless Promoter and Promoter's shareholders, officers, employees, representatives and affiliates from and against any and all claims, damages, judgments and expenses (including, without limitation, reasonable legal fees and expenses) as a result of any third party claim or cause of action arising out of arising out of (i) any breach (or with respect to third party claims, alleged breach) of this Agreement, or any representation or warranty contained herein, by Boxer or (ii) any act or omission by Boxer giving rise to a claim against Promoter. Without limiting Promoter's other remedies, in the event of any breach or alleged breach hereunder, Boxer shall, upon Promoter's request, refund any advance or bonus paid prior to termination (if any).

12. Governing Law:

This Agreement will be governed and construed in accordance with the laws of the State of California applicable to agreements entered into and wholly performed therein. All parties hereto submit to the exclusive venue and jurisdiction of the state and federal courts sitting in Los Angeles County with respect to any dispute resulting from this Agreement. Nothing contained in this Agreement shall be construed so as to require the violation of any law or regulation, and wherever there is any conflict between any provision of this Agreement and any law or regulation, the applicable law or regulation shall prevail; provided, however, that in such event the provision so affected shall be curtailed only to the extent necessary to permit compliance with the minimum legal requirement, and no other provisions of this Agreement shall be affected thereby. Promoter shall have the right to assign, license or transfer any or all of the rights granted to or retained by it under this Agreement to, or to otherwise perform its services and obligations hereunder in conjunction with, any person, firm or corporation, including, without limitation, any promoter or co-promoter. Neither the benefits nor the duties of Boxer under this Agreement may be assigned or transferred for any reason.

13. Confidentiality:

Boxer and Boxer's representatives and affiliates shall maintain strict confidentiality regarding Promoter and all of Promoter's contracts, agreements, business arrangements, plans, legal and business affairs, and professional relationships. Without limiting the generality of the foregoing, Boxer shall maintain strict confidentiality regarding the terms of this Agreement, and Boxer agrees that neither Boxer nor Boxer's representatives and affiliates shall use, disseminate, publish or disclose, or authorize or permit any third party to use, disseminate, publish or disclose, any information regarding the terms of this Agreement or any other agreement between Boxer and Promoter. This obligations set forth in this paragraph are of the essence of this Agreement, and any breach or violation hereof shall constitute a material breach of this Agreement.

September 22, 2010

ALAN HAYMON'S SUMMARY JUDGMENT



HIGHLY CONFIDENTIAL

14. <u>Formal Agreement:</u>  Promoter and Boxer may enter into a more formal agreement incorporating the terms hereof and Promoter's customary standard terms and conditions, but until such more formal agreement is executed, this Agreement and such standard terms and conditions (which are incorporated herein by this reference) shall constitute the entire understanding of the parties hereto and shall constitute a legal and binding agreement between the parties. Boxer agrees that in no event shall Boxer be entitled to (nor shall Boxer seek or authorize any other person or entity to seek) injunctive or other equitable relief or to otherwise terminate or rescind this Agreement.  Boxer's sole remedy shall be an action at law for actual damages. No waiver by Promoter of any breach or non-performance by Boxer hereunder shall be deemed to be a waiver of any preceding or succeeding breach or non-performance.  No modification or amendment of this Agreement shall be valid unless made by a writing signed by the party to be charged. All parties have participated in the negotiation of this Agreement and, thus, it is understood and agreed that the general rule that ambiguities are to be construed against the drafter shall not apply to this Agreement.  In the event that any language of this Agreement is found to be ambiguous, such ambiguity shall not be resolved by construing this Agreement in favor of or against any party, but rather construing the terms of this Agreement as a whole, according to their fair meaning, and each party shall have an opportunity to present evidence as to the actual intent of the parties with respect to any such ambiguous language.

By its signature below, each party confirms its understanding of and agreement to the foregoing.

**PROMOTER:**



GOLDEN BOY PROMOTIONS, INC.

By: _____

Name: _____

Title: _____ V. P.

Date: _____ 10-21-10 .

By countersigning this Agreement, undersigned party grants his approval of the Agreement, confirms all representations, warranties and agreements made by Boxer pursuant to the Agreement and agrees to cause Boxer to fully perform and comply with all terms, conditions and obligations set forth in the Agreement.  Each of the undersigned parties agrees to comply, and agrees to cause Boxer to comply, with all rules and regulations of the applicable sanctioning body or bodies and all applicable governmental, legal or regulatory authorities.



September 22, 2010          ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2

HIGHLY CONFIDENTIAL

GBP003281

STATE OF CALIFORNIA—STATE AND CONSUMER SERVICES AGENCY                           *ARNOLD SCHWARZENEGGER, Governor*



**STATE OF CALIFORNIA**

**DEPARTMENT OF CONSUMER AFFAIRS**

California State Athletic Commission
1424 Howe Ave. Ste. #33
Sacramento, CA 95825
www.dca.ca.gov/csac/
(916) 263-2195 FAX (916) 263-2197



## ADDENDUM TO
## PROMOTIONAL CONTRACT[1]

### READ ENTIRE ADDENDUM BEFORE SIGNING

Boxer understands that he/she is not obligated to sign a promotional contract with a promoter.

Pursuant to Business and Professions Code Sections 18848 and 18849, promotional contracts or other such agreements between promoters and athletes are prohibited unless approved by the commission in writing. Commission approval shall be obtained only by causing this addendum to be attached to any such promotional agreement to be signed by all parties in the presence of a commission representative, and to be reviewed and approved by a commission representative and then filed with the commission. Any and all inconsistencies or ambiguities between the promotional agreement and this addendum which is attached to it and made a part of it shall be resolved in favor of this addendum, the Boxing Act, and the commission's rules.

████████████████████████████████████████████████████████████████████

In consideration of mutual promises contained herein, the above parties agree to and with each other and with the State Athletic Commission (hereinafter "commission"), in order to induce its acceptance hereof as follows:

### NOTHWITHSTANDING THE PROVISIONS OF ANY OTHER CONTRACT:

**A.     BOXER AGREES:**

1.     A promotional contract is not valid or enforceable until it is submitted to, approved by, and filed with the commission with this addendum attached. The commission may, in its discretion, refuse to approve a promotional contract that exceeds five years. Boxer understands that he/she may negotiate the terms of the promotional contract with a promoter before signing it.

2.     Subject to the approval of the promotional contract by the commission, the boxer will render services from ████████████████████████████ lely and exclusively for promoter in such boxing contest, exhibition, or training exercises as promoter shall from time to time direct, whether in California or elsewhere.

3.     To be ready, willing, able, and available to accept and perform reasonable requests for such services.

**B.     PROMOTER AGREES:**

1.     If the promoter is promoting, co-promoting, or has any interest in a promotion involving the boxer, the promoter shall not participate in the boxer's compensation or purse from the promotion. If the promoter is not participating in the promotion but is booking the boxer with another promoter, no part of any booking fee the promoter may receive, shall come from the boxer or the boxer's purse. If the boxer has a manager, the manager shall not participate or share in the booking fee.

2.     To guarantee boxer that the boxer's share of money earned pursuant to the promotional contract shall not be less than *SEE CONTRACT* per year during its term or promoter shall pay boxer the difference between the amount actually earned and *SEE CONTRACT*

---

[1] If this constitutes the entire contract between parities, then word "addendum" as used in this document shall mean "contract."

**ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2**

HIGHLY CONFIDENTIAL

3.  To use the promoter's best efforts to secure remunerative boxing contests and at all times to act in the best interest of the boxer.

4.  Promoter shall not make a contract for a boxing contest where promoter has a direct or indirect financial or contractual interest in boxer's opponent or enter into an option contract with the boxer's opponent without the prior written approval of the commission.

5.  To render a full, true, accurate, and itemized accounting to the commission if the commission so requests. Said accounting shall include, with respect to each contest, exhibition or match: (a) the amount of money received by promoter pertaining to the contest, exhibition, or match; (b) the amount of money actually paid to boxer; (c) the amount of money owed to promoter by boxer, provided, however, that no sum of money shall be claimed under this subsection which cannot be substantiated by a receipt signed by the boxer; and, (d) training expenses.

C.  **BOXER AND PROMOTER FURTHER AGREE:**

1.  That all contests or exhibitions of boxing which are conducted during the term of the promotional contract in the State of California shall in all respects be held in conformity with the laws of the State of California and the rules and regulations now or hereafter adopted, amended, or repealed by the commission. Said laws and rules are incorporated herein and made a part hereof by reference.

2.  All controversies concerning the validity and/or enforceability of the promotional contract and this addendum shall be submitted for arbitration in the following manner:

Within two (2) weeks after the origin of such dispute or controversy, either or both parties hereto may notify the commission of the existence of such dispute and of a desire and willingness to refer such dispute to arbitration, whereupon the commission shall by itself, or through another duly appointed by it, conduct a hearing at a time and place reasonably convenient to all interested parties and witnesses; notification of the time and place of such be given to all interested persons at their last known place of address. The parties hereto agree in the event of submission of any such controversy to arbitration that the decision of such arbitrator shall be final and binding upon the parties hereto and each of them agrees to be bound thereby.

3.  The arbitrator may terminate the promotional contract if promoter fails to obtain a good faith offer of a boxing match, exhibition or contest for at least four (4) consecutive months, during which time boxer shall have been ready, willing, able, and available to accept and perform such services.

4.  Promoter and boxer both certify and promise to each other and to the commission, to induce its approval hereof, that no other person or party (other than by the commission) in any way or in any degree shares or participates in the ring earnings of the boxer, that the boxer and promoter have no other agreements with boxer's career, and that no oral or written agreements exist concerning such sharing or participation. If any such agreements exist, they shall be unenforceable unless disclosed to and approved by the commission.

5.  Promoter and boxer both certify and promise to each other and the commission to induce its approval of the promotional contract, that no oral or other written agreement exists between them other than the promotional contract and this addendum, that the boxer has no other agreement with any other person (other than the boxer's manager pursuant to a Boxer-Manager contract or an option contract filed with and approved by the commission) concerning his or her boxing activities, and that no change in or addition to the promotional contract or this addendum is valid or will be enforced unless it is made in writing, approved by, and filed with the commission or a commission representative.

6.  No promotional contract is valid until and unless both parties appear at the same time before the commission or a representative and the contract has been approved by the Executive Officer. This addendum must be attached to and made a part of said contract.

7.  The promotional contract may be terminated by the promoter and the boxer executing a release of Promotional Contract form provided by the Commission. The promotional contract may not be terminated until such a Release of Promotional Contract is executed by the promoter and boxer and is submitted to, approved by, and filed with the commission.

8.  No part of the promotional contract or this addendum is assignable without the agreement of the promoter, the boxer, and the commission.

The parties have read and signed this addendum and the promotional contract to which it is attached in each other's presence and in the presence of the commission representative who has orally reviewed the terms of this contract with the boxer on this _____21_____ day of _Oct_, 20_00_.

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2

2

HIGHLY CONFIDENTIAL

GBP003283

oncerning the boxer's compensation or career other
enforced by the commission.



_____
Promoter

_____
Manager

_____
Co-Manager (if any)

_10 – 2 1 – 1 0 ._
Date

    I hereby acknowledge that the provisions of the promotional contract and this addendum have been reviewed with me by a commission representative.

December 2007-30

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2
3

HIGHLY CONFIDENTIAL

GBP003284



## TERM SHEET

The following sets forth the material terms of the agreement ("Agreement"), dated as of September 17, 2014 between Golden Boy Promotions, LLC. ("Promoter") and ████████ ("Boxer") regarding the grant of Boxer's exclusive promotional rights to Promoter.

1. <u>Term/Bouts:</u>  Commencing upon the date of Boxer's first Bout hereunder (as defined herein) and continuing until Boxer has participated in five (5) Bouts (as defined herein) hereunder or thirty (30) months (whichever occurs first), subject to any applicable early termination or extensions, as set forth herein (the "Term").

2. <u>Rights:</u>  Boxer hereby grants to Promoter the sole and exclusive right to promote all professional boxing matches in which Boxer participates during the Term (the "Bouts" and each, a "Bout"). Boxer agrees that during the Term: (a) Boxer shall not engage in any boxing match other than Bouts promoted by Promoter under this Agreement; and (b) neither Boxer nor anyone acting on Boxer's behalf shall negotiate for nor contract for Boxer to engage in any boxing match other than Bouts promoted by Promoter under this Agreement. Boxer has advised Promoter that he is a party to an Advisory Agreement through which Boxer has granted to an "Advisor" certain rights with respect to providing advice and counsel to Boxer in relation to Boxer's professional boxing endeavors. Boxer hereby grants to Promoter the authority to consult directly with Advisors with regards to Bouts, which shall be promoted hereunder. The parties agree, however, that nothing contained herein shall grant to Advisor nor any other party (other than Promoter) the right to promote, negotiate for nor contract for Boxer to engage in any boxing match involving Boxer during the Term.   Boxer understands and agrees that his and/or his managers, advisors, consultants or representatives' cooperation, professionalism, reputation, compliance and relationship with Promoter and all related persons and entities, including but not limited to, State Athletic Commissions is essential to the successful promotion of Boxer's career. Therefore, Boxer understands and agrees to disclose any and all of his managers, advisors, consultants and/or representatives performing services related to Boxer's professional boxing matches to Promoter as of the date of the signing of the Promotion Agreement. Further, Boxer understands and agrees he will not retain, hire, consult with, include, or involve any person or entity as a manager, advisor, consultant or any type of representative performing services related to Boxer's professional boxing matches performing services related to Boxer's professional boxing matches, not previously disclosed to Promoter as of the date of the signing of the Promotional Agreement, without first obtaining the express

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2

DEFTS' EXHIBIT   24
WITNESS:   GOMEZ
DATE:   09/22/16
PAGE:   1   of   14
M. DICHIRICO, CSR 13779

HIGHLY CONFIDENTIAL

GBP007761



written consent and approval of Promoter of such person or entity. Boxer understands and agrees that this paragraph is a material provision of the Promotional Agreement and that Promoter has materially relied upon Boxer's representations and disclosure of his present managers, advisors, consultants and representatives in agreeing to offer Boxer the Promotional Agreement. Boxer's failure to disclose any and all managers, advisors, consultants and/or representatives as of the date of signing the Promotional Agreement, or Boxer's failure to first obtain Promoter's express written consent and approval of a person or entity not previously disclosed, before Boxer retains, engages, consults with or involves any person or entity as his manager, advisor, consultant or representative constitutes a material breach of the Promotional Agreement. Boxer and Promoter agree that in the event Boxer violates this provision he shall be liable to Promoter in the amount ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ which shall be considered liquidated damages payable as compensation to Promoter. This provision does not apply to Boxer's attorneys or accountants.

3. Bouts/Purses:   (a) Promoter shall use commercially reasonable best efforts to arrange Bouts for Boxer as determined in Promoter good faith discretion, in accordance with the terms set forth herein. Promoter shall offer Boxer the right to participate in five (5) Bouts during the Term in accordance with the terms set forth below. Promoter shall use its best efforts to schedule each Bout within six (6) months following the immediately preceding Bout.

(b) Boxer's purse for each Bout promoted hereunder shall be as set forth below:



In the event that Boxer is not declared the winner of the first Bout promoted hereunder, Boxer's purses for the remaining Bouts promoted hereunder will be negotiated reasonably and in good faith in accordance with boxing industry custom and practice for boxers of Boxer's stature, taking into account then-current market conditions, the opponent, the event budget and other similar factors, provided that no delay or failure to agree

Page 2                                                                  9/16/14

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2

4000

Case 2:15-cv-03378-JFW-MRW   Document 159-3   Filed 10/31/16   Page 67 of 78   Page ID #:4249



on purses shall affect the validity, enforceability or effectiveness of this Agreement and in no event shall Boxer's purse for any Bout hereunder in which Boxer participates be ▓

[text redacted]

As used herein, a "year" is defined as each successive consecutive twelve- month period commencing upon the date of Boxer's first Bout hereunder.

As used herein a Major World Title shall be a bout in which the title of the IBF, WBA, WBC and/or WBO are contested (excluding interim titles).

c) Promoter shall be deemed to have satisfied its obligation to offer Boxer the right for Boxer to participate in a Bout if Promoter offers Boxer an opportunity to participate in a Bout for the purses set forth in 4 (a) above against a Boxer at Boxer's weight classification as of the date of the execution hereof.

4. Bout Arrangements: (a) Boxer's opponent for each Bout will be selected by Promoter, subject to Boxer's approval (which approval shall not be unreasonably withheld). Boxer shall not withhold his approval for any opponent proposed by Promoter provided that (i) such opponent is at or below Boxer's weight class as of the time of the execution hereof, and (ii) is rated within the top ten (10) of any major sanctioning organization (the IBF, WBA, WBC and/or WBO) or Ring Magazine. In the event that Boxer rejects two (2) or more opponents proposed by Promoter for any Bout, then Promoter may terminate this Agreement or extend this Agreement by an additional two (2) months for each opponent rejected by Boxer. By way of example if Boxer rejects two opponents and promoter decides not to terminate this Agreement, Promoter may extend by an additional four (4) months.



Page 3                                     9/16/14

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2

HIGHLY CONFIDENTIAL                                     GBP007763

(c) For each Bout promoted by Promoter hereunder, Promoter shall provide Boxer with the following (for use by Boxer and his cornermen): (i) five (5) round-trip coach domestic airfares (on an if available, if used basis) from the major airport nearest Boxer's training camp to the major airport nearest to the city of the Bout; (ii) five (5) standard hotel rooms and per diems or meal coupons for five (5) persons for such period of time prior to the Bout as determined by Promoter in good faith and (iii) ten (10) complimentary tickets of admission to each Bout promoted by Promoter hereunder (four (4) in the highest priced section of the venue and six (6) in the second highest priced section of the venue[1].

(d) For each Bout promoted by Promoter hereunder, Boxer shall execute and comply with the terms of Promoter's customary Bout agreement and/or the Bout contract required by the applicable athletic or boxing commission ("Commission") and shall cooperate as required by Promoter to comply with any applicable law or regulation including, but not limited to making the contracted weight for all Bouts promoted hereunder. Unless agreed to by the parties in writing, all Bout agreements for each bout (with the exception of purse bid Bouts (as defined below) whether promoted by Promoter or another promoter) shall comply with the terms of this Agreement. In the event that the terms of a bout agreement vary form the terms of this Agreement then the terms of this Agreement shall control. Boxer agrees to comply with all rules and regulations of the applicable sanctioning body or bodies and all applicable governmental, legal or regulatory authorities including, but not limited to, attaining the proper weight at the appropriate time for each Bout. Boxer hereby authorizes and directs Promoter and Promoter shall remit Boxer Purse payment for all Bouts promoted hereunder to Gabriel Rosado Boxing, Inc. rather than Boxer.

(e) For each Bout promoted hereunder, Boxer shall cooperate fully to ensure that all medical examinations and other testing of Boxer are undertaken prior to the Bouts and likewise address all related matters in preparation for the Event to ensure full compliance with the applicable Commission regulations. Boxer will submit to medical examinations as may be required by Promoter's (or its designee's) insurance carrier or the Commission. In addition to any other document that Boxer is required to execute in accordance herewith,



Page 4                                                                 9/16/14

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2

HIGHLY CONFIDENTIAL



Boxer specifically agrees to completely, accurately and truthfully execute the medical examination questionnaire (or similar document) required by Promoter's insurance carrier within three (3) days of Promoter's request for Boxer to execute such questionnaire. Promoter agrees to pay the cost of such medical examinations required for insurance purposes.

(f)  Boxer agrees to submit to anti-doping testing (in accordance with the standards of the Commission).  In addition to such Commission required testing, Boxer shall submit to and fully comply with any and all additional drug testing protocols and procedures instituted by Promoter in connection with the Bouts hereunder, including Olympic-style drug testing including, but not limited to, multiple, random urine and blood tests at any time prior to any Bout hereunder, and urine and blood tests immediately following any Bout hereunder for all substances and processes banned by the entity designated by Promoter to conduct the testing, the Commission and/or sanctioning body if applicable ("Banned Substances") conducted by an accredited entity designated by Promoter in its sole discretion, provided that Promoter shall ensure that it is a condition of Boxer's opponents' bout agreements that the opponents shall submit to and comply with such additional drug testing protocols and procedures and that identical drug testing protocols and procedures shall apply to the opponents.  Boxer hereby authorizes Promoter and whichever testing agency designated by Promoter to conduct anti-doping testing, to report all results of such testing to Promoter and Boxer's opponents' representatives immediately after the agency receives the results of such tests.  In the event that Boxer tests positive for any Banned Substance (following the testing of an A sample and a B sample of the specimen in question), Boxer further authorizes the agency designated by Promoter to deliver the anti-doping testing report such result to Commission and Fight Fax, Inc.  Boxer agrees to execute any documents that are necessary in order to grant such authorizations.  Promoter agrees to ensure that Boxer's opponents for each Bout promoted hereunder shall agree to and be bound by the same terms as set forth above for Boxer, including, but not limited to provisions in all opponents' bout agreements that in the event that any opponent tests positive for any Banned Substance (following the testing of their A and B samples of the specimens in question) the opponents shall authorize whatever testing agencies designated to report such results to Boxer.

(g)  Notwithstanding anything to the contrary contained herein, if any Bout  promoted hereunder is subject to a purse bid ("Purse Bid Bout"), Promoter may submit a bid for such Bout.  If Promoter wins the applicable purse bid, then:  (i) the terms applicable to the Purse Bid Bout shall be as determined by the purse bid, in lieu of the terms

9/16/14

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2

HIGHLY CONFIDENTIAL                                                      GBP007765



set forth in this Agreement; (ii) Boxer agrees that Boxer's purse for such Purse Bid Bout shall be █████████████ of the amount which he would otherwise be entitled to receive pursuant to the rules and regulations of the applicable sanctioning organization (and Boxer acknowledges that he has granted Promoter ████████████ in the amount of the purse which he would otherwise be entitled to receive because Boxer understands and agrees that it is in his interest for Promoter to win the rights to all Purse Bid Bouts). If Promoter submits a bid but does not win, then: (i) Promoter' rights hereunder shall continue in full force and shall not be affected in any way; (ii) Promoter shall be entitled to receive, and Boxer shall direct the applicable Promoter of the Purse Bid Bout to pay directly to Promoter, ████████████████ which payment shall be delivered to Promoter within three business days after the applicable bout; and (iii) Boxer's obligations hereunder shall continue immediately following the Purse Bid Bout, provided that the Term shall be extended for the amount of time Boxer is unavailable as a result of Boxer's participation in the Purse Bid Bout.

(h) Promoter shall be the exclusive owner of all rights in and to the Bouts, in all media throughout the world in perpetuity, and Boxer's grant of rights hereunder includes, without limitation, all rights required to arrange, stage and sell tickets of admission to the Bouts; all exclusive worldwide rights to broadcast, telecast, record, film and transmit electronically such Bouts for exhibition in all media; all merchandising and other ancillary and subsidiary rights therein; the unrestricted worldwide right to use, reproduce and display Boxer Marks in connection with the advertising, promotion and exploitation of all such Bouts and any related activities (and all rights therein and/or footage thereof) and Promoter' business and activities as determined by Promoter in Promoter' sole discretion. For the avoidance of doubt, Promoter shall not have the right, nor shall Promoter cause or permit any third party, to use any Boxer Marks for any purpose not related to the Bouts, including, without limitation, for any advertising, sponsorship or endorsement purposes not related to the Bouts promoted hereunder. The term "Boxer Marks" shall mean any of Boxer's name, image, likeness, depiction, signature, biographical materials, any other visual or aural representations of identity, all rights of privacy and publicity, and all indicia of identity.

5. Publicity/
   Sponsorship:

Boxer agrees to cooperate and assist in publicizing, advertising and promoting each Bout hereunder and to appear at and participate in a reasonable number of press conferences, interviews and other publicity appearances and activities at times and places designated by Promoter provided that such activities do not unreasonably interfere

Page 6                                                    9/16/14

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



with Boxer's training schedule. Except for the names of athletic equipment manufacturers appearing on Boxer's equipment in a reasonable size, location and placement, Boxer agrees that no advertising or promotional material shall appear on Boxer's body or on any item of clothing worn by Boxer, his trainers, seconds or assistants during and/or at any Bout or any related event without the prior written approval of Promoter (which approval shall not be unreasonably withheld). In any event, no advertising or promotional material appearing on Boxer's body or on any item of clothing worn by Boxer, his trainers, seconds or assistants during and/or at any Bout or any related event shall conflict with any sponsor of the Event or the site; shall display the name, logo or identification of any hotel, casino or gaming, wagering, betting or line service, or any other entity involved with gaming, wagering or betting lines; display the name, logo or identification of any soft drink or other beverage manufacturer or distributor; be in the form of a body or other temporary tattoo or artwork; or be lewd, obscene or otherwise inappropriate (as determined by Promoter and/or the applicable television network in its absolute discretion) for display to the intended live and/or television audience(s).

6. Cancellation/
   Postponement:     In the event that:   (a) Boxer fails or is unable to perform any obligation hereunder due to any illness, injury or disability or due to an order of an athletic commission or other legal or regulatory entity or as a result of Boxer's breach or non-performance hereunder or failure to approve opponents or agree on applicable purses; or (b) any Bout scheduled under this Agreement is postponed, or Promoter's performance hereunder is prevented or material impeded, as a result of any reason provided in the immediately preceding clause (a) or in the applicable Bout Agreement, or due to an event of force majeure, disaster, labor action, power outage or other reason beyond Promoter's reasonable control, then the Term shall be automatically extended for the period of the applicable event causing the postponement or other delay and in no event shall the Term be extended for a period of more than thirty six (36) months.

7. Extension/
   Early Termination: In the event that during the Term: (a) Boxer becomes a party to any agreement with a media network or outlet; or (b) any such agreement with a media network or outlet to which Boxer is a party is extended, then the Term of this Agreement shall be extended so that it is coterminous with the complete period of the term of any such agreement. Notwithstanding anything to the contrary contained herein, in no event shall the term of this Agreement extend beyond the maximum term permitted by any applicable law or regulation. In the event that Boxer is not declared the winner of any professional boxing match during the Term, then: (a) Promoter shall

Page 7                                                    9/16/14

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2



have no further obligation to pay the amounts described in Paragraph 3(a) and (b) above; and (b) Promoter shall have the right to renegotiate the guaranteed minimum purses hereunder, which purses shall be mutually agreed pursuant to reasonable, good faith negotiations in accordance with boxing industry custom and practice for boxers of Boxer's stature, taking into account the event budget, the opponent and other similar factors, and provided further that in no event shall Boxer's purse for any Bout in which Boxer participates ██████████ ████████████████████████████████████████████ No delay or failure to agree on purses shall affect the validity, enforceability or effectiveness of this Agreement.  In addition, in the event that Boxer is not declared the winner of any professional boxing match during the Term, then Promoter shall have the right to terminate this Agreement. No action taken by Promoter following a Bout in which Boxer is not declared the winner shall be considered a waiver of any rights of Promoter hereunder.  Promoter shall have the right to terminate this Agreement if: (a) Boxer fails to engage in any Bout hereunder (other than as the result of any verified injury, illness or disability suffered as a result of Boxer's participation in or training for a Bout, or any other illness or injury not resulting from the Boxer's engaging in any sporting event or exhibition or in any hazardous activity other than normal recreational activities; (b) Boxer engages in any activity or conduct which is illegal, which violates any applicable law or governmental, regulatory or sanctioning body rule or regulation, or which subjects Boxer or Promoter to public ridicule, scorn, contempt or embarrassment, including but not limited to the use of Performance Enhancing Drugs (i.e.: steroids); (c) Boxer is in breach of any of his obligations to Promoter (e.g., Boxer violates Promoter's exclusive promotional rights by negotiating with or entering into an agreement with another Promoter, by refusing to participate in a bout after signing a bout contract (other than due to injury or other valid reason), etc.); or (d) except as otherwise set forth herein, any prior promotional agreement between Boxer and any third party is determined to be binding upon Boxer or any claim or proceeding alleging same is filed or commenced. In the event that this Agreement is terminated pursuant to clauses (b), (c) or (d) in the immediately preceding sentence, then Boxer shall, upon Promoter's request, refund any advance paid prior to termination (if any).

8. Underline{First Negotiation and Last Refusal}:  Upon expiration or termination of the Term, the parties will negotiate exclusively in good faith for a period of at least thirty (30) days regarding a new promotional agreement between Boxer and Promoter.  In the event Promoter and Boxer fail to reach agreement within such thirty (30) day period, Promoter shall be entitled to a right of last refusal regarding any offer received by Boxer within one (1) year after the expiration of the Term (i.e., Boxer shall not be entitled to enter into a new bout and/or promotional agreement with any third party without first giving Promoter

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2

HIGHLY CONFIDENTIAL



a five-business day right to enter into an agreement with Boxer upon the same material terms as contained in the third party offer (a written copy of which shall be provided to Promoter by Boxer), provided that Promoter shall not be required to match any terms which cannot be met as easily by one party as by another, such as the engagement of a particular person or a bout against a particular opponent or for a particular title or titles). Boxer agrees that any bout and/or promotional agreement which Boxer purports to enter into without fully complying with this terms of this paragraph shall be automatically null and void, and in such event, Boxer agrees that without prejudice to any of Promoter's other legal rights and remedies against Boxer, Promoter shall be entitled to injunctive or other equitable relief to prevent or remedy Boxer's breach or non-compliance hereunder.

9. Taxes:  Boxer shall be solely responsible for payment of all taxes relating to amounts payable to Boxer hereunder. Promoter shall deduct from any payment made to Boxer hereunder all amounts required by federal, state and/or local taxing authorities to be withheld by Promoter. In the event that any tax or other payment is imposed upon or charged to Promoter in connection with the amounts payable to Boxer hereunder, then Promoter shall be entitled to deduct such amount from the purse or any other monies payable to Boxer, or at Promoter' election and upon Promoter' request, Boxer shall immediately reimburse Promoter for any such tax or payment.

10. Representations:  (a) Except as otherwise set forth herein, Boxer represents and warrants that Boxer is not subject to any agreements, obligations, options or other commitments which would conflict or interfere with Promoter' rights hereunder; and that there are no claims, disputes or litigation pending or threatened with respect to Boxer's promotional rights. Boxer represents and warrants that he has obtained, or will prior to engaging in the first Bout hereunder, at his sole cost and expense, all clearances from any person or entity who may claim to have rights which would conflict or interfere with Promoter's rights hereunder.

(b) Boxer represents and warrants that he has obtained, or will prior to engaging in the first Bout hereunder, at his sole cost and expense, obtain the visa(s) and/or permit(s) necessary for him to fight in the United States.

(c) Boxer has and will fully and truthfully answer all questions in Promoter's insurance carriers' application forms as required. Boxer represents that he does not have any mental or physical condition, sickness, disease or injury and is not taking any medication which may impair his ability to prepare for and/or give an honest exhibition of his skill in any Bout hereunder. Boxer further represents and warrants that he has not and will not during the Term (i) use any

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2

HIGHLY CONFIDENTIAL                    GBP007769



illegal substances or performance enhancing drugs (e.g., steroids), has not attended a rehabilitation center or similar establishment for treatment for drug and/or alcohol dependency or drug and/or alcohol abuse at any time within the last eighteen (18) months.

(d)   Boxer agrees to promptly submit to such reasonable medical examinations and provide such information (including full disclosure of all past or present injuries, medical conditions or surgical procedures) as Promoter may request in order to establish Boxer's physical ability to participate in Bouts hereunder.   All of Promoter' obligations hereunder are conditioned upon Promoter' review and approval, in its sole discretion, of the results of Boxer's medical exams and disclosures.

(e)  Boxer agrees to indemnify, defend and hold harmless Promoter and  its officers, directors, employees, representatives, affiliates, assigns and licensees from and against any and all claims, liabilities, judgments, expenses or damages (including reasonable attorneys' fees) arising out of (i) any breach (or with respect to third party claims, alleged breach) of this Agreement, or any representation or warranty contained herein, by Boxer or (ii) any act or omission by Boxer giving rise to a claim against Promoter or any other party.

(f)  Boxer agrees that in the event that the Event or Bout promoted hereunder is cancelled or postponed because of Boxer's use, injection, ingestion, application and/or implantation of a Banned Substance (including, but not limited to as a result of a positive test for a Banned Substance), Boxer agrees to reimburse Promoter for any and all costs and expenses incurred by Promoter as a result of such cancellation or postponement.  Those costs and expenses include, but are not limited to, the costs of production, marketing, public relations, media events, and the travel costs of all parties involved in the event. Boxer shall remit payment to Promoter for such costs within three (3) days of Promoter's request for same.  In the event that Boxer does not remit payment to Promoter within three (3) days of Promoter's request, then Boxer hereby authorizes Promoter to deduct such fees, costs and expenses from Boxer's purse for future bouts whether promoted by Promoter or not.   Notwithstanding the foregoing, Promoter agrees that Promoter shall not be entitled to any indemnification under this Section unless and until Boxer has been given a reasonable opportunity to review any evidence relating to any assertion of Boxer's use, injection, ingestion, application and/or implantation of a Banned Substance (including, but not limited to as a result of a positive test for a Banned Substance) and to fully exercise any rights to appeal any such assertion, if any, within the sixty (60)

Page 10                                                9/16/14

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2

HIGHLY CONFIDENTIAL



day period following notice to Boxer of the cancellation or postponement of any Bout pursuant to this Section.

(g)    Additionally, Boxer agrees that in the event that any Bout promoted hereunder is cancelled or postponed because Boxer is unavailable because he is arrested or convicted of any criminal act or because Boxer violates a rule of an applicable Commission or sanctioning organization or because of some act or omission by Boxer (other than for a physical injury suffered after the execution of this agreement), Boxer agrees to reimburse Promoter for any and all costs and expenses incurred by Promoter as a result of such cancellation or postponement.

(h) Notwithstanding anything in this Agreement to the contrary, in no event shall Boxer have any liability to Promoter under this Section 11 in excess of the amounts previously paid under the terms of Section 3.

11.  Governing Law:      (a)  This Agreement will be governed and construed in accordance with the laws of the State of Nevada applicable to agreements entered into and wholly performed therein.  Any dispute, controversy or claim arising out of or relating to this Agreement, including the formation, interpretation, breach or termination thereof, including whether the claims asserted are arbitrable, will be referred to and finally determined by arbitration in accordance with the JAMS Commercial Arbitration Rules before a single arbitrator who shall be selected by the parties to the arbitration and who shall be a retired judge or justice. If the parties are unable to select an arbitrator, the arbitrator will be selected in accordance with the JAMS Rules.  The place of arbitration will be Las Vegas, Nevada. Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.  The prevailing Party in arbitration shall be entitled to its reasonable costs, including the costs of arbitration, and attorneys' fees.

(b) Boxer acknowledges and agrees that his services in connection with the Bouts are of a special, unique, unusual and extraordinary character giving them peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in an action at law and could cause Promoter irreparable damage and injury.  Accordingly, Boxer agrees that Promoter shall be entitled to injunctive and other equitable relief, without the necessity for posting a bond, to prevent any breach or default by Boxer hereunder, which relief shall be in addition to and without prejudice to any other rights or remedies Promoter may have in such event.  In the event of any breach or claimed breach hereof by Promoter, Boxer shall provide Promoter with notice of such claimed breach and an

Page 11                                    9/16/14

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2

HIGHLY CONFIDENTIAL



opportunity to cure the claimed breach Boxer shall provide such notice as soon as Boxer is aware of the claim. Promoter shall have thirty (30) days from notice to cure the claimed breach, unless the breach relates to an event scheduled for a date certain that is less than thirty (30) days from the date of notice, in which event Promoter shall have a reasonable time to cure, which, in any event, shall be not less than ten (10) business days. Provided Promoter has commenced a cure of the claimed breach within the applicable period set forth above, Promoter shall be allowed a reasonable time to complete the cure. Boxer's remedy in the event of an uncured breach by Promoter shall be limited to Boxer's actual, provable monetary damages proximately caused by Promoter's breach and in no event (i) shall Promoter be liable to Boxer for special or consequential damages, lost profits or punitive or exemplary damages; or (ii) shall Boxer be entitled to (nor shall Boxer seek or authorize any other person or entity to seek) injunctive or other equitable relief (other than declaratory relief) or to otherwise terminate or rescind this Agreement. Any action by Boxer hereunder shall be commenced, if at all, within one year of the claimed breach and Boxer hereby waives any otherwise applicable statutes of limitations that would provide any greater amount of time within which to bring an action. Neither Promoter nor Boxer shall bring any action hereunder without first engaging in a good faith attempt to resolve the issues that are proposed to be the subject of the action and the parties hereby agree to cooperate with each other in such efforts to achieve a good faith resolution of the dispute.

(c) Nothing contained in this Agreement shall be construed so as to require the violation of any law or regulation, and wherever there is any conflict between any provision of this Agreement and any law or regulation, the applicable law or regulation shall prevail; provided, however, that in such event the provision so affected shall be curtailed only to the extent necessary to permit compliance with the minimum legal requirement, and no other provisions of this Agreement shall be affected thereby. Promoter shall have the right to assign, license or transfer any or all of the rights granted to or retained by it under this Agreement to, or to otherwise perform its services and obligations hereunder in conjunction with, any person, firm or corporation, including, without limitation, any promoter or co-promoter. Neither the benefits nor the duties of Boxer under this Agreement may be assigned or transferred for any reason.

12. Confidentiality:    Boxer and Boxer's representatives and affiliates shall maintain strict confidentiality regarding Promoter and all of Promoter' contracts, agreements, business arrangements, plans, legal and business affairs, and professional relationships. Without limiting the generality of the

Page 12                                          9/16/14

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2

foregoing, Boxer shall maintain strict confidentiality regarding the terms of this Agreement, and Boxer agrees that neither Boxer nor Boxer's representatives and/or affiliates shall use, disseminate, publish or disclose, or authorize or permit any third party to use, disseminate, publish or disclose, any information regarding the terms of this Agreement or any other agreement between Boxer and Promoter. The obligations set forth in this paragraph are of the essence of this Agreement and shall survive the termination of this Agreement, and any breach or violation hereof shall constitute a material breach of this Agreement.

13. Formal Agreement:   Promoter, and Boxer may enter into a more formal agreement incorporating the terms hereof a, but until such more formal agreement is executed, this Agreement shall constitute the entire understanding of the parties hereto and shall constitute a legal and binding agreement between the parties. Boxer agrees that in no event shall Boxer be entitled to (nor shall Boxer seek or authorize any other person or entity to seek) injunctive or other equitable relief or to otherwise terminate or rescind this Agreement. No waiver by Promoter of any breach or non-performance by Boxer hereunder shall be deemed to be a waiver of any preceding or succeeding breach or non-performance. No modification or amendment of this Agreement shall be valid unless made by a writing signed by the party to be charged. The parties acknowledge and agree that they are currently parties to a valid and enforceable Term Sheet dated, September 13, 2013, which among other things, provided to Promoter the right to promote four (4) bouts in which Boxer was to participate after its execution. The parties further acknowledge and agree that as of the date hereof all parties have satisfied those obligations for which they were responsible and that there have been no breaches of such agreement. The parties further agree that upon the execution hereof such Term Sheet and the parties obligations thereunder shall be deemed terminated and the parties conduct from that point forward shall be controlled by the terms hereof. All parties have participated in the negotiation of this Agreement and, thus, it is understood and agreed that the general rule that ambiguities are to be construed against the drafter shall not apply to this Agreement. In the event that any language of this Agreement is found to be ambiguous, such ambiguity shall not be resolved by construing this Agreement in favor of or against any party, but rather construing the terms of this Agreement as a whole, according to their fair meaning, and each party shall have an opportunity to present evidence as to the actual intent of the parties with respect to any such ambiguous language.

**BOXER ACKNOWLEDGES THAT PROMOTER HAS RECOMMENDED THAT BOXER OBTAIN THE ADVICE OF HIS OWN, INDEPENDENT COUNSEL BEFORE ENTERING**

Page 13                                                9/16/14

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2

INTO THIS AGREEMENT, AND THAT HE HAS HAD THE OPPORTUNITY TO DO SO.

BOXER FURTHER UNDERSTANDS AND ACKNOWLEDGES THAT HE IS UNDER NO OBLIGATION TO ACCEPT ANY OF THE TERMS OF THIS AGREEMENT, THAT THE TERMS HAVE BEEN NEGOTIATED BETWEEN PROMOTER AND BOXER AND ARE THE RESULT OF SUCH NEGOTIATION AND THAT BOXER HAS READ ALL PARTS OF THIS AGREEMENT AND UNDERSTANDS THE TERMS HEREOF AND ENTERS INTO THIS AGREEMENT FREELY AND NOT AS THE RESULT OF ANY COERCION OR DURESS.

By its signature below, each party confirms its understanding of and agreement to the foregoing.

**PROMOTER:**

GOLDEN BOY PROMOTIONS, LLC.

By: _____

Name: _____

Title: _____V.S._____

Date: _____9·17-14._____

Page 14                                                        9/16/14

ALAN HAYMON'S SUMMARY JUDGMENT EXHIBIT NO. 2