1 BERTRAM FIELDS (SBN 024199)
BFields@ggfirm.com
2 RICARDO P. CESTERO (SBN 203230)
RCestero@GreenbergGlusker.com
3 JAMES R. MOLEN (SBN 260269)
JMolen@GreenbergGlusker.com
4 GREENBERG GLUSKER FIELDS
  CLAMAN & MACHTINGER LLP
5 1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
6 Telephone: 310.553.3610
Fax: 310.553.0687
7
8 Attorneys for Plaintiffs
Golden Boy Promotions, LLC, Golden Boy
9 Promotions, Inc. and Bernard Hopkins

10 UNITED STATES DISTRICT COURT

11 CENTRAL DISTRICT OF CALIFORNIA

12 GOLDEN BOY PROMOTIONS, LLC, | Case No. 2:15-cv-03378 JFW (MRWx)
GOLDEN BOY PROMOTIONS, INC. |
13 and BERNARD HOPKINS, | *Assigned to Hon. John F. Walter*

14 Plaintiffs, | **SECOND AMENDED COMPLAINT FOR SHERMAN ACT**
15 v. | **VIOLATIONS, UNFAIR PRACTICES ACT VIOLATIONS**
| **AND UNFAIR COMPETITION**
16 ALAN HAYMON, ALAN HAYMON |
DEVELOPMENT, INC., HAYMON | **JURY TRIAL DEMANDED**
17 HOLDINGS, LLC, HAYMON |
SPORTS, LLC, HAYMON BOXING |
18 MANAGEMENT, HAYMON |
BOXING LLC, and RYAN |
19 CALDWELL, |

20 Defendants. |

21

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Plaintiffs allege as follows:

## INTRODUCTION

1.    Plaintiffs are a boxer and boxing promoters founded and controlled by boxers. The founder of the promoting companies was Oscar De La Hoya ("De La Hoya"), an United States Olympic Gold Medalist and ten-time world champion in six different weight divisions. Plaintiff Bernard Hopkins is another legendary boxer, who also indirectly owns an interest in the plaintiff companies.

2.    Defendant, Al Haymon, acting through his wholly owned defendant companies and backed by a powerful venture capital firm, is attempting to monopolize the business of promoting professional boxing matches in the United States. Haymon intends to create that monopoly by illegal, predatory and anti-competitive conduct, such as forcing boxers to refuse to deal with Plaintiffs and acting to deny Plaintiffs access to elements essential to their business success, as well as multiple and repeated violations of the federal and state laws intended to regulate boxing and ensure fair competition, including the Muhammad Ali Boxing Reform Act, numerous state laws governing boxing and preventing unfair competition, the Sherman Act and other state and federal legislation.

3.    Haymon has blatantly ignored the "firewall" required by federal and state law to protect boxers and enhance competition by keeping managers separate from promoters. He has functioned repeatedly and illegally as both a promoter and a manager. While falsely pretending that he is not a promoter, Haymon is preventing the hundreds of boxers he manages from signing promotional contracts with Plaintiffs or any other legitimate promoter; and he has excluded Plaintiffs and other legitimate promoters not only from promoting the bouts of the many boxers he manages, but also from the network television broadcasts of boxing matches and choice dates at quality arenas essential to successful promotion.

4.    By such unlawful, anticompetitive and predatory conduct, Haymon is determined to drive Plaintiffs and every other competitor from the boxing

GREENBERG GLUSKER FIELDS CLAMAN<br>& MACHTINGER LLP<br>1900 Avenue of the Stars, 21st Floor<br>Los Angeles, California 90067-4590

1

SECOND AMENDED COMPLAINT FOR SHERMAN ACT VIOLATIONS, UNFAIR PRACTICES ACT VIOLATIONS AND UNFAIR COMPETITION

promotion business and to monopolize that business. That monopoly will eliminate competition in the boxing promotion business, as well as the interests of boxers, consumers, arenas, television networks and, of course, other promoters and managers. If allowed to continue, there is a dangerous probability that Haymon will succeed in creating the monopoly he is scheming to achieve.

## **THE PARTIES**

5. Plaintiff Golden Boy Promotions, LLC is a California limited liability company. Plaintiff Golden Boy Promotions, Inc. is a California corporation. Together they are called "Golden Boy." Their principal office is in Los Angeles County, California, and they are both licensed boxing promoters in different states. Plaintiff Bernard Hopkins ("Hopkins") is a champion boxer. Along with De La Hoya, Hopkins owns an equity interest in an LLC that has the equity interest in another LLC that, in turn has the equity interest in Golden Boy Promotions, LLC and owns the stock of Golden Boy Promotions, Inc. Hopkins is also a resident of Los Angeles County, California.

6. Defendant Alan Haymon ("Haymon") conducts the activities alleged hereinbelow primarily through his total ownership and control of Alan Haymon Development, Inc., Haymon Sports, LLC, Haymon Holdings, LLC (f/k/a KO Holdings, LLC, f/k/a Haymon Sports, LLC), Haymon Boxing LLC and Haymon Boxing Management LLC (collectively with Alan Haymon, the "Haymon Defendants"). Plaintiffs are informed and believe and, on that ground, allege that Haymon is a resident of California and that Alan Haymon Development, Inc., Haymon Sports, LLC, Haymon Holdings LLC, Haymon Boxing LLC and Haymon Boxing Management LLC are limited liability companies with their principal place of business in either California or Nevada. The Haymon Defendants function illegally as both boxing promoters and boxing managers in California, Nevada and elsewhere. They have done substantial business in California and their activities

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

2

SECOND AMENDED COMPLAINT FOR SHERMAN ACT VIOLATIONS, UNFAIR PRACTICES ACT VIOLATIONS AND UNFAIR COMPETITION

have a significant impact on California, including businesses and activities alleged hereinbelow.

7.     The Haymon Defendants, all of which are totally owned and controlled by Haymon, are operated by him and function together as a unified joint venture directed and deployed by Haymon to carry out his personal plans and schemes alleged hereinbelow, with the profits and losses resulting from those plans and schemes divided among the Haymon Defendants as Haymon directs.  Thus, Haymon selects which of the Haymon Defendants will execute any particular agreement or carry out any particular part of his plans and schemes, and each of the Haymon Defendants operates in every respect in cooperation with the other Haymon Defendants to carry out those plans and schemes under the complete and unified control of Haymon.  Discovery will be necessary to single out which of the Haymon Defendants executed any particular contract or carried out any particular aspect of Haymon's plans or schemes alleged hereinbelow.  But the Haymon Defendant that executed any particular contract or carried out any part of any particular plan or scheme was totally directed and controlled by Haymon and was aided and abetted by the other Haymon Defendants.  The following examples demonstrate Haymon's control over the Haymon Defendants:

A.     Haymon Sports:  Haymon is the Chief Executive Officer of Haymon Sports.  As further alleged below, Haymon has negotiated and signed contracts on behalf of Haymon Sports and uses Haymon Sports to promote boxing matches under his *Premier Boxing Champions* ("PBC") banner.

B.     Haymon Development:  Haymon is the President, Chief Executive Officer and Secretary of Haymon Development.  As further alleged below, Haymon has negotiated and signed contracts on behalf of Haymon Development, including numerous managerial contracts with boxers.

C.     Haymon Holdings:  Haymon is President, Chief Executive Officer and Chairman of the Board of Haymon Holdings.  Haymon personally

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED COMPLAINT FOR SHERMAN ACT VIOLATIONS, UNFAIR PRACTICES ACT VIOLATIONS AND UNFAIR COMPETITION

controls three of the five board member positions for Haymon Holdings. Haymon has a veto right over "major decisions" taken by Haymon Holdings and has negotiated and executed contracts on behalf of Haymon Holdings.

D. <u>Haymon Boxing</u>: Haymon is the Owner and Chief Executive Officer of Haymon Boxing. As further alleged below, Haymon routinely negotiates and executes contracts on behalf of Haymon Boxing, incluing but not limited to exclusive agreements with broadcasters. Haymon used Haymon Boxing and Haymon Sports to bring PBC into existence.

8. Before the acts on which this action is based, Defendant Ryan Caldwell ("Caldwell") was a principal executive of a major investment fund and of the subsidiaries and affiliates through which it acted ("Waddell"). At Caldwell's direction, Waddell agreed to provide more than four hundred million dollars to finance certain of the unlawful activities of the Haymon Defendants alleged hereinbelow. Thereafter, Caldwell left Waddell and has conspired with and aided and abetted the Haymon Defendants in the commission of their unlawful acts alleged hereinbelow.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over Plaintiffs' federal antitrust claims, which arise under the Sherman Antitrust Act (15 U.S.C. §§ 1, 2) and the Clayton Act (15 U.S.C. §§ 15, 26). 28 U.S.C. §§ 1331, 1337(a). This Court has supplemental jurisdiction over the related claims for the violations of California statutory law herein alleged, because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a).

10. Venue in this Judicial District is proper under 28 U.S.C. § 1391(b) in that a substantial part of the acts and circumstances giving rise to this action occurred in this District and are subject to personal jurisdiction in this District.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

## **FACTUAL ALLEGATIONS**

11.     This complaint is based upon the acts of the defendants commencing on January 1, 2015.  The period commencing January 1, 2015 is sometimes referred to hereinafter as the "Covered Period."  Defendants' conduct prior to the Covered Period has been alleged, in some instances, to establish defendants' knowledge, motive and/or intention in carrying out their unlawful activities during the Covered Period.  To the extent that any combination or conspiracy to violate the law was formed by defendants before the Covered Period, that combination or conspiracy was carried out by individual acts during the Covered Period, which acts were and are separate violations of the law.

### **The Professional Boxing Industry**

12.     Professional boxing is a multibillion dollar industry.  Professional boxers in the United States are not uniform in their skills, experience or earning ability.  At one end of the spectrum are those who have just entered the ranks of professional boxers.  They struggle to obtain bouts for small sums while they hone their skills.  Few get beyond that level.  At the other end of the spectrum are "Championship-Caliber Boxers" – that is professional boxers who have demonstrated through such factors as purse size, television rights, viewership, ticket revenue and other objective factors that they are "the cream of the boxing business."  See *International Boxing Club of New York v. United States*, 358 U.S. 242 249, 252 (1959).

13.     This action deals with two disparate occupations – boxing managers and boxing promoters.  With respect to Championship-Caliber Boxers, the two occupations form two different markets, the market for managing such boxers and the market for promoting their bouts.  The need to separate these two occupations and markets and keep them separated is required by sound public policy and is specifically mandated by an Act of Congress and by legislation in California, Nevada and elsewhere.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

14. The Muhammad Ali Boxing Reform Act (the "Ali Act"), requires that there be a strict "[f]irewall between promoters and managers." 15 U.S.C. § 6308(b). The Ali Act expressly prohibits managers from having "a direct or indirect financial interest in the promotion of a boxer," and from being "employed by or receiv[ing] compensation or other benefits from a promoter." *Id*. §§ 6308(b)(1)(B)(i)–(ii). California, Nevada and New York, for example, have similar statutes and regulations. All three states prohibit persons from acting as both manager and promoter. See Calif. Code Regs. title 4, § 396; Nev. Admin. Code § 467.104; 19 N.Y. Code Rules and Regs. § 207.19. No one is allowed to function in both the market for boxing managers and the market for boxing promoters, a "firewall" designed to prevent predatory and anticompetitive conduct in the boxing business and that significantly enhances competition and benefits boxers, promoters, managers and consumers.

## Managers

15. Under the Ali Act, a "manager" is "a person who receives compensation for service as an agent or representative of a boxer." *Id*. § 6301(5). Managers, including the managers of Championship-Caliber Boxers, are fiduciaries required to be devoted to their clients' best interests. Before any boxing match – particularly highly publicized bouts between Championship-Caliber Boxers – a boxer faces a complex series of contracts and transactions, including an essential contract with the bout's promoter. This can be difficult, especially for fighters who are not experienced in the business side of boxing or who lack significant formal education. A manager's role (and ethical responsibility) is to represent the boxer in these various negotiations and the boxer's other boxing related dealings.

16. Managers, including managers of Championship-Caliber Boxers, typically receive a percentage of the boxer's "purse" for each bout. The "purse" is the amount of money the boxer receives from the promoter of a bout, who guarantees the purse and, directly or indirectly, pays the boxer. Because the

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

6

SECOND AMENDED COMPLAINT FOR SHERMAN ACT VIOLATIONS, UNFAIR PRACTICES ACT VIOLATIONS AND UNFAIR COMPETITION

manager's compensation is ordinarily tied to the purse, the manager is incentivized to negotiate the best terms possible from the promoter for the benefit of the boxer and himself.

17.     Many states require boxing managers to be professionally licensed, and have promulgated regulations governing managers' conduct. In California, for example, managers must pass a written examination administered by the State Athletic Commission in order to be licensed. See Calif. Code Regs. title 4, § 218(a). In Nevada, managers must apply for a license as provided in Nev. Admin. Code § 467.012.

18.     As alleged in more detail below, the Haymon Defendants have vast market power and hold an overwhelmingly dominant position in the market for managing Championship-Caliber Boxers in the United States. They have signed long-term exclusive contracts with approximately 200 fighters, including dozens of Championship-Caliber boxers, including many current and former world champions and the foremost challengers for their championship belts. No other boxing manager represents more than a dozen or so boxers of *any* description and none currently manages more than seven Championship-Caliber boxers.

19.     Every Championship-Caliber Boxer managed by the Haymon Defendants is required by those defendants to sign an exclusive agreement granting the Haymon Defendants total control over the boxer's career and revenue-generating activities and precluding the boxer's signing any boxing-related contract, including any contract with a promoter, without the approval of the Haymon Defendants. These draconian exclusive contracts give Haymon the sole discretion to choose who will be the boxer's promoter. And, to this end, Haymon has told numerous people, including Richard Schaefer and Eric Gomez, that he will not allow any of his fighters to sign long term promotional agreement with any truly competitive promoter. No other boxing manager obtains the extraordinary

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  rights the Haymon Defendants demand and receive from Championship-Caliber

2  Boxers.

3       20.    As alleged hereinbelow, the Haymon Defendants have acquired

4  control of an overwhelming share of boxing by Championship-Caliber Boxers on

5  network television in the United States; and, with rare exceptions, only such boxers

6  managed by Haymon are permitted to fight in Haymon's network television

7  productions.  These and other factors give the Haymon Defendants enormous

8  market power in the market for managing Championship-Caliber Boxers.

9                              **Promoters**

10      21.    Promoters have a fundamentally different role than managers.  The Ali

11 Act defines "promoter" as "the person primarily responsible for organizing,

12 promoting, and producing a professional boxing match."  15 U.S.C. § 6301(9).

13 Unlike managers, the function of a boxing promoter, including those promoting the

14 bouts of Championship-Caliber Boxers, is not to represent or advise boxers.

15 Through the boxers' managers, the promoters enter into required contracts with

16 boxers for the boxers to participate in one or more bouts in return for negotiated

17 compensation paid by the promoter.  In negotiating such contracts, promoters,

18 including promoters of Championship-Caliber Boxers, occupy a position adverse to

19 both boxers and their managers.  Promoters of Championship-Caliber Boxers make

20 money primarily from selling tickets, television and sponsorship rights and from

21 other promotional activities.  Such promoters assume the financial risk of a bout.

22 Their profit from a fight depends on their generating more money than they spend

23 in promoting the fight, including the money promised to boxers and their managers.

24      22.    The Ali Act imposes strict requirements on promoters to enhance

25 competition and protect boxers.  For example, the Act prohibits coercive contracts

26 between promoters and boxers, such as a term contract imposed on a boxer as a

27 condition to his participation in a bout.  The Act requires promoters to make

28 extensive financial disclosures to boxers as well as to state boxing commissions,

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

8

and imposes an obligation on promoters to notify the relevant state boxing commission before any professional boxing match is held. *Id.* §§ 6307b, 6307e, 6310. And of course, the Act prevents a promoter from acting as a manger of a boxer or even having "a direct or indirect financial interest in the management of a boxer." *Id.* § 6308(b)(1)(A).

23. States also regulate promoters. In California, for example, a promoter must demonstrate, among other things, that he possesses "financial responsibility" and the "necessary knowledge and experience to act as a promoter" in order to obtain a license. Calif. Code Regs. title 4, § 213. Additionally, the relationship between a boxer and promoter must be set out in a signed written contract on the form approved and signed by and filed with the State Athletic Commission, containing contract terms limited by the California Code of Regulations and enforced by the Commission. *Id.* § 222, et seq. Without such approved written contracts between the promoter and the boxer, there can be no lawful promotion of a professional boxing match.

24. The market for domestic promoters of Championship-Caliber Boxers has traditionally been competitive. But that is changing now that Haymon has moved ahead with his plan to monopolize the market. There are several major competitors vying to do business with top boxers, including Top Rank, Golden Boy Promotions, Main Events, K2, and Roc Nation. However, using the unlawful tactics alleged herein, the Haymon Defendants have obtained significant market power in the market for promoting Championship-Caliber Boxers. Golden Boy and other legitimate promoters have been categorically excluded from promoting all boxers, including the Championship-Caliber Boxers, in the Haymon Defendants' stable. Furthermore, none of the broadcast networks on which the Haymon Defendants air their fighters' bouts will broadcast events promoted by Golden Boy, Top Rank, Main Events, or other legitimate promoters. Among U.S.-based boxing promoters, the Haymon Defendants already control a majority share of Championship-Caliber

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Boxers. And, if Haymon can achieve his goal, the Haymon Defendants will become the only promoter in the market.

**The Reason for the Mandatory "Firewall" Between Managers and Promoters**

25. The Ali Act's "firewall" between boxing managers and promoters was intended to protect boxers, promote competition in the boxing business and remedy severe problems that had long plagued that business.

26. Because the amount of money promoters make is, in part, a function of how much they pay the boxers – that is, how big of a "purse" the promoter guarantees – promoters and boxers sit – or should sit – on opposite sides of the bargaining table. The promoter does not owe a fiduciary duty to the boxer. Rather, it is the job of the manager, including managers of Championship-Caliber Boxers, to represent the boxer against the promoter in negotiating promotional contracts or contracts for specific bouts, including bouts of Championship-Caliber Boxers. In order for any manager to effectively perform his duty as a fiduciary, he should not and cannot simultaneously sit on the other side of the table, acting as (or on behalf of) a promoter or even have any "direct or indirect financial interest" in a promoter.

27. Before the era of protective legislation, boxing managers often crossed the line between management and promotion, acting in both capacities. Promoters doubling as managers held extraordinary economic power, severely restricting competition in both management and promotion and frequently leading to disastrous results for boxers, who, all too often, ended up physically damaged and penniless.

28. In enacting the Ali Act, Congress intended to protect boxers, the boxing industry, and the public from abusive, exploitive, and anticompetitive conduct. By the Act, Congress also sought to promote fair and open competition in the boxing industry. ***The stated purpose of the Act was to "reform unfair and anticompetitive practices in the professional boxing industry*.**" Pub. L. No. 106-

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

210, 114 Stat. 321 (2000). Those very "unfair and anticompetitive practices" are the subject of this action.

29.     Of course, the deleterious and anti-competitive effect of a manager, including the manager of Championship-Caliber Boxers, also functioning as a promoter is compounded if the manager, while falsely claiming that he is not a promoter, refuses to allow the boxers he manages to contract with legitimate promoters of their choice. As alleged hereinbelow, this was and is the consistent practice of the Haymon Defendants. The Senate Report specifically condemned exclusive long-term contracts, such as those of the Haymon Defendants, that restrict boxers' ability to choose a promoter, stating that "*athletes would be better served, as would open competition in the sport, if boxers were free to contract with those promoters they personally choose.*" S. Rpt. No. 106-83, at 7–8 (June 21, 1999) (emphasis added). In enhancing fair competition, the Ali Act benefits not only professional boxers, but managers, promoters and everyone with a stake in the boxing business, as well as the public at large.

## THE RELEVANT MARKET AND MARKET POWER

30.     Defendants' illegal and predatory conduct described hereinbelow significantly impacts the two relevant markets – the market for managing Championship-Caliber Boxers, and the market for promoting the bouts of Championship-Caliber Boxers.

### Championship-Caliber Boxers

31.     The precise scope of these two relevant markets turns on the definition of Championship-Caliber Boxers. As previously alleged, a "Championship-Caliber Boxer" is a professional boxer who, within the past three years, has demonstrated through such quantitative factors as purse size, television rights, viewership, ticket revenue, and other objective criteria, that he belongs to "the 'cream' of the boxing business." *Int'l Boxing Club*, *supra*, 358 U.S. at 252.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

32.     Determining more precise contours of the relevant market – and, therefore, the Defendants' power within that market – can involve a complicated economic analysis, including such concepts as cross-elasticity of demand, and measuring the effect of small, but significant nontransitory increases in price. Accordingly, the more precise market definition and analysis of market power will depend on economic experts, and can be "pled with specificity" when fact and expert discovery have taken place.  See, e.g., *Newcal Indus., Inc. v. IKON Office Solution*, 513 F.3d 1038, 1044–45 (9th Cir. 2008).

33.     Nonetheless, Plaintiffs have undertaken a preliminary market analysis based upon data currently available.  In order to conduct this analysis, Plaintiffs have looked to objective and quantifiable indicia of whether a boxer is of "Championship-Caliber"—such as purse sizes, television appearances, rankings, and boxing titles.

34.     Without the benefit of fact and expert discovery, Plaintiffs do not yet have sufficiently comprehensive data to make **exact** judgments about which criteria are most "economically significant," and how those criteria should be weighed so as to "correspond to the commercial realities of the industry." *Brown Shoe Co. v. United States*, 370 U.S. 294, 336–37 (1962) (internal quotation omitted).

35.     Nonetheless, Plaintiffs' pre-discovery analysis of the data currently available demonstrates that, even as the criteria for identifying Championship-Caliber Boxers are adjusted and assigned different thresholds, the Haymon Defendants invariably possess a dominant share of **both** relevant markets—the market for U.S.-based managers of Championship-Caliber Boxers, and the market for U.S.-based promoters of Championship-Caliber Boxers.  For example, plaintiffs' analysis indicates that U.S.-based managers manage over 100 Championship-Caliber Boxers, defining such boxers as those who currently ranked in the Top 10 by at least one sanctioning organization (WBA, WBC, WBO, and/or IBC) and who have appeared on English-language television in the U.S. since

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

January 2014. The number of Championship-Caliber Boxers managed in the U.S. is a relevant measure of market power of boxing managers, and using the foregoing definition, Haymon manages 56 percent of such boxers. Under this metric, Haymon's share of the market for U.S.-based managers of Championship-Caliber Boxers is 56 percent.

36. Plaintiffs' analysis also indicates that U.S.-based promoters promote the bouts of over 100 Championship-Caliber Boxers, where such boxers are defined as those currently ranked in the Top 10 by at least one sanctioning organization and who have appeared on English-language television in the U.S. since 2014. The number of boxers promoted is a relevant measure of the market power of boxing promoters, and Haymon promotes 52 percent of the U.S.-managed boxers defined by those criteria. Under this metric, Haymon's share of the market for U.S.-based promoters of Championship-Caliber Boxers is 52 percent.

37. As shown hereinbelow, The Haymon Defendants' share of both relevant markets is dramatically increasing, particularly with the efforts of those defendants to monopolize network broadcasting of the bouts of Championship-Caliber Boxers.

38. Haymon maintains a dominant and increasing share of the market for U.S.-based managers of Championship-Caliber Boxers and the market for U.S.-based promoters of Championship-Caliber Boxers under *several* alternative definitions of a Championship-Caliber Boxer. For example:

A. **Fighters ranked in the Top 10 by at least one sanctioning organization (WBA, WBC, WBO, and/or IBC) who have appeared on English-language television in the United States since 2014 (example provided above):**

   i. Haymon share of U.S. manager market: 56%

   ii. Haymon share of U.S. promoter market: 52%

B. **Fighters ranked in the Top 10 by at least one sanctioning organization (WBA, WBC, WBO, and/or IBC) who have appeared on English-language television in the United States in the year 2015:**

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

13

i.      Haymon share of U.S. manager market:  61%

ii.      Haymon share of U.S. promoter market:  56%

C.      **Fighters ranked in the Top 10 by at least one sanctioning organization (WBA, WBC, WBO, and/or IBC) who have earned at least $100,000 in a single fight:**

i.      Haymon share of U.S. manager market:  59%

ii.      Haymon share of U.S. promoter market:  52%

D.      **Fighters ranked in the Top 10 by at least one sanctioning organization (WBA, WBC, WBO, and/or IBC) who have earned at least $100,000 in a single fight *and* appeared on English-language television in the United States since 2014:**

i.      Haymon share of U.S. manager market:  59%

ii.      Haymon share of U.S. promoter market:  53%

E.      **Fighters ranked in the Top 10 by at least one sanctioning organization (WBA, WBC, WBO, and/or IBC) who have earned at least $100,000 in a single fight *and* appeared on English-language television in the United States in the year 2015:**

i.      Haymon share of U.S. manager market:  66%

ii.      Haymon share of U.S. promoter market:  60%

39.      These figures show that not only does the Haymon Defendants' share consistently exceed 50% in both relevant markets, it is rapidly increasing.  For example, under the metric used in D and E above, Haymon's share of the promotional market since 2014 was 53%, while in the year 2015 alone it has been 60%.  Measured in 2016, that share will be significantly greater.[1]

40.      As in most antitrust cases, developing a precise economic model for measuring the boundaries of the relevant markets and the Defendants' power within those markets will require fact and expert discovery.  But even without discovery, Plaintiffs have *already* identified numerous plausible, economically meaningful profiles for Championship-Caliber Boxers, which allows an estimate of the size of

---

[1]  If promoting the bouts of Championship-Caliber Boxers on U.S. network television is analyzed as a sub-market, given the Haymon Defendants' network time buys in 2015, their share of that sub-market would now exceed 80%.

14

each relevant market and the Defendants' market share and market power in each

market. The fact that the Haymon Defendants' shares of both relevant markets are

in excess of 50% across so many metrics and are increasing indicates that Plaintiffs'

preliminary finding of the Defendants' already established market power is robust,

a fact that will be further corroborated through fact and expert discovery. This level

of specificity far surpasses what is required prior to discovery.

**The Market for Managing Championship-Caliber Boxers**

41.    The "Product Market." In the United States boxing industry, there is a

distinct and defined market for managing Championship-Caliber Boxers. The

Supreme Court has recognized, for purposes of the Sherman Act, that, within the

professional boxing business, there are distinct tiers of boxers, and those separate

tiers correlate with separate and distinct markets. In *International Boxing Club of*

*New York, Inc., v. United States*, for example, the Court affirmed that the relevant

market in that case had properly been defined as "the promotion of *championship*

boxing contests in contrast to *all* professional boxing events." 358 U.S. 242, 249

(1959) (emphasis in original). The Court recognized that "the 'cream' of the

boxing business . . . is a sufficiently separate part of the trade or commerce to

constitute the relevant market for Sherman Act purposes." *Id*. at 252.

42.    Barriers to Entry. Thus, management services provided to

Championship-Caliber Boxers – "the 'cream' of the boxing business" – are

fundamentally different from, and therefore not interchangeable with, management

services provided to boxers in the lower tiers of the boxing business. There are also

many barriers to enter the market for managing Championship-Caliber Boxers in

the United States. The business issues of a Championship-Caliber Boxer are

inherently more complex than those of other professional boxers. The manager

charged with handling the business issues of a Championship-Caliber Boxer must

be skilled and experienced in many areas of business and even some areas of law.

Managing a Championship-Caliber Boxer who participates in pay-per-view

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ACT
VIOLATIONS AND UNFAIR COMPETITION

televised and richly sponsored bouts held in venues like the MGM Grand in Las
Vegas or Madison Square Garden, where the purse may range in the tens or even
hundreds of millions of dollars, requires knowledge and skills far beyond those
required in managing a boxer in untelevised bouts at minor venues, where the purse
may only be in the thousands or even hundreds. The necessary business and legal
acumen also makes it difficult, if not impossible, for a Championship-Caliber
Boxer to serve effectively as his own manager or for most people in various aspects
of the boxing business to become the managers of Championship-Caliber Boxers,
so that the ability to enter into that market is extremely limited. Moreover, the
Haymon Defendants' use of exorbitant signing bonuses to lure Championship-
Caliber Boxers into their stable also increases the capital requirements that potential
new entrants would have to incur in order to compete against the Haymon
Defendants.

43.     And, as previously noted, boxing managers must be professionally
licensed in many states, including California and Nevada. In California, licensure
requires that the applicant take and pass a written exam. In order to effectively
represent Championship-Caliber Boxers, a manager must possess deep knowledge
and experience in both the boxing industry and many areas of business and even
law. Moreover, the use of long-term exclusive contracts by established managers
of Championship-Caliber Boxers – especially the Haymon Defendants, whose
contracts last for five or more years – makes it extremely difficult, if not
impossible, for potential new entrants to obtain Championship-Caliber Boxers as
clients.

44.     Because of the unique nature of the professional boxing industry,
people and firms that represent other types of professional athletes, like baseball
players or football players, cannot be – and, as a matter of practice, are not – a
substitute for the manager of Championship-Caliber Boxers. Unlike other
professional sports, there are no professional leagues; rather, promoters and

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ACT
VIOLATIONS AND UNFAIR COMPETITION

"matchmakers" arrange bouts on an individualized basis.  In order for the boxers to get paid, boxing managers have to negotiate with boxing promoters – a role for which there are no clear analogies in other professional sports.  Moreover, boxing is closely regulated by state and federal laws and regulations that reflect and respond to the extraordinary nature of boxing.  Simply put, boxing managers operate in a wholly different market from agents who represent other professional athletes.

45.  Managers, such as the Haymon Defendants, with sizeable market power can extract more favorable terms from Championship-Caliber Boxers with little concern that the boxers will choose not to sign.  Accordingly, there is low cross-elasticity of demand between the services of U.S.-based managers of Championship-Caliber Boxers.

46.  Because of these market characteristics, a small but significant non-transitory increase in a manager's compensation by a hypothetical monopolist would not induce significant substitution by customers (in this case, Championship-Caliber Boxers) to managers from outside the market.

47.  The Geographic Market.  The relevant geographic market for managers of Championship-Caliber Boxers is the United States.  Although there are some foreign-based managers, none have gained a significant number of such boxers to serve as a close substitute for the U.S.-based managers.

**The Market for Promoting the Bouts of Championship-Caliber Boxers**

48.  The "Product Market."  In the United States boxing business, there is also a distinct market for promoting the bouts of Championship-Caliber Boxers.  As indicated above, the Supreme Court has already acknowledged that promoting the bouts of top tier boxers is a separate and distinct market from that of promoting the bouts of "all boxers."  *International Boxing Club of New York, Inc. v. United States*, *supra*, 358 U.S. at 249.

49.  Barriers to Entry.  Promoting a boxing match involving a Championship-Caliber Boxer in the United States, is fundamentally different from

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

promoting matches in the lower strata of boxing.  There are many barriers to entry into the market for promoting the U.S. bouts of Championship-Caliber Boxers.  In order to effectively promote a large-scale, highly visible boxing match involving Championship-Caliber Boxers in the United States, a promoter must have sufficient financial resources to shoulder essential expenditures and obligations, including those required to acquire an appropriate venue, attract major sponsors and advertisers, contract with innumerable outside vendors, and guarantee a sizeable "purse" to the boxers and their managers – which may be in the tens of millions of dollars.  Planning and negotiating each of these highly complex arrangements and, perhaps most importantly, the television broadcast of the bouts, whether "free" or pay-per-view, requires extensive, often arcane knowledge of multiple businesses and even legal principles applicable to those businesses, as well as having useful connections in each business area.  A promoter who operates in a lower stratum of the industry simply cannot accomplish what the promoter of a Championship-Caliber Boxer can.  For this reason, promoters of lower-tier boxers are not interchangeable with promoters of Championship-Caliber Boxers in the United States and can rarely become promoters of such elite boxers in this country.

50.     And, while all promoters must be professionally licensed and comply with extensive laws and regulations, only those with significant financial resources, deep industry knowledge, competent in dealing with sophisticated business and legal issues and far-reaching business contacts and acumen can promote a high-profile boxing match for Championship-Caliber Boxers in the United States – and shoulder the sizeable financial risk associated with each such promotion.

51.     Moreover, the statutory "firewall" separating managers from promoters prevents many industry insiders – at least the law-abiding ones – from engaging in such promotion.  These inherent barriers to entry are exacerbated by the Haymon Defendants' long-term "tie out" contracts, which effectively prevent numerous Championship-Caliber Boxers from contracting with legitimate

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    promoters of their choice and the Haymon Defendants' long-term exclusive deal

2    with broadcasters, which categorically block would-be promoters of Championship-

3    Caliber Boxers from accessing necessary distribution channels.

4         52.    Moreover, nothing in the world of professional sports even remotely

5    compares to the unique business of promoting the bouts of Championship-Caliber

6    Boxers.  A professional baseball or tennis player, for example, does not directly

7    contract with a third party to organize, sell tickets for, televise, and otherwise

8    promote his or her games or matches.  Rather, these activities are handled by an

9    overarching league or governing organization, such as Major League Baseball or

10   the Association of Tennis Professionals.  Unlike the situation in other sports, there

11   are no close substitutes for licensed promoters of Championship-Caliber Boxers.

12        53.    Because of the Haymon Defendants' monopolistic practices, existing

13   competitors in the market for domestic promoters of Championship-Caliber Boxers

14   lack the ability to meaningfully increase their "output" in the short run.  In order to

15   meaningfully expand one's output, a domestic promoter of Championship-Caliber

16   Boxers would need, at minimum, (i) access to additional Championship-Caliber

17   Boxers; (ii) access to suitable opponents for any Championship-Caliber Boxers

18   under contract; and (iii) access to major television distribution channels.  The

19   Haymon Defendants' market power, improper tying agreements and illegal conduct

20   has severely restricted legitimate promoters' access to each of these essential facets.

21        A.    Access to Additional Championship-Caliber Boxers: There are

22   only so many Championship-Caliber Boxers at a given time. The Haymon

23   Defendants have induced a dominant share of those fighters to enter long-term

24   exclusive contracts that prevent Golden Boy and other incumbent promoters from

25   signing those boxers. The Haymon Defendants have also hindered incumbent

26   promoters' ability to develop new Championship-Caliber Boxers in the long term.

27   Having locked up nearly all television outlets for boxing, the Haymon Defendants

28   have almost without exception, denied undercard spots on their television programs

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ACT
VIOLATIONS AND UNFAIR COMPETITION

to other promoters' up-and-coming boxers. This exclusion denies these boxers the television exposure and experience they need to grow into Championship-Caliber Boxers.

B. Access to Suitable Opponents: The Haymon Defendants have repeatedly blocked rival promoters from arranging matches for their fighters against Haymon-contracted Championship-Caliber Boxers.

C. Access to Major Television Distribution Channels: The Haymon Defendants have also tied up virtually all of the major sports broadcasters in exclusive contracts, which deprive incumbent promoters of the ability to secure adequate airtime for their fighters' bouts.

54. Because of these market characteristics, including the high barriers to entry, a small but significant non-transitory increase in price by a hypothetical monopolist would not induce significant substitution by customers to promoters from outside the market. As Haymon continues to increase his already extensive power in this market, he will be able to charge broadcasters, sponsors, and fans more—and pay boxers less—without fear that they will resort to the services of promoters in other markets. Because of this, there is low cross-elasticity of demand between the services of U.S.-based promoters of Championship-Caliber Boxers.

55. The Geographic Market. The relevant geographic market for promoters of Championship-Caliber Boxers is the United States.

**The Defendants' Market Power**

56. The Haymon Defendants already possess vast market power and unprecedented dominance in both relevant markets: the market for management of Championship-Caliber Boxers in the United States and the market for domestic promoters of Championship-Caliber Boxers. The Haymon Defendants currently manage many dozens of boxers in the relevant market. No other boxing manager represents more than a handful of such boxers or obtains the sweeping rights demanded of boxers by the Haymon Defendants. Similarly, the Haymon

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED COMPLAINT FOR SHERMAN ACT VIOLATIONS, UNFAIR PRACTICES ACT VIOLATIONS AND UNFAIR COMPETITION

Defendants already possess dominant power in the market for promoting the bouts of Championship-Caliber Boxers in the United States. Here again, while Plaintiffs do not yet have access to precise figures, which will be ascertained in discovery, as alleged hereinabove (see pp. 31 to 40 supra), the Haymon Defendants' present share of that secondary relevant market is greater than 50% and is rapidly increasing, while every other promoter in the U.S. has a far lower percentage of that market.

## THE DEFENDANTS' ILLEGAL, PREDATORY, AND ANTICOMPETITIVE CONDUCT

57. Before the events on which this action is based, the Haymon Defendants sought to diminish competition in the business of promoting the fights of Championship-Caliber Boxers by acquiring Golden Boy and eliminating De La Hoya as a competitor. To that end, the Haymon Defendants, acting surreptitiously through a "straw man" arranged by Caldwell, sought to acquire 100% of the equity interest in the ultimate parent of Golden Boy, but conditioned their offer on obtaining a highly onerous non-competition agreement from De La Hoya. The involvement of the Haymon Defendants in this purchase was concealed, presumably because, as boxing managers, their assuming control of a major promoter would violate the law. The proposed acquisition was not completed, because De La Hoya refused to accept the onerous, anti-competitive restrictions on his boxing related activities ostensibly demanded by the proposed buyer, but actually demanded by the Haymon Defendants.

58. Failing to acquire Golden Boy, the Haymon Defendants formed the specific intention to drive them and all legitimate promoters from the market for promoting the bouts of Championship-Caliber Boxers in the United States and to monopolize that market. Managing more than 50% of those Championship-Caliber Boxers has already given the Haymon Defendants vast market power and a dominant share of the market for managing such boxers. Now, the Haymon

21

SECOND AMENDED COMPLAINT FOR SHERMAN ACT VIOLATIONS, UNFAIR PRACTICES ACT VIOLATIONS AND UNFAIR COMPETITION

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Defendants are actively seeking to leverage that market power and dominant share into a monopoly of the different market for promoting bouts of Championship-Caliber Boxers in the United States, doing so by means of illegal, predatory and anti-competitive acts during the Covered Period specifically intended by the Haymon Defendants to eliminate the competition of plaintiffs and all other competition in the latter market and to monopolize that market.

59. <u>Exclusionary Tactics</u>. While falsely claiming they are not promoters (which is precluded by law), the Haymon Defendants have prevented, and are currently preventing, the numerous Championship-Caliber Boxers they manage from signing essential promotional contracts with Golden Boy or with any other legitimate promoter – even though such contracts are required by law (and common sense) in order to promote any professional bout. None of the Championship-Caliber Boxers managed by the Haymon Defendants are permitted by those defendants to sign promotional contracts with Golden Boy or any other legitimate promoter; and, because of the Haymon Defendants' exclusionary scheme, no U.S. bout of the numerous Championship-Caliber Boxers managed by the Haymon Defendants has been promoted by Golden Boy since January 1, 2015.

60. <u>"Tie Out" Agreements</u>. The management agreements used by the Haymon Defendants – which Haymon falsely characterizes as "advisor" contracts – contain express restrictions on the boxer's right to contract with a legitimate promoter. The contracts explicitly grant the Haymon Defendants – usually either Alan Haymon Development Inc. or Haymon Sports, LLC – the "***sole and exclusive*** right to render services on behalf of ATHLETE in connection with ATHLETE's participation in professional boxing contests or exhibitions and in connection with ATHLETE's participation in entertainment performances, personal appearances and endorsements and/or sponsorship opportunities arising out of or related in any way to ATHLETE's boxing career" (emphasis added). As if to further drive home

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

22

the point that Haymon controls *all* aspects of the boxer's career, including

promotion, these contracts additionally provide as follows:

> C. During the Term of this Agreement, ATHLETE agrees to render services solely and exclusively for ADVISOR and agrees that he will not take part in or negotiate for any professional boxing contests whatsoever without first obtaining the written approval of ADVISOR.

61.     The restriction that the Haymon Defendants place on the boxer's

choice of promoter is crafted as a purported "consent" or "sole discretion" clause—

prohibiting each boxer from entering into any agreement with any promoter without

the Haymon Defendants' express prior consent, and vesting the Haymon

Defendants with "sole discretion" over promotional agreements. These agreements

contain provisions such as the following:

> (ii) <u>Fighter Actions</u>. From and after the Effective Date and continuing for the duration of the Term, Fighter shall not (directly or indirectly) enter into any agreement or arrangement (written or verbal), or grant any authority or power, relating to any Boxing Activities, without the prior written consent of Advisor, subject to applicable law.

> (iii) Promotional Agreements. If during the Term hereof, Fighter desires to enter into any promotional agreement or bout agreement to which Fighter is not then bound, selection of the promoter shall be at the sole discretion of the Advisor. As a further restriction on the boxers' promotional rights, these agreements also grant Haymon the authority to "publicize and promote the talents of and abilities of Fighter through various forms of media" (emphasis added).

62.     Under these provisions of the Haymon Defendnats' managerial

contracts, their control over Championship-Caliber Boxers' promotional rights is

protected three times over. First, boxers are prohibited from freely "enter[ing] into

any agreement" relating to "Boxing Activities" without Haymon's own prior

written consent.  Second, the contract vests in the Haymon Defendants the "sole

discretion" to "enter into any promotional agreement."  On its face, this provision

dispossesses the boxer of his innate right to choose a promoter—a right the Ali Act

specifically seeks to protect—and transfers it to the Haymon Defendants. Third, the

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

contract specifically authorizes the Haymon Defendants to "publicize and promote" the boxer.

63.    These various contractual provisions function as exclusionary "tie outs," which prevent the Haymon Defendants' Championship-Caliber Boxers from contracting with Golden Boy or any other legitimate promoter. Improper "tie outs" may be either express or established through a course of conduct. Here they are both. The Haymon Defendants expressly require boxers to turn over all control over their promotional rights. As established by a lengthy course of conduct, these agreements actually function as unlawful "tie outs" with respect to Golden Boy and other legitimate promoters. Since January 1, 2015, Haymon has not consented to, and will not consent to, any of his stable of Championship-Caliber Boxers entering into promotional contracts with Golden Boy or other legitimate competitors.

64.    Accordingly, in practice, the Haymon Defendants' managerial (or advisory) contracts preclude the Championship-Caliber Boxers in Haymon's stable from entering into promotional contracts with Golden Boy or any other legitimate promoter. The Haymon Defendants exercise and exploit their contractual rights with their Championship-Caliber Boxers to prevent those boxers from signing with Golden Boy or other competitor promoters. Simply put, if Championship-Caliber Boxers want or need the management services of the Haymon Defendants (the "tying service"), they are forced to accept and rely on the illegal, exclusive promotional services of the Haymon Defendants (the "tied service") and reject the promotional services of Golden Boy or any other legitimate promoter (the "tied out" service).

65.    By leveraging their substantial market power and dominant position as managers of Championship-Caliber Boxers to preclude all of such boxers they manage from freely contracting with Golden Boy or other legitimate promoters of their choice, the Haymon Defendants have excluded and are currently excluding Golden Boy and other legitimate, licensed promoters from accessing and promoting

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

over 50% of Championship-Caliber Boxers in the United States, significantly

harming competition in the market for promoting such boxers, causing Golden Boy

severe financial harm, significantly reducing competition and allowing the Haymon

Defendants to act illegally as both the manager and unlicensed promoter of

Championship-Caliber Boxers.  Merely by way of example, Golden Boy has

repeatedly sought, but been denied, promotional contracts with numerous Haymon-

contracted boxers, including:  Antonio Tarver; Shawn Porter; Gary Russell; Daquan

Arnett; Errol Spence; Robert Easter Jr.; Jamel Herring; Dominic Wade; Daniel

Jacobs; Jermall Charlo; Michael Hunter; Prichard Colon; Marcus Browne; Terrell

Gausha; Rau'shee Warren; Dominic Braezeale; John Molina; Beibut Shumenov;

Justin DeLoach; Andre Direll; David Grayton; Thomas Williams; and Julian

Williams.  The reason given for the refusal to contract with Golden Boy is

consistent – Haymon won't allow it.

66.     The same is true of Top Rank and other legitimate promoters.  Top

Rank, for example, has attempted to sign the following Haymon fighters only to be

refused by Haymon:  Deontay Wilder, Keith Thurman, Marcos Maidana, Adrien

Broner, Lamont Peterson, Abner Mares and Errol Spence.

67.     Because the Haymon Defendants possess immense market power in

the market for managing Championship-Caliber Boxers, the effect of this "tie out"

arrangement on the market for promoting Championship-Caliber Boxers in the

United States is substantial, resulting in many millions of dollars of lost revenue to

Golden Boy and substantial loss of revenue to other legitimately licensed

promoters, as well as severely restricting competition in the market for promoting

the bouts of such boxers.

68.     <u>Preventing Access to Essential Elements</u>.  In addition to forcing the

Championship-Caliber Boxers they manage to refuse to deal with Golden Boy and

other legitimate promoters, the Haymon Defendants, as alleged herein, are currently

seeking to exclude such promoters from every facet of the boxing business essential

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

to success in the business of promoting the fights of Championship-Caliber Boxers in the United States.

69.   Illegal Television Promotion.  For such boxers at the top of their profession, national television broadcasts of their bouts are a critical and essential component of their careers.  As a part of their widespread and illegal activities as unlicensed promoters of Championship-Caliber Boxers, the Haymon Defendants, advised, aided and abetted by Caldwell and using hundreds of millions of dollars supplied by Waddell, have, during the Covered Period, purchased air time on almost every major television network in the U.S. and are now using that owned and controlled network time for the illegal promotion of nationally televised boxing matches featuring the Championship-Caliber Boxers they manage.  Numerous such costly televised matches have already been promoted by the Haymon Defendants during the Covered Period, and they intend to make such arrangements with, and promote such bouts on, every major U.S. network.  The presentation of numerous such bouts on network television, during the Covered Period, on air time purchased and owned by such defendants themselves, is patently an illegal act of promotion by a boxing manager contrary to both federal and state law.  Such boxing shows promoted by the Haymon Defendants are, of course, broadcast to and widely viewed in California.

70.   But the Haymon Defendants' conduct in promoting network television broadcasts goes beyond repeated violations of the Ali Act and such state laws. Reversing the ordinary flow of money from the network to the promoter, the Haymon Defendants are currently paying the networks very substantial sums to broadcast their bouts featuring Championship-Caliber Boxers, rather than having the networks pay the promoter and are paying all costs of such broadcasts and bouts, even providing the boxers' purses.  Such illegal television promotion results in deliberate and massive financial loss to the Haymon Defendants – temporarily.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

71.     So far, the Haymon Defendants have bought airtime for the fights they promote on over half a dozen major broadcasters. These buys are substantial and farreaching, with over 100 different show dates locked up with different broadcasters, leaving almost no room, dates, or opportunities for other promoters and other fighters, to their detriment and to the detriment of consumers. Specifically, Haymon has engaged in the following exclusionary time-buys:

A.     **NBC**:  On or around January 30, 2015, it was announced that NBC and Haymon Boxing had reached a multi-year agreement, under which the NBC and NBC Sports networks would air 40 live boxing shows promoted by the Haymon Defendants through the end of 2016.

B.     **CBS**: On or around February 17, 2015, it was announced that CBS and Haymon Sports had reached a multi-year agreement, under which CBS would air up to eight live fights promoted by the Haymon Defendants on network television in 2015 alone.  Haymon was and remains the sole provider of fights to CBS Sports.

C.     **ABC/ESPN**: On or around March 18, 2015, it was announced that ABC and ESPN had reached an agreement with Haymon Boxing to air fights promoted by the Haymon Defendants through July 2017.  The deal provided for 24 two-hour cards, two of which would air on ABC.  The remaining cards would air on ESPN, and would take the place of the long-running series Friday Night Fights. Haymon received an option for six additional cards. According to ESPN's own reporting, "Haymon also has to pay the fighter purses and the other expenses related to putting on an event."

D.     **Fox**: On or around August 4, 2015, it was announced that Fox had reached a multi-year deal with Haymon Sports, under which Fox Sports 1 would air 21 fight cards promoted by Haymon through June 2016.  Fox announced that the fights promoted by Haymon would be its "exclusive boxing program."  On

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED COMPLAINT FOR SHERMAN ACT VIOLATIONS, UNFAIR PRACTICES ACT VIOLATIONS AND UNFAIR COMPETITION

or around October 16, 2015, it was announced that the Fox network would also air three PBC cards in 2016.

  E. **Spike TV**:  On or around January 22, 2015, it was announced that Spike reached a multi-year agreement with Haymon Boxing to televise monthly fights promoted by Haymon on Friday evenings, beginning in March 2015. The agreement provided for at least 33 monthly shows through 2017.

  F. **Bounce TV**:  On or around March 2, 2015, it was announced that Bounce had reached an agreement with Al Haymon to air PBC The Next Round, which would feature monthly prospect oriented cards promoted by Haymon, beginning in July 2015.

  72. Other legitimate promoters cannot afford to incur the massive losses required to buy air time from the networks and to promote such network bouts, and would thus be excluded from most network television broadcasts of the bouts they promote, even if the networks were willing and able to contract with them.

  73. The Haymon Defendants are currently buying up such time on the major networks and illegally promoting such boxing matches of Championship-Caliber Boxers on network television as a device to preclude plaintiffs and other legitimate promoters of Championship-Caliber Boxers from doing so and to lure such boxers away from plaintiffs and such other promoters, so as to drive plaintiffs and such other competitors from the market for promoting Championship-Caliber Boxers in the United States and thus to further their attempts at monopolization of that market.  Indeed, as a direct result of the Haymon Defendants' time buy deal with Fox described above, Fox refused to renew a long-standing agreement with Golden Boy to air Golden Boy fights on Friday nights.  In this way, the Haymon Defendants unlawful conduct is severely harming competition in the market for promoting Championship-Caliber Boxers and has already proximately caused plaintiffs the loss of millions of dollars and has caused other legitimate promoters of Championship-Caliber Boxers the loss of substantial sums as well.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ACT
VIOLATIONS AND UNFAIR COMPETITION

74.     The Haymon Defendants have also violated federal and state laws during the Covered Period by requiring Championship-Caliber Boxers to sign "coercive contracts."  For example, in order to participate as a principal boxer in the televised bouts promoted by the Haymon Defendants, Championship-Caliber Boxers must sign multi-year contracts with the Haymon Defendants that exclude plaintiffs and other legitimate promoters, thereby further causing monetary harm to the Golden Boy Plaintiffs and other legitimate promoters and further injury to competition in the market for promoting Championship-Caliber Boxers.

75.     The Haymon Defendants are incurring temporary losses estimated in the hundreds of millions of dollars, in order to dominate, control and monopolize the promotion of boxing by Championship-Caliber Boxers on American network television, to exclude plaintiffs and other legitimate promoters from competing in that essential part of the business, and to further their ability to effect a monopoly of the entire business of promoting the bouts of such boxers.  Once they have achieved the monopoly position they seek in the market for promoting the bouts of Championship-Caliber Boxers in the United States, which will cause plaintiffs and other legitimate promoters even greater financial harm, defendants will exercise their monopolistic power in that market to reverse the financial arrangements, recoup their losses and reap massive profits, far in excess of their temporary losses, by paying less to boxers and charging supracompetitive prices to networks, sponsors and consumers.  As defendants themselves have put it, they are "turning the model completely upside down" and acting as "the irrational player for a while" in order to profit handsomely and monopolistically in the long run to the financial detriment of Golden Boy and other legitimate promoters, whom the Haymon Defendants intend to exclude from the market for promoting the bouts of Championship-Caliber Boxers.

76.     The high barriers to entry in the market for promoting the bouts of Championship-Caliber Boxers in the United States will tend to prevent new

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

entrants in that market that otherwise might lessen the impact of the Haymon Defendants' supracompetitive pricing and other monopolistic practices once their monopoly position is achieved.

77.     <u>Other Illegal Promotions</u>.  There can be little doubt that the Haymon Defendants have repeatedly functioned during the Covered Period and are continuing to function, regularly and illegally, as promoters of boxing matches, both on their television programs and otherwise.  The Haymon Defendants arrange and contract for the bouts, the arenas, the sponsors, and they arrange and contract for the critical television broadcasts of such bouts.  To the extent this was ever in doubt, several of Haymon's clients have posted purse checks on Instagram and other social media websites which are drawn on Haymon Boxing accounts.  Moreover, Haymon's clients repeatedly and correctly refer to him as their "promoter," as do most boxing journalists.

78.     In all of the foregoing situations, the Haymon Defendants, having, during the Covered Period, functioned illegally, and are currently functioning illegally, as the promoters of the bouts in which the Championship-Caliber Boxers they manage participate.  And, of course, the Haymon Defendants have much more than just a "direct or indirect financial interest in the promotion of" all such bouts, which, in itself, is illegal.

79.     All such conduct of the Haymon Defendants violates the Ali Act which was intended to reform "unfair and anticompetitive practices in the professional boxing industry" as well as state laws carrying out that policy.

80.     <u>Use of "Sham Promotions</u>."  With respect to some of the events they promote featuring Championship-Caliber Boxers, the Haymon Defendants are seeking to create the false impression that they are not really the promoters of such events by employing licensed, smaller promoters, controlled or dominated by them, to "front" for them, posing as the nominal promoters of such events for a fixed fee, while, in fact, the true promoters are the Haymon Defendants.  By such use of such

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

30

"sham" promoters, who, in effect, "rent" their promoters' licenses to Al Haymon, the Haymon Defendants are not only taking a "direct or indirect financial interest in the promotion of a boxer" in violation of federal and state law, they are, in every sense, the true entrepreneurs and promoters of such bouts, taking the profits, making the decisions, compensating the boxers and paying fixed fees to such sham "promoters," with whom they collude to "front" for them and who do not make the key promotional decisions and do not even have term contracts with the boxers they purport to promote.

81.     While Haymon's sham promoters may, in some instances, formally executed contracts with venues, sponsors or other stakeholders, they do not control, or even participate in, the negotiations of those contracts.  Rather, Haymon directs everything himself.  Haymon makes all the promotional decisions with respect to such matters as the broadcaster, ticket prices, venue, presentation and more. Moreover, for Haymon's PBC shows, the sham promoter is rarely, if ever, mentioned on any advertising or promotional materials.  Accordingly, Haymon is "the person primarily responsible for organizing, promoting and producing" the professional boxing matches involving his fighters.  15 U.S.C. § 6301(9).

82.     Predatory Arena Tactics.  Just as they are acting to "lock up" network air time for the bouts of Championship-Caliber Boxers in order to exclude plaintiffs and their other competitors from exhibiting such bouts on major networks, the Haymon Defendants have acted, during the Covered Period and are continuing to act, to "lock up" desirable dates for bouts featuring Championship-Caliber Boxers in major arenas, doing so, here again, to render Golden Boy and other legitimate promoters unable to arrange attractive and profitable bouts for their Championship-Caliber Boxers at such arenas, which, of course, harms competition and causes significant economic loss to Golden Boy and other legitimate promoters.  During the Covered Period, the Haymon Defendants have used fraudulent representations to "lock up" desirable dates for matches of Championship-Caliber Boxers at major

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

31

venues in order to block such bouts promoted by Golden Boy at such arenas on those critical dates. The Haymon Defendants, directly or through their "sham promoters," reserve such arenas for desirable dates, concealing that they have no real intention of staging such bouts at those arenas on those reserved dates. Once Golden Boy, forced by defendants' blocking tactics, contract to hold their bouts at other locations on those critical dates, the Haymon Defendants cancel their holds on the desirable arenas. For example, when Golden Boy sought, well in advance, to book the Stub Hub Center in Carson, California for the fight between Lucas Matthysse and Ruslan Provodnikov on April 19, 2015, they were told that all potential boxing dates in March and April, 2015 were on hold for the Haymon Defendants. Golden Boy was forced to book the fight at an arena in New York, only to discover later that the Haymon Defendants had subsequently cancelled their holds on the Stub Hub Center for the dates requested. This same thing happened again later in 2015 when Golden Boy tried to reserve dates for the Stub Hub Center and other venues for a July 2015 fight between Mauricio Herrera and Hank Lundy. And, this practice is not limited to Golden Boy. It has been widely reported by the boxing press and complained of by numerous legitimate promoters. The Haymon Defendants are currently continuing that fraudulent and illegal practice, resulting in substantial economic loss to the Golden Boy Plaintiffs and other legitimate promoters.

83.  <u>Other Predatory Conduct</u>.  During the Covered Period, the Haymon Defendants have attempted, by these and other unlawful means, to prevent Golden Boy and other legitimate promoters from arranging desirable matches featuring Championship-Caliber Boxers, so that, by such schemes, defendants can induce such boxers to sever their relationships with Golden Boy and other legitimate promoters, so that those promoters will be driven from the business, severely harming competition, allowing defendants to achieve a monopoly in the market for

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED COMPLAINT FOR SHERMAN ACT VIOLATIONS, UNFAIR PRACTICES ACT VIOLATIONS AND UNFAIR COMPETITION

1  managing Championship-Caliber Boxers and causing Golden Boy substantial

2  economic harm.

3      84.    Plaintiffs are informed and believe and, on that ground, allege that the

4  Haymon Defendants have also illegally enhanced their ability to promote boxing

5  matches by engaging, during the Covered Period, in other conduct unavailable to

6  law abiding promoters, such as conspiring with others to illegally "scalp" tickets to

7  matches featuring Championship-Caliber Boxers, in order to increase defendants'

8  revenue, and by failing to pay the taxes properly due in respect of such sales and

9  other income from such matches.  Such illegal conduct, shunned by legitimate law

10  abiding promoters, enhances the Haymon Defendants' ability to eliminate

11  competition in the market for promoting Championship-Caliber Boxers.  Similarly,

12  Golden Boy and other legitimate promoters of such boxers must comply with

13  extensive regulatory requirements at both the federal and state levels that place

14  rigorous limits and duties on such promoters and, in some instances, are expensive.

15  Under the Ali Act, for example, before receiving any proceeds of a bout, promoters

16  are required to prepare and make detailed written financial disclosures to boxers, as

17  well as to state boxing commissions.  Under California law, promoters must be

18  licensed, and all contracts of promoters must be submitted to, and approved by, the

19  State Athletic Commission, must be in writing and on a required form designated

20  by the Commission and must strictly conform to terms and restrictions specified by

21  regulation.

22      85.    During the Covered Period, the Haymon Defendants while functioning

23  as promoters of the bouts of Championship-Caliber Boxers, have not complied with

24  any of these laws and regulations, and they intend to continue their non-compliance

25  – creating another unfair advantage over Golden Boy and other legitimate

26  promoters and a disadvantage to Championship-Caliber Boxers, and ultimately the

27  public.  Avoiding the performance of applicable laws and regulations, designed to

28  protect boxers and the public, enhances the Haymon Defendants' ability to

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ACT
VIOLATIONS AND UNFAIR COMPETITION

eliminate competition and monopolize the market for promoting Championship-Caliber Boxers.

86. _Creating a Sham Sanctioning Body_. The Haymon Defendants are also planning violations of 15 U.S.C. § 6308(c) in that they intend to act illegally as a "sanctioning organization" to proclaim their own in-house "champions" who will be limited to the Championship-Caliber Boxers they manage. The Haymon Defendants are even preparing championship belts for their own "champions," while, at the same time, illegally receiving economic benefits from such boxers and their bouts, through acting as both their manager and promoter. Here again, creating these sham "champions" limited to their own clients violates the law, injures competition on the markets and significantly harms Golden Boy and other legitimate promoters.

87. By engaging in the illegal, predatory, and anticompetitive conduct alleged hereinabove, the Haymon Defendants are now leveraging their monopoly position in the primary relevant market for management of Championship-Caliber Boxers to undermine and eliminate competition in and monopolize the secondary relevant market for promoting the bouts of such boxers in which they already have significant market power, including elimination of Golden Boy as a competitor, to their critical economic detriment.

88. The ability of the Haymon Defendants to foreclose competition in that secondary relevant market for promoting Championship-Caliber Boxers is currently enhanced by a "lock in" effect of their management contracts. Due to (i) asymmetrical sophistication and bargaining power between the Haymon Defendants and even Championship-Caliber Boxers, (ii) the impracticality (if not impossibility) of such boxers assessing the long-term costs and effects of the Haymon Defendants' promoter "tie out" clauses excluding the Golden Boy Plaintiffs and other legitimate promoters from representing many of the Championship-Caliber Boxers, (iii) the high costs and undesirability of switching

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

34

from one manager to another, (iv) the lengthy term of the Haymon Defendants'
management contracts, and (v) the relative shortage of adequate substitutes for what
some Championship-Caliber Boxers perceive as the unique services of the Haymon
Defendants because their own television programs and the perceived ability to act
as both managers and promoters. Accordingly, Championship-Caliber Boxers, are
highly susceptible to being "locked in" to the Haymon Defendants' exclusionary
contracts, so that, once "locked in," they are contractually precluded from entering
into agreements with plaintiffs or other legitimate promoters. Under these
circumstances, the "lock out" effect not only strengthens the Haymon Defendants'
dominance and vast market power in the primary market for management of
Championship-Caliber Boxers, it significantly enhances their market power in and
ability to monopolize the secondary market for promotion of such boxers.

## ANTICOMPETITIVE EFFECTS AND DAMAGES

89.     In connection with the unlawful conduct of the Haymon Defendants
alleged hereinabove, monies, contracts, bills, and other forms of business
communication and transactions are transmitted in a continuous and uninterrupted
flow across state lines in the United States. Defendants have used and are
continuing to use various devices to carry out the illegal anticompetitive and
predatory acts alleged herein, including the United States mail, interstate travel, and
interstate telephone commerce. Defendants' activities are within the flow of, and
have substantially affected, interstate commerce.

90.     As a direct and proximate result of the Haymon Defendants' unlawful,
anticompetitive and predatory actions alleged hereinabove, competition in the
relevant markets has, during the Covered Period, been greatly diminished, and, if
the Haymon Defendants are allowed to continue, such competition will essentially
be eliminated. The Haymon Defendants' present conduct is severely harming
competition by reducing the ability of existing managers and promoters including
Golden Boy, to compete "on the merits" with the Haymon Defendants in either

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

35    SECOND AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ACT
VIOLATIONS AND UNFAIR COMPETITION

market.  The Haymon Defendants' conduct is also deterring entry into the relevant markets, and thereby greatly reducing, if not eliminating, the likelihood that rivals to the Haymon Defendants can emerge in the future.  By undermining competition in these markets, the Haymon Defendants have, during the Covered Period, affected, and are currently affecting, a substantial volume of commerce – and proximately harming boxers, Golden Boy and other legitimate promoters, as well as consumers, and, in addition, dramatically reducing and harming lawful competition.  If the Haymon Defendants' conduct is not enjoined, there is a dangerous probability that they will obtain the monopoly they seek in the market for promoting the bouts of Championship-Caliber Boxers and those injuries will continue and become far more egregious, including the total elimination of competition and severe financial harm to the Golden Boy Plaintiffs and other legitimate promoters.

91.  By ignoring the "firewall" between managers and promoters established by the Ali Act, the Haymon Defendants are essentially sitting on both sides of the bargaining table.  While purporting to act in their boxers' best interests as managers, the Haymon Defendants have, at the same time, functioned during the Covered Period, and are continuing to function, as promoters of their boxers' matches – thereby creating the very conflict of interest the Ali Act sought to remedy.  As a result, the numerous Championship-Caliber Boxers managed by the Haymon Defendants – who already comprise more than 50% of the Championship-Caliber Boxers in the United States – will, in the long run, earn less money and a lower share of the profits from their bouts, with defendants pocketing the difference, while the Golden Boy Plaintiffs and other legitimate promoters will be driven from that business.

92.  The predatory and anti-competitive conduct of the Haymon Defendants, as alleged herein, is now reducing and is calculated to eliminate all competition in the market for promoting Championship-Caliber Boxers, dramatically lessening the availability of such promotional services and eliminating

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

36

any choice among providers of such services, while, at the same time, permitting the Haymon Defendants ultimately to impose far less favorable terms on Championship-Caliber Boxers, television networks, arenas and sponsors, that could not be imposed if competition were allowed to continue, and allowing those defendants to charge far higher and supracompetitive prices to consumers.

93. The Haymon Defendants are currently exploiting their market power and dominance in the market for managing Championship-Caliber Boxers to exclude Golden Boy and all legitimate promoters from the different market for promoting such boxers. If this conduct continues unabated, first reducing and then ending legitimate competition, and the Haymon Defendants become the de facto sole promoter of Championship-Caliber Boxers, it will become increasingly difficult and even impossible for any such boxers who are not controlled by the Haymon Defendants to obtain the quality opponents, major arenas or network television exposure necessary to their careers. In order to salvage their careers, Championship-Caliber Boxers will have no choice but to sign and re-sign with the Haymon Defendants – as both managers and promoters. As the power and influence of the Haymon Defendants in both relevant markets grow, they will be able to exert ever more control over the entire boxing business, to pay boxers less and to retain more for themselves.

94. In addition, during the Covered Period, the Haymon Defendants have entered into "blocking" agreements that prevent boxers they control even from participating as sparring partners for boxers they do not control.

95. And boxers are hurt in still another way. Given the Haymon Defendants' dominance as managers of numerous Championship-Caliber Boxers and their growing dominance in promoting the bouts of such boxers, they are able to follow a policy of calculated discrimination among the boxers they manage and promote, deliberately favoring some over the others, making it clear that any boxer who does not strictly and happily conform to the dictates of Al Haymon will

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1     receive less favorable terms and assigned bouts by the Haymon Defendants that are

2     less desirable or even damaging to their careers.  If the competition is removed and

3     the Haymon Defendants become essentially the sole promoters of Championship-

4     Caliber Boxers, this discriminatory policy will make the careers and finances of

5     every such boxer wholly dependent on the interests and dictates of Al Haymon,

6     which will cause such boxers severe harm.

7         96.     The Haymon Defendants' scheme harms consumers as well.  The more

8     power the Haymon Defendants have in the relevant markets, the less variety

9     consumers will enjoy.  Their scheme will ensure that consumers see only Haymon

10     fights between Championship-Caliber Boxers, who will all be Haymon boxers.

11     Moreover, once the predatory tactics of the Haymon Defendants reach fruition,

12     consumers will have to pay more to see such bouts.  The Haymon Defendants

13     intend not only to recoup their predatory outlays currently being used to finance and

14     monopolize the business of promoting boxing matches, but also to reap a massive

15     profit on their investment at the expense of consumers by charging higher prices

16     uncontrolled by competition.

17         97.     Distributors and exhibitors of boxing content, including arenas and

18     broadcasters, as well as sponsors of bouts, all stand to lose.  As the Haymon

19     Defendants exclude more competitors from the market for promoting

20     Championship-Caliber Boxers, arenas and sponsors will be forced to deal

21     exclusively with the Haymon Defendants – giving those defendants

22     disproportionate bargaining power.  And once the Haymon Defendants are the only

23     show in town, it is not likely that they will pay broadcasters to air their content.

24     Not only will broadcasters be forced to pay the Haymon Defendants, rather than

25     vice versa, they will be forced to pay more than they ever would in a competitive

26     market.

27         98.     Golden Boy has already suffered, and are continuing to suffer,

28     substantial economic harm as a direct and proximate result of the Defendants'

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ACT
VIOLATIONS AND UNFAIR COMPETITION

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

illegal, predatory, and anticompetitive conduct. They have been unable to sign promotional contracts with Championship-Caliber Boxers managed by the Haymon Defendants, and have sharply diminished ability to put their Championship-Caliber Boxers on network television or provide them with bouts at top arenas on key dates, all of which has caused very substantial economic loss. Other legitimate promoters have been similarly harmed. But for the conduct of defendants alleged herein, the Championship-Caliber Boxers managed by the Haymon Defendants would be free to contract with legitimate boxing promoters, including Golden Boy; and such legitimate promoters would be able to compete on the merits, to sign Championship-Caliber Boxers, and to obtain network air time for their bouts as well as major arenas on desirable dates.

99.   Plaintiff Hopkins has also suffered, and continues to suffer, harm as a result of the Haymon Defendants' unlawful activites. Hopkins' options for opponents, venues and television outlets has been greatly diminished and will continue to be diminished if the Haymon Defendants are permitted to continue their illegal, predatory and anticompetitive conduct.

100.   The Defendants' anticompetitive schemes, carried out during the Covered Period, and currently being carried out, have already substantially harmed competition in the primary and secondary relevant markets. The cumulative anticompetitive effects of this scheme lack any redeeming value and far outweigh any ostensible procompetitive benefits that Defendants may allege.

101.   The Haymon Defendants and Caldwell have, during the Covered Period, engaged in, and are continuing to engage in, the illegal, predatory, and anticompetitive conduct alleged herein with the specific intent to maintain the Haymon Defendants' monopoly in the primary relevant market for management of Championship-Caliber Boxers in order to use that market power and dominance and those illegal, predatory and anticompetitive acts to obtain a monopoly in the secondary relevant market for promoting the bouts of such boxers, in which they

39

already have significant economic power.  If left unchecked, the Haymon

Defendants have a dangerous probability of achieving monopoly power in the latter

market.

### CLAIMS FOR RELIEF

### FIRST CLAIM

**(Attempted Monopolization in Violation of 15 U.S.C. § 2 –**

**Against All Defendants)**

102.   Plaintiffs incorporate each preceding and succeeding paragraph as

though fully set forth herein.

103.   During the Covered Period, defendants have engaged in, and are

continuing to engage in, the illegal, predatory and anticompetitive conduct alleged

hereinabove to leverage the Haymon Defendants' monopoly power in the market

for managing Championship-Caliber Boxers, with the specific intention of

obtaining a monopoly in the market for promoting the bouts of Championship-

Caliber Boxers, in violation of Section 2 of the Sherman Act.  15 U.S.C. § 2.  This

scheme includes, but is not limited to, the following unlawful, predatory and

anticompetitive conduct in which defendants are currently engaging:

        A.     violating the prohibition, under state and federal law, against

acting as both manager and promoter of Championship-Caliber Boxers, so as to

limit competition and gain an unfair advantage over legitimate promoters and

against a manager's even having a direct or indirect financial interest in the

promotion of such boxers;

        B.     entering into unlawful "tie out" agreements to limit competition

by preventing Championship-Caliber Boxers from contracting with Golden Boy or

with other legitimate promoters of their choice;

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

C.    surreptitiously operating in the promotion business through "sham" promoters designed to conceal their illegal, predatory and anticompetitive conduct;

D.    locking up Championship-Caliber Boxers, venues, and television networks in exclusive dealing arrangements that are intended to and do severely restrict competition;

E.    fraudulently blocking other promoters from scheduling bouts for Championship-Caliber Boxers at desired venues on favorable dates so as to impair and destroy competition;

F.    paying broadcast companies for exclusive rights to television air time on most U.S. networks, so as to reduce and impair competition, and illegally producing and promoting television boxing matches featuring Championship-Caliber Boxers and excluding legitimate promoters from promoting such matches on network television so as to enhance the Haymon Defendants' unlawful presence in the promotion business and their ability to monopolize that business;

G.    violating numerous federal and state laws and regulations governing promoters of Championship-Caliber Boxers with which legitimate promoters must and do comply to their competitive disadvantage;

H.    misappropriating trade secrets of legitimate promoters and others, and soliciting the employees of Golden Boy to leave their employ; and

I.    other unlawful, anticompetitive, and predatory conduct.

104.   The Haymon Defendants are engaging in the illegal, predatory and anticompetitive conduct as alleged hereinabove with the specific intent to obtain for the Haymon Defendants a monopoly of the market for promoting the bouts of Championship-Caliber Boxers. This specific intent to monopolize is demonstrated by, *inter alia*, all of the following:

A.    Al Haymon's statements to numerous individuals, including Eric Gomez and Richard Schaefer, on multiple occasions, that under no

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED COMPLAINT FOR SHERMAN
ACT VIOLATIONS, UNFAIR PRACTICES ACT
VIOLATIONS AND UNFAIR COMPETITION

circumstances would he allow any of his boxers to contract with Golden Boy Rank or another legitimate promoter;

B.     Haymon has in fact never granted consent or exercised discretion under his managerial contracts (which he enters into on behalf of Haymon Sports and Haymon Development) so as to allow any Championship-Caliber Boxer in his stable to enter into a promotional contract during the Covered Period with Golden Boy, Top Rank, Main Events, or any other legitimate promoter;

C.     Haymon has made tens of millions of dollars in payments to major broadcasters, and is deliberately operating at a massive short-term loss—as an "irrational player"—so as to freeze out rival promoters; and

D.     acting on his own and through Haymon Sports and Haymon Boxing, Haymon has entered into long-term exclusive agreements with nearly all major sports broadcasters in the United States, including NBC, ABC/ESPN, CBS, Fox, Spike TV, and Bounce TV; and

E.     pursuant to contracts that Haymon entered into on behalf of Haymon Development and Haymon Sports, Haymon has refused to permit his Championship-Caliber Boxers to participate in certain bouts against non-Haymon boxers—to the detriment of Haymon's own clients—in order to freeze out rival promoters.

105.   The Haymon Defendants' dominance in the primary relevant market of managing Championship-Caliber Boxers is sufficient to substantially affect competition in the secondary relevant market of promoting the bouts of such boxers.  Their ability to use their power in the primary relevant market to foreclose competition in the secondary relevant market is enhanced by the susceptibility of Championship-Caliber Boxers to become "locked in."  Accordingly, There is a dangerous probability that, if left unchecked, the Haymon Defendants will obtain the monopoly in that market that they are seeking.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

17896-00617/2472952.2

42

SECOND AMENDED COMPLAINT FOR SHERMAN ACT VIOLATIONS, UNFAIR PRACTICES ACT VIOLATIONS AND UNFAIR COMPETITION

106.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered significant harm.  The full extent of Plaintiffs' damages cannot yet be fully measured, but on information and belief, Plaintiffs allege that their damages exceed $100 million.  Such damages should be trebled pursuant to 15 U.S.C. § 15.

## SECOND CLAIM

### (Unlawful "Tie Out" in Violation of 15 U.S.C. § 1 –
### Against All Defendants)

107.   Plaintiffs incorporate each preceding and succeeding paragraph as though fully set forth herein.

108.   Defendants have knowingly and intentionally engaged in an unlawful contract, combination, or conspiracy constituting a per se violation of Section 1 of the Sherman Act.  15 U.S.C. § 1.

109.   Aided and abetted by Ryan Caldwell, the Haymon Defendants have, during the Covered Period, entered into agreements to restrain trade in a substantial portion of the market for promoting bouts of Championship-Caliber Boxers.  As alleged hereinabove, while the Haymon Defendants falsely claim that they are not promoters, their contracts to manage Championship-Caliber Boxers contain exclusionary provisions that condition their professional services on the boxers' agreement not to contract with legitimate boxing promoters.  These agreements which have been used to prevent Championship-Caliber Boxers from contracting with the Golden Boy Plaintiffs and other legitimate promoters constitute unlawful "tying" or "tie out" arrangements (sometimes known as "negative tying"), and as such, constitute *per se* violations of the Sherman Act, which have severely damaged Plaintiffs.

110.   The Haymon Defendants' illegal agreements are creating a "tying" relationship between services sold in separately defined relevant markets:  the market for management of Championship-Caliber Boxers (i.e., the "tying" market),

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

and the market for promoting the bouts of Championship-Caliber Boxers (i.e., the "tied" market).

111. The Haymon Defendants are exercising their dominant power in the market for management of Championship-Caliber Boxers (i.e., the "tying" market). Their market power and dominance in the "tying" market is sufficient to substantially affect competition in the market for promotion of the bouts of Championship-Caliber Boxers (i.e., the "tied" market), in which they already have significant market power. The Haymon Defendants' ability to use their power in the "tying" market to foreclose competition in the "tied" market is enhanced by the susceptibility of Championship-Caliber Boxers to become "locked in."

112. As alleged in more detail above, the Haymon Defendants' imposition of unlawful "tying" or "tie out" provisions in their contracts with Championship-Caliber Boxers has in fact had a significant adverse effect on a substantial volume of commerce to the extent of many millions of dollars and is continuing to have that effect.

113. Even under the "rule of reason" (which does not apply to these *per se* violations), the Haymon Defendants' unlawful "tie out" agreements violate Section 1 of the Sherman Act. As alleged in detail above, the Haymon Defendants have knowingly and intentionally entered into exclusive management and television agreements which are designed to restrain competition in the boxing business. The Haymon Defendants have deliberately set out to limit legitimate promoters' access to Championship-Caliber Boxers, television broadcast airtime, desirable venues and other necessary components of successful boxing matches in order to stifle competition. These efforts have, in fact, harmed competition in the boxing promotion market and will continue to do so. These anticompetitive effects are far outweighed by any purported procompetitive benefits of the Haymon Defendants' agreements.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

44

SECOND AMENDED COMPLAINT FOR SHERMAN ACT VIOLATIONS, UNFAIR PRACTICES ACT VIOLATIONS AND UNFAIR COMPETITION

114. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered significant harm. The full extent of Plaintiffs' damages cannot yet be fully measured, but on information and belief, Plaintiffs allege that their damages exceed $100 million. Such damages should be trebled pursuant to 15 U.S.C. § 15.

## THIRD CLAIM

### (Injunctive Relief Under 15 U.S.C. § 26 -- Against All Defendants)

115. Plaintiffs incorporate each preceding and succeeding paragraph as though fully set forth herein.

116. As previously alleged, Defendants' illegal, tortious, and anticompetitive scheme violates Sections 1 and 2 of the Sherman Act.

117. As a direct and proximate result of Defendants' unlawful and anticompetitive conduct, Plaintiffs are being injured and damaged in their business and property.

118. Unless enjoined, Defendants' unlawful and anticompetitive conduct will continue and cause further injury to competition, and Plaintiffs will continue to suffer irreparable injury for which there is no adequate remedy at law.

119. Plaintiffs therefore seek equitable and injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, to correct for the anticompetitive effects caused by Defendants' unlawful and anticompetitive conduct, and other relief so as to assure that such conduct does not continue or reoccur in the future.

## FOURTH CLAIM

### (Violation of the California Unfair Practices Act
### (Cal. Bus. & Prof. Code §§ 17000 *et seq.*) – Against All Defendants)

120. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED COMPLAINT FOR SHERMAN ACT VIOLATIONS, UNFAIR PRACTICES ACT VIOLATIONS AND UNFAIR COMPETITION

121. All Defendants are persons engaged in business within the State of California.

122. As previously alleged, during the Covered Period, the Haymon Defendants have purchased, and continue to purchase, hundreds of millions of dollars worth of network airtime from over half a dozen leading broadcasters to televise and promote their own boxing matches featuring the Haymon Defendants' boxers. Ordinarily, television broadcasters pay for boxing broadcast rights – not the other way around.

123. As previously alleged, during the Covered Period, Ryan Caldwell colluded with and aided and abetted the Haymon Defendants in purchasing many millions of dollars worth of network airtime, using Waddell's investment of over $400 million; attending meetings with broadcasters; negotiating directly with broadcasters; exercising significant control over the day-to-day business activities of the Haymon Defendants; and/or actively participating in the planning, financing, and execution of broadcast events under Al Haymon's brand.

124. During the Covered Period, the Haymon Defendants have sold, and continue to sell, a product at less than the cost thereof, and/or have given away a product to the television broadcasters, as those terms are defined under California law. *See*, *e.g.*, Cal. Bus. & Prof. Code §§ 17024, 17026, 17043. The Haymon Defendants have taken these actions, and continue to take these actions, for the purpose of injuring competitors and/or destroying competition.

125. The Haymon Defendants have sold, and continue to sell, a product at less than the cost thereof, and/or have given away a product to the television broadcasters, as a "loss leader," as those terms are defined under California law. *See*, *e.g.*, Cal. Bus. & Prof. Code §§ 17030, 17044. The Haymon Defendants have taken, and are currently taking, these actions for the purpose of injuring competitors and/or destroying competition.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

46

SECOND AMENDED COMPLAINT FOR SHERMAN ACT VIOLATIONS, UNFAIR PRACTICES ACT VIOLATIONS AND UNFAIR COMPETITION

126.    In fact, the Haymon Defendants are literally paying broadcasters to take their product.  This conduct is even more predatory, and even more damaging, than traditional below-cost or "loss leader" selling.

127.    As a direct and proximate result of the Defendants' below-cost and "loss leader" selling, the Golden Boy Plaintiffs have suffered, and continue to suffer, an injurious effect in their business and property.

## FIFTH CLAIM

### (Unfair Competition – Against All Defendants)

128.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

129.    California Business and Professions Code § 17,200 et seq. defines as "unfair competition" any unlawful or fraudulent business practice.  As alleged hereinabove, the business practices of the Haymon Defendants violate numerous regulations and laws, are patently "unlawful" and thus "unfair competition."

### The Laws Violated

130.    The laws violated and being violated by the Haymon Defendants include the following:

        A.      The Muhammad Ali Boxing Reform Act 15 U.S.C. § 1631 et seq. (the "Ali Act") explicitly creates a "Firewall between promoters and managers" and provides, inter alia, that it is unlawful for "a manager" to have "a direct or indirect financial interest in the promotion of a boxer" or "to receive compensation or other benefits from a promoter."  15 U.S.C. § 6308(b)(1)(B).  In addition, Sections 6307e(a) and (b) require promoters to make financial disclosures with respect to each bout to the applicable State Athletic Commissions and to the boxers they promote, and preclude a promoter from receiving the proceeds of a bout without having complied with these requirements.  15 U.S.C. § 6309 makes it a federal crime to violate these requirements.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**B.** The California Code of Regulations, CCR Title 4 contains similar provisions. For example, CCR 396 provides it is unlawful for "any member, stockholder, director or officer [of a promoter]" to "act directly or indirectly as manager of a boxer." The CCRs contain other provisions regulating the conduct of boxing promoters and managers, by requiring promoters to be licensed as such and requiring that their contracts be in writing on prescribed and approved forms and meet specified standards.

**C.** Nevada law makes it illegal to act as a promoter without a license to so act. Nevada Revised Statute §§ 467.080, 467.104. The Nevada Administrative Code also prohibits a promoter from acting directly or indirectly as a manager or holding any financial interest in a boxer's management or earnings from boxing matches.

**D.** The Sherman Act, 15 U.S.C. §§ 1 and 2 make the conduct of the Haymon Defendants illegal, in the respects alleged hereinabove.

## The Defendants' Conduct Violates The Applicable Laws

131. The conduct of the Haymon Defendants alleged hereinabove, committed during the Covered Period, violates the Ali Act, and particularly 15 U.S.C. § 6308(b)(1)(A) and (B) and § 6307(e)(a) and (b), in that the Haymon Defendants are managers and not only have "a direct or indirect financial interest in the promotion of a boxer," but have actually functioned during the Covered Period, and are actually continuing to function, as both managers and unlicensed promoters, have, during the Covered Period, failed to provide, and are currently failing to provide, the boxers they promote or state boxing commissions with the financial disclosures required by the Ali Act and have unlawfully received, and are unlawfully receiving, the proceeds of numerous bouts without such compliance.

132. The conduct of the Haymon Defendants alleged hereinabove also violates Title 4, Sections 211(3), 213, 220, 221, 222, 230, 243 263 and 396 of the California Code of Regulations, as well as Nevada Revised Statute Sections

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED COMPLAINT FOR SHERMAN ACT VIOLATIONS, UNFAIR PRACTICES ACT VIOLATIONS AND UNFAIR COMPETITION

467.080 and 467.104 as well as the Nevada Administrative Code, in that the Haymon Defendants regularly and repeatedly function as both managers and promoters, and do so without being licensed as promoters and without the promotional contracts required by law, and in that the Haymon Defendants prevent the boxers they manage from signing contracts with any legitimate promoters, as the law requires.

133. By reason of the facts alleged hereinabove, the Haymon Defendants have, during the Covered Period, also violated and are continuing to violate Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, including violations during 2015.

134. Much of the unlawful conduct of the Haymon Defendants alleged hereinabove occurred in California, virtually all of that unlawful conduct was devised in and is managed in and emanates from California and has a significant impact in and on California and California consumers.

135. In addition, during the Covered Period, the Haymon Defendants have blocked the Golden Boy Plaintiffs from obtaining desirable venues for their bouts on desirable dates by fraudulently asserting their intention to promote bouts at those venues on those dates, when, in fact, they have no such intention.

136. The unlawful and fraudulent acts of the Haymon Defendants alleged hereinabove constitute fraudulent and unlawful business practices under federal and state law and are thus unfair competition as defined in California Business and Professions Code Section 17,200 et seq. If not enjoined, the Haymon Defendants will continue their fraudulent and unlawful acts of unfair competition.

### The Need For Equitable Relief

137. As a direct and proximate result of the illegal conduct and unfair competition of the Haymon Defendants, plaintiffs are entitled to restitution from defendants in a substantial sum. The full amount of that sum is difficult, if not impossible to compute or measure accurately, so that, if the Haymon Defendants

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

SECOND AMENDED COMPLAINT FOR SHERMAN ACT VIOLATIONS, UNFAIR PRACTICES ACT VIOLATIONS AND UNFAIR COMPETITION

1 are allowed to continue their illegal acts of unfair competition, plaintiffs will suffer
2 severe and irreparable harm for which they have no adequate remedy at law.

3 ### PRAYER FOR RELIEF

4 WHEREFORE, plaintiffs pray for judgment against defendants jointly and
5 severally as follows:

6 1. For an injunction, permanently and pending final judgment in this
7 case, precluding defendants and each of them, and their agents, employees and
8 representatives of each of them, from having any direct or indirect financial interest
9 in the promotion of bouts featuring boxers they manage, from acting as both boxing
10 managers and boxing promoters, from presenting, or participating in the
11 presentation of, boxing matches on television featuring such boxers, or from
12 arranging the arenas, sponsors and/or television broadcasts of boxing matches
13 featuring boxers defendants manage, from directing or otherwise causing or
14 inducing boxers not to sign contracts with the Golden Boy Plaintiffs or other
15 promoters, from attempting, in any way, to prevent plaintiffs from obtaining venues
16 or other essential facilities for the boxing matches plaintiffs promote, from raiding
17 the Golden Boy Plaintiffs' employees, from using the Golden Boy Plaintiffs' trade
18 secrets to lure business from them, and from attempting, in any other way, to
19 monopolize the business of promoting Championship-Caliber Boxers in the United
20 States, and from financing or otherwise aiding or abetting commission of any of the
21 acts so enjoined;

22 2. For damages in the sum of $100 million or such other sum as shall be
23 found;

24 3. That such damages be trebled pursuant to 15 U.S.C. § 15;

25 4. For restitution in such amount as shall be found;

26 5. For interest at the highest lawful rate; rate on all monetary awards;

27 6. For plaintiffs' reasonable attorneys' fees; and

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1         7.    For costs of suit and such other or further relief as the Court shall

2    deem just.

3

4    DATED: January 20, 2016       GREENBERG GLUSKER FIELDS
                                   CLAMAN & MACHTINGER LLP
5

6

7                             By: */s/ Bertram Fields*
                                       BERTRAM FIELDS (SBN 024199)
8                             Attorneys for Plaintiffs Golden Boy
                                       Promotions, LLC, Golden Boy
9                             Promotions, Inc. and Bernard Hopkins

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1

## **DEMAND FOR JURY TRIAL**

2          Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by

3   jury on all issues so triable.

4

5   DATED:  January 20, 2016          GREENBERG GLUSKER FIELDS
                                      CLAMAN & MACHTINGER LLP
6

7

8                                     By: */s/ Bertram Fields*
                                          BERTRAM FIELDS (SBN 024199)
9                                         Attorneys for Plaintiffs Golden Boy
                                          Promotions, LLC, Golden Boy
10                                        Promotions, Inc. and Bernard Hopkins

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590