# EXHIBIT D

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDEN BOY PROMOTIONS, LLC, GOLDEN BOY PROMOTIONS, INC. and BERNARD HOPKINS,<br><br>Plaintiffs,<br><br>v.<br><br>ALAN HAYMON, ALAN HAYMON DEVELOPMENT, INC., HAYMON HOLDINGS, LLC, HAYMON SPORTS, LLC, HAYMON BOXING MANAGEMENT, HAYMON BOXING LLC and RYAN CALDWELL,<br><br>Defendants. | Case 2:15-cv-03378 JFW (MRWx) |

# EXPERT REBUTTAL REPORT OF MICHAEL P. SMITH, PH.D.

September 27, 2016

HIGHLY CONFIDENTIAL

the scenes, essentially putting together major fights and handling the day to day business operations is Richard Schaefer."[29] Mr. Schaefer had what was reported to be a strong relationship with Floyd Mayweather and shortly after Mr. Schaefer announced his resignation from Golden Boy, Mr. Mayweather announced he would no longer use Golden Boy to promote his fights, something Golden Boy had done since 2007.[30] It was observed, "If we subtract Richard Schaefer, Floyd Mayweather, Al Haymon and his staple of fighters from Golden Boy Promotions, that could potentially cause enormous issues….The potential for a huge loss in revenue is certainly there. Mayweather alone generates hundreds of millions of dollars."[31] Around the same time Mr. Schaefer announced his departure from Golden Boy, a number of other senior officers at Golden Boy also the left the firm. These include the firm's chief financial officer (Raul Gutierrez), chief marketing officer (Bruce Binkow) and chief operating officer (Armando Gaytan).[32] Given that the departures of Mr. Schaefer and other senior officers from Golden Boy are not part of the alleged anticompetitive Haymon conduct and yet would be expected to have a potentially significant impact on Golden Boy's financial performance, the impact of these departures should have been analyzed and incorporated into Mr. Deetz's damages analysis. However, he failed to do so.

25. Also occurring in late 2014 was the departure of key boxers from the group of boxers Golden Boy had historically promoted. Perhaps most significant of these was Mr. Mayweather, whose fights Golden Boy had promoted since 2007. As described above, Mr. Mayweather's decision no longer to use Golden Boy to promote future fight was reportedly tied to Mr. Schaefer's resignation from Golden Boy. The lost promotional relationship with Mr. Mayweather would certainly be expected to impact Golden Boy's income negatively based on the amount of income generated from his previous fights (*e.g.*, $4 million in income from the 2013 bout with Alvarez, per the Deetz Report). This is especially true given that Mr. Mayweather's decision meant that Golden Boy would not promote his fight with Manny Pacquiao in 2015. The Mayweather/Pacquiao fight set records for pay-per-view sales and

---

[29] Jackson (2014).
[30] Rafael (2014) and Jackson (2014).
[31] Jackson (2014).
[32] Rough Transcript of Deposition of Oscar De La Hoya, September 23, 2016, pp. 24-28.

generated a reported $500 million in revenue.[33] Mr. Deetz did not analyze the impact of Mr. Mayweather ending his relationship with Golden Boy on Golden Boy's financial performance in 2015 and 2016. This is especially relevant given that Golden Boy's promotion of two fights by Mr. Mayweather are included in the Golden Boy income for 2014 that Mr. Deetz uses as a forecast for future years. In fact, Golden Boy income associated with Mr. Mayweather's portion of his two fights accounts for roughly $2.2 million of the $8.8 million in 2014 Golden Boy income.[34] A similar situation occurred with Amir Khan, another top boxer promoted by Golden Boy. Upon expiration of his promotional agreement with Golden Boy at the end of 2014, he decided to become a "free agent" and used promoters other than Golden Boy to promote his May 2015 fight.[35]

26. Golden Boy also experienced the loss of exclusive promotional rights for approximately 20 boxers in early 2015. Specifically, under terms of a December 2014 settlement agreement between Golden Boy, Haymon and Mr. Schaefer, in January 2015 Haymon paid Golden Boy $10.5 million to terminate Golden Boy's exclusive promotional rights for approximately 18 boxers.[36] Also under terms of the settlement agreement, in February 2015 an additional four boxers terminated their promotional agreements with Golden Boy in exchange for payments to Golden Boy totaling $3.5 million.[37] Thus, Golden Boy lost the exclusive promotional rights to roughly 20 boxers in early 2015, which would as a matter of economics be expected to affect Golden Boy's revenue and income negatively in future years, all else equal. This is supported by the fact that Haymon and the individual boxers paid $14 million to terminate the exclusive promotional rights held by Golden Boy. While Mr. Deetz <u>assumes</u> that these terminations had no effect on Golden Boy's performance,[38] such an assumption makes no

---

[33] See, e.g., Isidore, C., "Mayweather-Pacquiao rakes in a record $500 million," cnn.com, May 12, 2015, available at http://money.cnn.com/2015/05/12/news/companies/mayweather-pacquiao-revenue/.
[34] DEETZ000002 and Deetz Report, Exh. 3 and 5. Golden Boy income associated with Mr. Mayweather's opponent in the two fights was just under $650,000.
[35] See, e.g., Thompson, B., "Amir Khan Clarifies That He Is Indeed a Free Agent: 'My Contract Is Over With Golden Boy'," fighthype.com, January 24, 2015, available at http://www.fighthype.com/news/article19161.html; boxrec.com (showing DiBella Entertainment and Star Boxing promoted Khan's fight on May 29, 2015).
[36] Settlement and Release Agreement, dated August 5, 2014 and executed December 19, 2014. GBP016201-24.
[37] Id.
[38] "Accordingly, for purposes of my damages analysis, I have assumed that this [termination of exclusive promotional rights] transaction did not negatively affect Golden Boy's ability to perform in 2015 and thereafter." Deetz Report, ¶49. An interesting implication of this highly implausible assumption by Mr. Deetz is that if it is incorrect it effectively allows Golden Boy to collect twice for the termination of the exclusive rights. This is

13

longer use Golden Boy to promote his fights, even though Golden Boy had promoted all of his fights since 2007.[47]

34. One way to control for the impact of Mr. Mayweather's decision within Mr. Deetz's methodology is to adjust Golden Boy's income during the before period (2014) to exclude the income Golden Boy earned from its promotion of the two Mayweather fights that year.[48] This makes economic sense since the "after" or claimed damages period (*i.e.*, after 2014) is a period when Golden Boy was not promoting Mayweather and this change is not due to the alleged anticompetitive conduct of Haymon. Therefore, the 2014 income Mr. Deetz uses to forecast for 2015 and future years should not include income from Golden Boy's promotion of Mr. Mayweather's fights. In 2014, this amounted to approximately $2.2 million in income from boxing operations according to Mr. Deetz.[49] Again, such an adjustment makes economic sense since, as described above, a properly implemented before and after damages methodology is premised on the assumption that the only difference between conditions under which the firm is operating in the before period versus the after period should be changes due to the alleged anticompetitive conduct. Mr. Mayweather's decision is not alleged to be due to Haymon anticompetitive conduct.

35. I have again replicated Mr. Deetz's damages analysis, now limiting it to Golden Boy's performance promoting championship caliber boxers and adjusting for the departure of Mr. Mayweather. Figure 4 below presents Golden Boy's income from boxing operations for championship caliber boxers, with the adjustment to remove the income Golden Boy earned from Mr. Mayweather's fights it promoted in 2014. This lowers but-for income in 2015 and 2016 given the lower base in 2014, following Mr. Deetz's methodology. Again, this makes economic sense since failing to remove income associated with promoting Mr. Mayweather in 2014 would result in but-for income in 2015 and 2016 that assumed Golden Boy would promote him in those years as well – which Golden Boy did not do. As the figure shows, now actual income in 2015 and 2016 is substantially above what Mr. Deetz's methodology

---

[47] Rafael (2014) and Jackson (2014).
[48] Mayweather vs. Maidana (May 3, 2014) and Mayweather vs. Maidana (September 13, 2014). DEETZ000002.
[49] DEETZ000002. I conservatively have not adjusted by the amount of income Golden Boy earned associated with Mr. Mayweather's opponent in the two fights, which amounted to nearly $650,000. I am only adjusting by the amount of income associated with Mr. Mayweather in these fights.

18

calculates as but-for income. This implies that accepting Mr. Deetz's damages methodology and assumptions, with corrections to focus on the promotion of championship caliber boxers and to control for Mr. Mayweather's departure, Golden Boy has not been damaged as a result of the alleged anticompetitive conduct.[50]

## Figure 4

**Golden Boy Promotions**
**Income from Boxing Operations for "Championship Caliber" Boxers**
**Adjusted to Remove Income from Mayweather Fights in 2014**

Note: Figures for 2016 annualized based on first six months.
Source: Deetz Report, Exh. 3 and 5, DEETZ000002.

## VI. CONCLUSION

36. Mr. Deetz fails to establish any causal connection between the specific alleged anticompetitive conduct of Haymon and what he purports to calculate as damages to Golden Boy. In addition, he fails to follow basic principles of the damages methodology he attempts

---

[50] I note that a finding of no damages is consistent with public statements made by Golden Boy and its co-founder and president, Oscar De La Hoya. For example, in an article summarizing Golden Boy's 2015 performance, Mr. De La Hoya is quoted as saying, "2015 was a spectacular year for Golden Boy Promotions but 2016 will be bigger and better in every way." The same article notes many accolades Golden Boy received that year, including "Promoter of the Year" awards from Sports Illustrated, Bleacher Report and ESPN.com. "Golden Boy Promotions Reflects on a Successful 2015," goldenboypromotions.com, January 11, 2016, available at https://www.goldenboypromotions.com/en/news-article/golden-boy-promotions-reflects-successful-2015.

19

HIGHLY CONFIDENTIAL

to use. As a result of these failures, Mr. Deetz's opinions are not based on a reasonable, accepted method. Correcting just some of the flaws in Mr. Deetz's analysis, and accepting *arguendo* the rest of Mr. Deetz's method and assumptions, produces results that show Golden Boy has not been damaged by the alleged anticompetitive conduct of Haymon. This demonstrates that Mr. Deetz's estimates of claimed damages are grossly overstated, unreliable and speculative.

Michael P. Smith

9-27-16
Date

20

HIGHLY CONFIDENTIAL