Exhibit 5

2

1                 UNITED STATES DISTRICT COURT

2               CENTRAL DISTRICT OF CALIFORNIA

3

4

5    GOLDEN BOY PROMOTIONS, LLC, )
     GOLDEN BOY PROMOTIONS, INC.,)
6    AND BERNARD HOPKINS,        )
                                 )
7               PLAINTIFFS,      )
                                 )
8        VS.                     ) CASE NO.
                                 ) 2:15-CV-03378
9    ALAN HAYMON, ALAN HAYMON    ) JFW (MRWX)
     DEVELOPMENT, INC., HAYMON   )
10   HOLDINGS, LLC, HAYMON       )
     SPORTS, LLC, HAYMON BOXING  )
11   MANAGEMENT, HAYMON BOXING,  )
     LLC, AND RYAN CALDWELL,     )
12                               )
                DEFENDANTS.      )
13   _____)

14

15

16

17           DEPOSITION OF GENE DEETZ, TAKEN ON

18           BEHALF OF THE DEFENDANTS, AT 865

19           SOUTH FIGUEROA STREET, TENTH FLOOR,

20           LOS ANGELES, CALIFORNIA, COMMENCING

21           AT 9:07 A.M., WEDNESDAY, OCTOBER 19,

22           2016, BEFORE TRACY M. FOX, CSR NUMBER

23           10449.

24

25

1              A.   THAT'S CORRECT.

2              Q.   AND THE ONE THAT YOU COMPLETED LAST

3    NIGHT?

4              A.   THAT'S CORRECT, YES.

5              Q.   SO, SIR, IN EXHIBIT 73, WHICH IS YOUR

6    REPORT, IS IT CORRECT THAT YOU PROVIDE A -- YOU

7    PROVIDE TESTIMONY ON WHAT YOU BELIEVE ARE THE

8    PLAINTIFFS' DAMAGES IN THIS CASE?

9              A.   I THINK THAT WOULD BE ONE WAY TO

10   SUMMARIZE IT.

11                THE -- THE REPORT'S GOT ALL OF THE --

12   THE PIECES IN IT, BUT IT DOES PROVIDE DAMAGES -- MY

13   OPINION ON DAMAGES IN THIS CASE, YES.

14             Q.   SO YOU PROVIDE YOUR ANALYSIS AND THEN

15   YOUR SUMMARY OF YOUR CONCLUSIONS AS TO WHAT ARE THE

16   DAMAGES FOR THE PLAINTIFFS IN THIS CASE?

17             A.   IT WOULD BE A SUMMARY OF MY ANALYSIS

18   AND THE SUMMARY OF THE DAMAGES.

19             Q.   OKAY.  AND IS IT CORRECT, SIR, THAT

20   THE ANALYSIS YOU PERFORM IS A BEFORE-AND-AFTER

21   LOST-PROFITS ANALYSIS?

22             A.   IT -- IT -- IT IS.  I GENERALLY REFER

23   TO IT AS "BUT-FOR" ANALYSIS BUT IT'S -- IT'S -- I

24   BELIEVE THOSE ARE THE -- THE EQUIVALENT.

25             Q.   AND THE -- THE CONCLUSIONS THAT YOU

1    REACH ABOUT THE DAMAGES THAT ARE SET FORTH IN YOUR

2    REPORT ARE LOST-PROFIT DAMAGES?

3            A.   YES.

4            Q.   NOW, DO YOU PROVIDE ANY OTHER OPINION

5    ON ANY OTHER TYPES OF DAMAGES THAT THE PLAINTIFFS

6    ALLEGEDLY SUFFERED IN THIS CASE?

7            A.   WELL, THE OPINIONS ARE CONTAINED IN

8    THE REPORT.  I DON'T BELIEVE I DO.

9              I THINK I WOULD GENERALLY REFER TO

10   THOSE AS THE DAMAGES SUFFERED BY GOLDEN BOY FROM THE

11   ANTICOMPETITIVE BEHAVIOR OF HAYMON.

12           Q.   OKAY.  AND THOSE, IN YOUR OPINION, ARE

13   LOST PROFITS?

14           A.   YES.

15           Q.   OKAY.

16           A.   AND I APOLOGIZE.

17              THE REASON I -- I PAUSED FOR A SECOND

18   IS THAT I -- I AGREE -- I AGREE WITH -- I'M ANSWERING

19   "YES" TO YOUR QUESTION.

20              ONE OF THE -- ONE OF THE CALCULATIONS

21   I'VE PROVIDED, EXHIBIT 5, HAS DURATION ON IT THAT --

22   THAT WOULD BE MORE PERMANENT IN NATURE, BUT IT WOULD

23   STILL BE, IN MY -- MY OPINION, LOST PROFITS.

24           Q.   SO IN THAT SCENARIO, WHAT YOU'RE

25   DISCUSSING IS SORT OF AN ONGOING LOST PROFITS IF THE

19

1           SO, MR. DEETZ, CAN YOU TURN TO

2    PARAGRAPH 9 OF YOUR REPORT.

3           A.   I HAVE IT IN FRONT OF ME.

4           Q.   NOW, SIR, IF YOU LOOK, THE SECOND

5    SENTENCE IN PARAGRAPH 9, STATES:

6              "THE RELATIONSHIP BETWEEN

7              GOLDEN BOY AND THE BROADCAST

8              MEDIA," PAREN, (H.B.O.,

9              SHOWTIME, FOX, AMONG OTHERS),"

10             END PAREN, "AND GOLDEN BOY'S

11             ABILITY TO PROMOTE SUCCESSFUL

12             EVENTS REQUIRED, AMONG OTHER

13             THINGS, CHAMPIONSHIP-CALIBER

14             BOXERS AND NETWORK TIME-SLOT

15             AVAILABILITY."

16             DO YOU SEE THAT?

17          A.   I DO.

18          Q.   SO IN YOUR OPINION HERE, YOU'RE

19   STATING THAT GOLDEN BOY'S ABILITY TO PROMOTE

20   SUCCESSFUL EVENTS REQUIRES BOTH CHAMPIONSHIP-CALIBER

21   BOXERS AND NETWORK TIME-SLOT AVAILABILITY; RIGHT?

22             MR. CESTERO:   OBJECTION.   THE DOCUMENT

23   SPEAKS FOR ITSELF.

24             THE DEPONENT:   YEAH.   THE -- THE

25   RELATIONSHIP -- THE SENTENCE SAYS WHAT IT SAYS.

20

```
 1        THE RELATIONSHIP BETWEEN GOLDEN BOY

 2   AND THE BROADCAST MEDIA AND GOLDEN BOY'S ABILITY TO

 3   PROMOTE REQUIRES, AMONG OTHER THINGS, THOSE TWO

 4   THINGS:  CHAMPIONSHIP-CALIBER BOXERS AND NETWORK

 5   TIME-SLOT AVAILABILITY.

 6   BY MR. WOLFSON:

 7             Q.   REQUIRES CHAMPIONSHIP-CALIBER

 8   BOXERS --

 9             A.   RIGHT.

10             Q.   -- AS A NECESSARY INPUT FOR THEIR

11   SUCCESSFUL EVENTS?

12             A.   YES.

13             Q.   OKAY.  NOW, YOU CITE TO DR. KNEUPER --

14   KNEUPER'S REPORT?

15             A.   EXCUSE ME.

16                  YEAH, IT'S DR. KN- -- IT'S KNEUPER," I

17   BELIEVE.

18             Q.   OKAY.  AND YOU CITE TO DR. KNEUPER'S

19   REPORT FOR THE CRITERIA FOR CHAMPIONSHIP-CALIBER

20   BOXERS; IS THAT RIGHT?

21             A.   YES.

22             Q.   AND YOU CITE TO MR. SHAW -- GARY

23   SHAW'S REPORT HERE FOR THE PROPOSITION THAT GOLDEN

24   BOY HAS TO HAVE CHAMPIONSHIP-CALIBER BOXERS AND

25   NETWORK TIME-SLOT AVAILABILITY?
```

26

1    LINES, YOU HAVE TWO COLUMNS THAT YOU HAVE TO EITHER

2    "X" IN OR "BLANK" IN TO CREATE ALL FOUR COLUMNS, THEN

3    YOU COULD LITERALLY SEE THE FIGHTERS.

4                    AND THEN IN THOSE FOUR SUBSETS, YOU

5    COULD SEE WITHIN EACH SUBSET WHICH ONES CHANGED.

6               Q.   WHICH ONES NOW -- IN THIS UPDATED

7    DETAIL, IS IT ALL BOXERS THAT ARE MARKED IN "ALL

8    CHAMPIONSHIP CALIBER" COLUMN THAT ARE BEING ANALYZED

9    FOR THE PURPOSES OF THIS DAMAGE ANALYSIS AS

10   CHAMPIONSHIP-CALIBER BOXERS?

11              A.   THAT'S CORRECT.

12              Q.   AND THEN WHAT YOU'RE SAYING IS THAT

13   THE INCREMENTAL CHAMPIONSHIP-CALIBER COLUMN IS THE

14   NEW BOXERS?

15                   IF THERE'S AN "X" IN THAT COLUMNS,

16   THEY'RE NOW -- FOR YOUR UPDATED ANALYSIS -- BEING

17   CONSIDERED AS CHAMPIONSHIP-CALIBER BOXERS?

18              A.   THAT'S CORRECT.

19              Q.   NOW WAS THIS ANALYSIS DONE IN RESPONSE

20   TO CRITICISMS RECEIVED FROM DR. MICHAEL SMITH --

21              A.   IT --

22              Q.   -- IN HIS REBUTTAL REPORT?

23              A.   IT WAS -- IT WAS -- IT WAS PART OF

24   THAT PROCESS.  SO WHEN REVIEWING THE SMITH REPORT --

25              Q.   UH-HUH.

27

1        A.    -- THEN AS PART OF REVIEWING THE SMITH

2   REPORT AND THEN PREPARING FOR MY DEPOSITION, I WENT

3   BACK TO THE WORK.

4              AND WHEN I LOOKED AT -- YESTERDAY

5   MORNING, WHEN I WAS JUST LOOKING AT EXHIBIT 3 --

6        Q.    UH-HUH.

7        A.    -- THAT I NOTICED THAT THE COLUMN FOR

8   "NON-CHAMPIONSHIP-CALIBER" HAD A SIGNIFICANT AMOUNT

9   OF REVENUE IN IT, WHICH TOLD ME THAT I SHOULD RE-LOOK

10  AT MR. MAYWEATHER.  BECAUSE HE WOULD BE THE MAIN

11  DRIVER OF THE NON-GOLDEN BOY CONTRACT REVENUE.

12              AND IT JUST LOOKED OUT OF SORTS TO ME.

13  SO THAT'S WHEN I DECIDED TO GET MY TEAM TOGETHER AND

14  GO BACK THROUGH THE WHOLE -- THE -- THE WHOLE

15  PROCESS.

16        Q.    OKAY.  AND IN THE FIRST INSTANCE,

17  HOW DID YOU DECIDE WHETHER OR NOT TO EXCLUDE OR

18  INCLUDE -- STRIKE THAT.

19              IN THE FIRST INSTANCE, HOW DID YOU

20  DECIDE WHETHER OR NOT TO INCLUDE BOXERS AS

21  CHAMPIONSHIP-CALIBER BOXERS FOR THE PURPOSES OF YOUR

22  ANALYSIS?

23        MR. CESTERO:  OBJECTION.  IT'S VAGUE

24  AND AMBIGUOUS, AND MISSTATES THE ANALYSIS, AND

25  MISSTATES --

28

1             THE DEPONENT:  WELL, IN --

2             MR. CESTERO:  -- THE DOCUMENT.

3             THE DEPONENT:  WELL, IN THE FIRST

4    INSTANCE AND IN THE SECOND INSTANCE, I APPLIED

5    DR. KNEUPER'S CRITERIA, WHICH GENERALLY WOULD BE A

6    RANKINGS CRITERIA, A TELEVISION-APPEARANCE CRITERIA,

7    AND A U.S.-BASED PROMOTER OR A MANAGEMENT CRITERIA.

8             AND I APPLIED THOSE IN BOTH INSTANCES.

9             THE -- THE -- PRIMARILY IN THE

10   NON-CONTRACT FIGHTERS -- BUT THERE WERE A COUPLE OF

11   CORRECTIONS IN THE GOLDEN BOY CONTRACT FIGHTERS.

12            THEY WERE JUST -- THEY WERE JUST

13   MISCLASSIFICATIONS THAT I DIDN'T -- I DIDN'T CATCH

14   WHEN I FILED MY ORIGINAL REPORT.  BUT THE CRITERIA

15   WERE THE SAME.

16   BY MR. WOLFSON:

17            Q.  UH-HUH.  NOW, HAD YOU EVER, BEFORE

18   THIS CASE, HEARD THE TERM "CHAMPIONSHIP-CALIBER

19   BOXER"?

20            A.  TO THE BEST OF MY RECOLLECTION, I HAVE

21   NOT.

22            Q.  OKAY.  AND JUST TO BE CLEAR, YOU'RE

23   ACCEPTING DR. KNEUPER'S DEFINITION OF

24   "CHAMPIONSHIP-CALIBER BOXER" FOR THE PURPOSE OF YOUR

25   OWN REPORT?

31

1             NOW, IF COULD YOU PUT YOUR UPDATED

2     EXHIBIT 3 IN FRONT OF YOU, AS WELL AS DR. KNEUPER'S

3     EXHIBIT 3.

4             A.   OKAY.

5             Q.   NOW, FIVE ROWS DOWN IN YOUR EXHIBIT 3,

6     THERE IS A BOXER NAMED ALFREDO AN- -- "ANGELO" OR

7     "ANGULO"?

8             A.   ANGULO.

9                 I SEE THAT.

10               MR. CESTERO:  HANG ON.  HANG ON.

11               I'M SORRY.  WHICH PAGE ARE YOU ON ON

12    EXHIBIT 3?

13               MR. WOLFSON:  PAGE 2.

14               MR. CESTERO:  OKAY.

15               MR. WOLFSON:  OKAY.

16    BY MR. WOLFSON:

17            Q.   NOW, HE IS LISTED AS A AND ANALYZED AS

18    A CHAMPIONSHIP-CALIBER BOXER IN YOUR REPORT?

19               MR. CESTERO:  OBJECTION.  THAT

20    MISSTATES THE DOCUMENT.

21               THE DEPONENT:  TO THE -- TO THE BEST

22    OF MY ABILITY TO READ THE FINE PRINT, I THINK HE IS,

23    YES.

24    BY MR. WOLFSON:

25            Q.   OKAY.  NOW, IF YOU LOOK AT PAGE 66 OF

32

1    DR. KNEUPER'S REPORT HERE.

2         A.   RIGHT.

3         Q.   THIS IS EXHIBIT 3:

4              "U.S. MANAGED CHAMPIONSHIP-CALIBER

5         BOXERS."

6              DO YOU SEE THAT?

7         A.   I DO.

8         Q.   AND THIS IS SORTED ALPHABETICALLY.

9         A.   I DO SEE THAT.

10        Q.   NOW, DO YOU SEE MR. ANGULO'S NAME IN

11   HERE?

12        A.   I DO NOT.

13        Q.   OKAY.  IF YOU COULD TURN TO EXHIBIT

14   70, WHICH IS EXHIBIT 4 OF DR. KNEUPER'S REPORT.

15        A.   I SEE THAT.

16        Q.   AND THIS IS EXHIBIT OF:

17             "U.S. PROMOTED CHAMPIONSHIP-CALIBER

18        BOXERS."

19             DO YOU SEE THAT?

20        A.   YES.

21        Q.   AND, AGAIN, THIS IS SORTED

22   ALPHABETICALLY?

23        A.   YES.

24        Q.   DO YOU SEE MR. ANGULO'S NAME IN THIS

25   LIST OF CHAMPIONSHIP-CALIBER BOXERS?

33

1           A.   I DO NOT.

2           Q.   OKAY.   BUT YOU INCLUDED HIM IN YOUR

3    ANALYSIS AS A CHAMPIONSHIP-CALIBER BOXER?

4               MR. CESTERO:   WELL, OBJECTION.   IT

5    MISSTATES THE WITNESS, MISSTATES THE DOCUMENT.   IT'S

6    VAGUE AS TO TIME.

7           (SPEAKING SIMULTANEOUSLY.)

8               THE DEPONENT:   YEAH, IT'S -- THIS

9    IS --

10              MR. CESTERO:   AND IT'S A MIS- --

11              DEPOSITION OFFICER:   I CAN NOT HEAR

12   YOU, COUNSEL, WHEN --

13              MR. CESTERO:   IT'S A --

14              DEPOSITION OFFICER:   -- YOU'RE BOTH

15   SPEAKING AT ONCE.

16              MR. CESTERO:   -- MISREPRESENTATION OF

17   THE DOCUMENT.

18              GO AHEAD.

19              THE DEPONENT:   THE -- THE POINT

20   THAT -- THAT I WOULD MAKE HERE IS THERE'S THREE

21   DIFFERENT PERIODS, AND THOSE CRITERIA APPLY PERIOD

22   SPECIFIC.

23   BY MR. WOLFSON:

24          Q.   UH-HUH.

25          A.   AND SO TO THE EXTENT THAT THIS

1    DOCUMENT IS PREPARED AT A DIFFERENT POINT IN TIME --

2            Q.   UH-HUH.

3            A.   -- THEN -- THEN IT COULD HAVE -- IT

4    COULD HAVE DIFFERENT -- A DIFFERENT OUTCOME.

5                 SO IN OTHER WORDS, I'M -- I'M MAKING

6    THE DETERMINATION IN 2014, APPLYING THE CRITERIA IN

7    '14.

8            Q.   UH-HUH.

9            A.   THEN I'M MAKING A SEPARATE

10   DETERMINATION IN 2015, APPLYING THE CRITERIA IN 2015;

11   AND A THIRD DETERMINATION IN 2016, APPLYING THOSE

12   CRITERIA IN 2016.

13           Q.   UH-HUH.

14           A.   SO I DON'T KNOW.

15                SO I APPLIED THE CRITERIA.  TO THE

16   EXTENT THERE MAY BE DIFFERENCES, IT MAY BE BECAUSE

17   THIS IS A DIFFERENT TIME PERIOD THAN THE TIME PERIOD

18   FOR THE PARTICULAR EXAMPLE WE'RE -- WE'RE LOOKING AT.

19                AND I DIDN'T -- AND -- AND TO BE

20   COMPLETELY CANDID, I DID NOT LITERALLY CROSS-CHECK MY

21   RESULTS AGAINST DR. KNEUPER'S RESULTS.  BUT I DID, TO

22   THE BEST OF MY ABILITY, CAREFULLY APPLY HIS CRITERIA.

23           Q.   IS ALFREDO ANGULO STILL FIGHTING

24   TODAY?  DO YOU KNOW?

25           A.   I DON'T KNOW.

39

```
 1   MR. ALEXANDER WAS A CHAMPIONSHIP-CALIBER BOXER?

 2           A.   AGAIN, I DON'T -- I DON'T KNOW IF --

 3   IF HE DID OR DIDN'T OR AT WHAT PARTICULAR TIME HE

 4   WOULD HAVE CONSIDERED HIM.

 5           Q.   ARE YOU CONTENDING THAT MR. ALEXANDER

 6   IS A CHAMPIONSHIP-CALIBER BOXER?

 7               MR. CESTERO:  PRESENTLY AS WE SIT HERE

 8   TODAY?

 9               MR. WOLFSON:  IN THIS ANALYSIS.

10               MR. CESTERO:  WELL, IN WHICH ANALYSIS?

11               MR. WOLFSON:  THIS ANALYSIS, RIGHT IN

12   FRONT OF YOU.

13               THE DEPONENT:  YEAH.  AND --

14               MR. CESTERO:  IN 2014?

15               MR. WOLFSON:  IN 2014.

16               THE DEPONENT:  IN 2014, YES.

17   BY MR. WOLFSON:

18           Q.   HOW ARE YOU QUALIFIED TO PROVIDE THAT

19   SORT OF TESTIMONY, SIR?

20           A.   BECAUSE I'M APPLYING DR. KNEUPER'S

21   CRITERIA.

22           Q.   BUT IF DR. KNEUPER DID NOT ACTUALLY

23   PROVIDE THAT ANALYSIS, ARE YOU THEN USING HIS

24   ECONOMIC ANALYSIS TO DETERMINE WHO IS AND WHO IS NOT

25   A CHAMPIONSHIP-CALIBER BOXER?
```

40

1                    MR. CESTERO:   OBJECTION.   IT MISSTATES

2    THE WITNESS'S TESTIMONY, AND IT MISSTATES THE

3    DOCUMENTS, AND IT'S --

4                    THE DEPONENT:   YEAH.   FOR --

5                    MR. CESTERO:   -- ARGUMENTATIVE.

6                    THE DEPONENT:   FOR --

7                    MR. CESTERO:   GO AHEAD.

8                    THE DEPONENT:   FOR ALL THREE

9    PERIODS -- FOR '14, '15, AND '16 -- I APPLIED THE

10   CHAMPIONSHIP-CALIBER CRITERIA AS -- AS STATED IN

11   DR. KNEUPER'S REPORT IN DETERMINING THE

12   CLASSIFICATION BETWEEN CHAMPIONSHIP-CALIBER AND

13   NON-CHAMPIONSHIP-CALIBER.

14                    SO I'M APPLYING HIS CRITERIA.

15   BY MR. WOLFSON:

16        Q.   DID DR. KNEUPER PROVIDE AN OPINION ON

17   WHO WAS AND WAS NOT A CHAMPIONSHIP-CALIBER BOXER IN

18   2014?

19        A.   I -- I DON'T BELIEVE HE DID.

20        Q.   OKAY.   AND HOW ARE YOU QUALIFIED TO

21   PROVIDE AN -- AN OPINION WHO WAS AND WAS NOT A

22   CHAMPIONSHIP-CALIBER BOXER IN 2014?

23                    MR. CESTERO:   OBJECTION.   IT MISSTATES

24   THE WITNESS'S TESTIMONY.

25                    THE DEPONENT:   YEAH.   BE- -- BECAUSE I

41

1   AM USING HIS CRITERIA AND I'M APPLYING IT

2   CONSISTENTLY IN '16, '15, AND '14.

3   BY MR. HEINLEIN:

4           Q.   YOU UNDERSTAND THAT DR.

5   KNEUPER ACTUALLY --

6               MR. CESTERO:   HANG ON.   HANG ON A

7   SECOND.

8               MR. WOLFSON:   GO AHEAD.

9               MR. CESTERO:   DON'T INTERRUPT THE

10  WITNESSES.   LET HIM FINISH HIS ANSWER.

11  BY MR. WOLFSON:

12          Q.   GO AHEAD.

13          A.   WELL, I THINK I WAS FINISHED.

14          I'M JUST -- I JUST -- I APPLIED HIS

15  CRITERIA CONSISTENTLY IN '16, '15, AND '14, AND

16  THAT'S THE BASIS FOR THE OPINION IN EACH OF THE

17  YEARS.

18          Q.   NOW, YOU UNDERSTAND THAT DR. KNEUPER

19  ACTUALLY SPOKE WITH GOLDEN BOY EMPLOYEES ABOUT WHAT

20  DOES AND DOES NOT CONSTITUTE A CHAMPIONSHIP-CALIBER

21  BOXER?

22          A.   I'D HAVE TO REFRESH MY RECOLLECTION.

23  I -- I KNOW HE CITED CONVERSATIONS WITH GOLDEN BOY

24  ABOUT -- ABOUT THAT.

25          Q.   YOU UNDERSTAND THAT DR. KNEUPER IS A

42

1    PH.D IN ECONOMICS?

2          A.    YES.

3          Q.    YOU UNDERSTAND THAT DR. KNEUPER

4    CONDUCTED A -- A REVIEW OF DOCUMENTS THAT, IN HIS

5    ECONOMIC ESTIMATION, ALLOWED HIM TO OPINE ON WHAT IS

6    AND IS NOT A CHAMPIONSHIP-CALIBER BOXER?

7               MR. CESTERO:   OBJECTION; VAGUE AS TO

8    TIME.

9               THE DEPONENT:   I DO UNDERSTAND THAT,

10   AND I DO UNDERSTAND THAT -- THAT THAT DETERMINATION

11   WAS DRIVEN BY THE CRITERIA THAT I APPLIED

12   CONSISTENTLY --

13   BY MR. WOLFSON:

14         Q.   UH-HUH.

15         A.   -- ACROSS THREE DIFFERENT TIME

16   PERIODS.

17              Q.   AND WHY WAS THERE A CHANGE WITH

18   RESPECT TO MR. ALEXANDER?

19              A.   WHEN THE ORIGINAL DOCUMENT WAS DONE --

20   THEN -- WHEN THE ORIGINAL DOCUMENT WAS DONE, I HAD --

21   I HAD NOT -- I HAD MISSED SEVERAL OF THESE, IN TERMS

22   OF LOOKING AT THOSE THREE CRITERIA.  AND WHEN I WENT

23   BACK AND RE-REVIEWED THAT IN DETAIL, THAT'S WHAT

24   DROVE THE CHANGE.

25              THE CRIT- -- CRITERIA WAS THE SAME,

349

```
 1    STATE OF CALIFORNIA      )
                               ) .SS
 2    COUNTY OF LOS ANGELES    )

 3

 4

 5

 6                   DEPONENT'S DECLARATION

 7

 8

 9         I CERTIFY UNDER PENALTY OF PERJURY THAT

10    THE FOREGOING IS TRUE AND CORRECT.

11

12

13

14

15    EXECUTED AT _____ON_____.

16

17

18

19                   _____
                          (SIGNATURE OF DEPONENT)
20

21

22

23

24

25
```

350

```
 1   STATE OF CALIFORNIA        )
                                ) .SS
 2   COUNTY OF LOS ANGELES      )

 3

 4          I, TRACY M. FOX, CERTIFIED SHORTHAND

 5   REPORTER, CERTIFICATE NUMBER 10449, FOR THE STATE

 6   OF CALIFORNIA, HEREBY CERTIFY:

 7          THE FOREGOING PROCEEDINGS WERE TAKEN

 8   BEFORE ME AT THE TIME AND PLACE THEREIN SET FORTH,

 9   AT WHICH TIME THE DEPONENT WAS PLACED UNDER OATH

10   BY ME;

11          THE TESTIMONY OF THE DEPONENT AND ALL

12   OBJECTIONS MADE AT THE TIME OF THE EXAMINATION

13   WERE RECORDED STENOGRAPHICALLY BY ME AND WERE

14   THEREAFTER TRANSCRIBED;

15          THE FOREGOING TRANSCRIPT IS A TRUE AND

16   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN;

17          I FURTHER CERTIFY THAT I AM NEITHER

18   COUNSEL FOR NOR RELATED TO ANY PARTY TO SAID

19   ACTION, NOR IN ANY WAY INTERESTED IN THE OUTCOME

20   THEREOF.

21          IN WITNESS WHEREOF, I HAVE HEREUNTO

22   SUBSCRIBED MY NAME THIS 24TH DAY OF OCTOBER, 2016.

23

24

25          _____
```